# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MICHAEL VALDEZ, KIM DRESSEL, DRESSEL
CONSTRUCTION, INC., FREDDIE SUE
GATEWOOD, MARY JO VAUGHN, and
MARCUS PERKINS,

       Plaintiffs,

      v.                                                                        No. CIV 11-0507 JB/KBM

METROPOLITAN PROPERTY & CASUALTY
INSURANCE COMPANY, COLORADO
CASUALTY INSURANCE COMPANY a
subsidiary of LIBERTY MUTUAL INSURANCE
COMPANY, PACIFIC INDEMNITY INSURANCE
COMPANY, TRAVELERS INSURANCE COMPANY,
d/b/a THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY, 21st CENTURY
INSURANCE COMPANY, and DESERT
MOUNTAIN AGENCY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Memorandum Motion to Remand

to State Court for Lack of Federal Jurisdiction, filed June 24, 2011 (Doc. 55)("Motion"). The Court

held a hearing on March 7, 2012. The primary issues are: (i) whether the Court has subject-matter

jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(4)(A) ("CAFA") or the

traditional diversity-jurisdiction analysis, under 28 U.S.C. § 1332; and (ii) if the Court has

jurisdiction, whether the Court should decline to exercise that jurisdiction. The Court will deny the

Motion. The Court has jurisdiction under CAFA, and no CAFA exception applies. Additionally,

the Court concludes that there is no reason to decline to exercise that jurisdiction, because no party

challenges a final state court judgment, there is no pending state proceeding, and federal review of

this matter will not interfere with New Mexico's ability to oversee its laws regulating insurance.

## FACTUAL BACKGROUND

All of the Plaintiffs are New Mexico residents.  See  Petition for Declaratory Judgment and Injunctive Relief ¶¶ 1-6, at 1-2 (dated April 15, 2011), filed June 10, 2011 (Doc. 4)("Complaint"). Defendants Metropolitan Property & Casualty Insurance Company ("Metropolitan Casualty"), Colorado Casualty Insurance Company ("Colorado Casualty"), Pacific Indemnity Insurance Company ("Pacific Indemnity"), The Travelers Insurance Company d/b/a The Travelers Home & Marine Insurance Company ("Travelers Insurance"), 21st Century Insurance Company ("21st Century Insurance"), and Amica Mutual Insurance Company ("Amica Insurance") are foreign insurance companies authorized to issue automobile liability insurance policies within the State of New Mexico in compliance with all the rules and regulations promulgated by the Superintendent of Insurance as well as the applicable New Mexico statutes and case law.  See Complaint ¶¶ 10-16, at 3-4.  Defendant Desert Mountain Agency ("Desert Mountain") is a New Mexico corporation authorized to sell automobile insurance policies in New Mexico.  See Complaint ¶¶ 17-18, at 4-5.

Plaintiff Michael Valdez is a named insured in an insurance policy with Metropolitan Casualty, policy number 045192877-3, whose policy provides uninsured motorist coverage with limits that are less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage.  See Complaint ¶ 29, at 7.  Plaintiff Kim Dressel is a named insured in an insurance policy with Pacific Indemnity, policy number 12714973-03, whose policy provides uninsured motorist coverage with limits that are less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage.  See Complaint ¶ 31, at 7.  Plaintiff Dress Construction, Inc. is a named insured in an insurance policy with Colorado Casualty, policy number CBP08431076, whose policy provides uninsured motorist

coverage with limits that are less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage. See Complaint ¶ 33, at 8. Plaintiff Freddie Sue Gatewood is a named insured in an insurance policy with Travelers Insurance, policy number 979038Q62-1011, whose policy provides uninsured motorist coverage with limits that are less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage. See Complaint ¶ 35, at 8. Plaintiff Mary Jo Vaughn is a named insured in an insurance policy with 21st Century Insurance, policy number 979038Q62-1011, whose policy provided uninsured motorist coverage with limits that were less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage. See Complaint ¶ 38, at 9. Plaintiff Marcus Perkins is a named insured in an insurance policy with Amica Insurance, policy number 910730-20FF, whose policy provides uninsured motorist coverage with limits that are less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage. See Complaint ¶ 39, at 9.

## **PROCEDURAL BACKGROUND**

The Plaintiffs initiated this action by filing the Complaint against six insurance companies and one New Mexico Insurance Agency in the First Judicial District Court, Santa Fe County, State of New Mexico. The Plaintiffs allege that the Defendants have failed to comply with the Supreme Court of New Mexico's decisions in Progressive Northwestern Insurance Co. v. Weed Warriors Services, 149 N.M. 157, 245 P.3d 1209 (2010), and in Jordan v. Allstate Insurance Co., 149 N.M. 162, 245 P.3d 1214 (2010), because they failed to provide the Plaintiffs with full and adequate information about their legal options, at the point of sale, when buying uninsured motorist coverage. See Complaint ¶¶ 7, 46, at 2, 10. The Plaintiffs allege:

In Jordan and Weed Warriors, the Supreme Court [of New Mexico] established, as

-3-

a matter of New Mexico public policy, the following retroactive rules regulating all MFRA[1] policies and [uninsured or underinsured motorist] coverages issued in New Mexico since May 20, 2004: a) the purchase of less than equal limits [uninsured or underinsured motorist] coverage constitutes a "rejection" by the insured of the available equal limited [uninsured or underinsured motorist] coverage; b) an insured's rejection of [uninsured or underinsured motorist] coverage or equal limits [uninsured or underinsured motorist] coverage under a New Mexico MFRA policy must be in writing and must be attached to, endorsed upon, or otherwise made a part of the MFRA/[uninsured or underinsured motorist] policy; c) every written rejection of [uninsured or underinsured motorist] coverage in New Mexico must include a "menu" showing each vehicle insured, each limit of [uninsured or underinsured motorist] coverage available for purchase for that vehicle (up to the policy's limits for that type of coverage whether [uninsured or underinsured motorist] or [property damage]), and the premium prices for each available limit of [uninsured or underinsured motorist] coverage for each vehicle (hereinafter "the Jordan menu"); d) if an insurer does not, or did not after May 20, 2004, comply with these requirements for a written rejection, then any [uninsured or underinsured motorist] policy issued in New Mexico that provides, or provided, less than equal limits [uninsured or underinsured motorist] coverage must be retroactively reformed as a matter of law to provide equal limits [uninsured or underinsured motorist] coverage regardless of the payment of any premium or the intent of the parties so that all similarly situated insureds will be treated equally.

Complaint ¶ 27, at 6-7. The Plaintiffs assert that the Defendants are violating a retroactive duty to provide them with "full and complete information about all [uninsured or underinsured motorist] coverage available to them." Complaint ¶ 42, at 9-10. The Plaintiffs assert that the Defendants engaged in "unconscionable trade practices" under the New Mexico Unfair Trade Practices Act, N.M.S.A. 1978, § 57-12-2 to 58-12-10 ("UTPA"). Complaint ¶ 48, at 11. They allege that the Defendants have issued and renewed thousands of policies which did not comply with Jordan v.

---

[1]Although the Complaint does not define the term "MFRA," the Court is aware that the Mandatory Financial Responsibility Act, N.M.S.A. 1978, §§ 66-5-201 to -239 is frequently abbreviated as "MFRA." Whiting v. Hogan, No. 11-671, 2012 WL 664805, at *2 (D.N.M. Feb. 28, 2012)(Browning, J.); Arnold v. Farmers Ins. Co. of Az., No. 09-0330, 2011 WL 5220320, at *2 (D.N.M. Sept. 29, 2011)(Browning, J.). The MFRA was enacted to "require residents of New Mexico who own and operate vehicles upon the highways of the state either to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle or to obtain a motor vehicle insurance policy." N.M.S.A. 1978, § 66-5-201.

Allstate Insurance Co. and that none of the Defendants will comply with the Supreme Court of New Mexico's mandate unless ordered to do so.  See Complaint ¶¶ 50, 52, at 11.  With respect to the class allegations, the Plaintiffs assert that each of the Defendants has failed: (i) "to affirmatively offer their insured equal limits [uninsured or underinsured motorist] coverage [--] together with a Jordan menu [--] at the time of the sale of the policy"; (ii) "to obtain written rejections of all [uninsured or underinsured motorist] coverage or of equal limits [uninsured or underinsured motorist] coverage as retroactively mandated by Jordan"; (iii) "to unilaterally and retroactively reform every . . . policy issued, or renewed, with less than equal limits [uninsured or underinsured motorist] coverage as retroactively mandated by Jordan"; and (iv) "to unilaterally notify each insured to whom [a] . . . policy was issued providing no [uninsured or underinsured motorist] coverage or less than equal limits [uninsured or underinsured motorist] coverage of their entitlement to have such policies reformed."  Complaint ¶ 68, at 15-16.

The Plaintiffs request the following relief against the insurer Defendants:

a) a Declaratory Judgment retroactively reforming all the [uninsured or underinsured motorist] policies issued in New Mexico to Plaintiffs and the class members since May 20, 2004, so as to provide equal limits [uninsured or underinsured motorist] coverage, where the policy did not already do so, without the payment of any premiums by the class members and regardless of the intent of the parties; b) injunctive relief ordering each Defendant to immediately notify all its insureds who were issued less than equal limits [uninsured or underinsured motorist] policies since May 20, 2004, that their policies have been retroactively reformed to provide equal limits [uninsured or underinsured motorist] coverage together with an explanation of the effect of this retroactive reformation that can be easily understood by the hypothetical average insured -- including notice to seek independent legal advice or contract the Defendant if they have any questions about the legal impact of this retroactive reformation of their MFRA/[uninsured or underinsured motorist] policies, and especially if any insureds have been involved in an auto accident since May 20, 2004; and c) injunctive relief ordering each Defendant to adopt and immediately implement a [uninsured or underinsured motorist] selection form for use in New Mexico that fully and substantially complies with the retroactive requirements of Jordan.

Complaint ¶ 1, at 18.  The Plaintiffs also separately ask for the following relief against Desert Mountain:

> For the Court's Order granting injunctive relief pursuant to the UTPA and/or [New Mexico Unfair Claims Practices Act, N.M.S.A. 1978, § 59A-16-20] and/or the common law in equity ordering Defendant Agent in the future to affirmatively provide all applicants for a New Mexico MFRA policy with a written <u>Jordan</u> menu at the time the original policy is sold and again whenever one of Agent's insureds requests a change in his or her MFRA policy including, but not limited to, a change in liability or [uninsured or underinsured motorist] limits or the addition of a vehicle.

Complaint ¶ 2, at 19.

### 1.   <u>Notice of Removal.</u>

On June 10, 2011, the Defendants filed their Notice of Removal.  <u>See</u> Doc. 1.  They assert that removal is based upon CAFA and, alternatively, the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a).  <u>See</u> Notice of Removal ¶ 3, at 3.  The Defendants assert that the Court has jurisdiction pursuant to CAFA, because the proposed class: (i) has at least 100 putative class members; (ii) the class asserts an aggregate amount in controversy of $5,000,000.00 or more; (iii) minimal diversity exists, because any one of the Plaintiffs is a citizen of a State different from any Defendant; and (iv) no CAFA exceptions apply.  <u>See</u> Notice of Removal ¶ 4, at 3 (citing 28 U.S.C. § 1332(d)).  They assert that the Court likewise has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), because, among the Defendants, six are foreign insurance carriers writing automobile policies in New Mexico and the seventh -- Desert Mountain -- does not defeat diversity, despite being an in-state Defendant, because the Plaintiffs have failed to assert a valid cause of action against Desert Mountain.  <u>See</u> Complaint ¶ 5, at 3.

The Defendants argue that CAFA was intended to "expand significantly the jurisdiction of the federal courts over class action lawsuits as well as to limit what were seen as typical abuses of the class action system at the state level."  Notice of Removal ¶ 14, at 5 (citing <u>Kearns v. Ford Motor</u>

Co., No. 05-5644, 2005 WL 3967798, at *14 (C.D.Cal. Nov. 21, 2005)).  The Defendants contend

that there is minimal diversity, because the Plaintiffs are citizens of New Mexico which are

completely diverse from six of the seven Defendants: (i) Metropolitan Casualty is incorporated

under the laws of and has its principal place of business in Rhode Island; (ii) Colorado Casualty is

incorporated under the laws of New Hampshire and maintains its principal place of business in

Massachusetts; (iii) Travelers Insurance is incorporated under the law of and maintains its principal

place of business in Connecticut; (iv) 21st Century Insurance is incorporated under the laws of New

York and maintains its principal place of business in Delaware; (v) Amica Insurance is incorporated

under the laws of and maintains its principal place of business in Rhode Island; and (vi) Pacific

Indemnity is incorporated under the law of Wisconsin and maintains its principal place of business

in New Jersey.  See Notice of Removal ¶¶ 15-16, at 6.  They assert that the proposed class has at

least 100 members, because the putative class for Colorado Casualty alone is approximately 4,799

policyholders -- individuals whose policies were issued on or after May 20, 2004 where uninsured

motorist coverage was less than the policy limits or rejected in its entirety.  See Notice of Removal

¶ 20, at 7 (citing Affidavit of Brigitte Coulson ¶¶ 9-10, at 2 (executed June 9, 2011), filed June 10,

2011 (Doc. 21)("Coulson Aff.")).  They contend that the putative class for 21st Century Insurance

is 4,882 policyholders.  See Notice of Removal ¶ 20, at 7 (citing Declaration of Jessica Schmidt ¶

10, at 2-3 (executed June 10, 2011), filed June 10, 2011 (Doc. 14)("Schmidt Decl.")).  The

Defendants also note that the Complaint alleges that the members of the putative class are "so

numerous that joinder of all class member policyholders is impracticable." Notice of Removal ¶ 19,

at 7 (citing Complaint ¶ 70, at 16).

        The Defendants assert that they need only "make it possible" that the threshold is satisfied

and that the United States Court of Appeals for the Tenth Circuit considers the higher of the "value

to the plaintiff or the cost to the defendant" when determining the amount in controversy.  Notice of Removal ¶¶ 23-24, at 8-9 (emphasis original) (citing Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977); McPhail v. Deere & Co., 529 F.3d 947, 955 (10th Cir. 2008)).  They further assert that the amount in controversy under CAFA is determined by aggregating the claims of putative class members.  See Notice of Removal ¶ 27, at 10 (citing 28 U.S.C. § 1332).  The Defendants argue that the aggregate increase in insurance coverage which the putative class seeks exceeds $1.5 billion.  See Notice of Removal ¶¶ 31-33, at 13-14 (citing Coulson Aff. ¶ 11, at 2-3; Schmidt Decl. ¶ 11, at 3).  The Defendants also contend that they can aggregate lost insurance premiums to meet the amount in controversy requirement, see Notice of Removal ¶ 36, at 14 (citing Toller v. Sagamore Ins. Co., 558 F.Supp.2d 924 (E.D. Ark. 2008), and that applying the lost premium method the amount in controversy is at least $6.94 million, see Notice of Removal ¶ 39-40, at 16 (citing Coulson Aff. ¶ 12, at 3; Schmidt Decl. ¶ 16, at 5; Affidavit of Jodi Ebersole in Support of Removal ¶ 7, at 3 (executed June 10, 2011), filed June 10, 2011 (Doc. 17)("Ebersole Aff."); Affidavit of Benjamin J. Mellino in Support of Notice of Removal ¶ 8, at 3 (executed June 10, 2011), filed June 10, 2011 (Doc. 16)("Mellino Aff.")).  They argue that aggregate claims for class members seeking additional uninsured motorist payments could cost approximately $1.38 million. See Notice of Removal ¶ 44, at 18 (citing Declaration of Angelo Palazzolo ¶ 7, at 3 (executed June 10, 2011), filed June 10, 2011 (Doc. 19)("Palazzolo Decl."); Schmidt Decl. ¶ 17, at 5).  They also assert that the administrative costs related to implementing the injunctive relief requested would be more than $493,358.00.  See Notice of Removal ¶ 46, at 18 (citing Coulson Aff. ¶ 13, at 3; Schmidt Decl. ¶ 19, at 6; Mellino Aff. ¶ 10, at 3; Palazzolo Decl. ¶ 14, at 5).

The Defendants argue that no CAFA exceptions apply and that the Plaintiffs bear the burden of establishing that a statutory exception applies.  See Notice of Removal ¶ 48, at 19 (citing Coffey

v. Freeport-McMoran Copper & Gold, Inc., 623 F.Supp.2d 1257, 1263 (W.D. Okla.) aff'd, 581 F.3d 1240 (10th Cir. 2009)).   The Defendants assert that they, out of an abundance of caution, will address the "local controversy exception," which applies only if at least one local defendant -- citizen of the forum state -- is a defendant: (i) "from whom significant relief is sought by members of the plaintiff class"; and (ii) "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class."   Notice of Removal ¶ 49, at 19-20 (emphasis original) (citing 28 U.S.C. § 1332(d)(4)(A)).   The Defendants argue that only four of the eighty-two paragraphs in the Complaint are directed towards Desert Mountain, that the relief sought against it is not significant, and that its conduct does not form a significant basis of the claims asserted. See Notice of Removal ¶¶ 50-54, at 21-22.   They similarly assert that the "home state exception" does not apply, because "the primary defendants" are not New Mexico citizens.   Notice of Removal ¶ 55, at 22-23 (citing 28 U.S.C. § 1332(d)(4)(B); Anthony v. Small Tube Mfg. Corp., 535 F.Supp.2d 506, 515 (E.D. Pa. 2007)).

Finally, the Defendants assert that, under a traditional diversity jurisdiction analysis, the Court also has subject-matter jurisdiction, because the Court can sever Desert Mountain from the case.   The Defendants argue that the Tenth Circuit has recognized that courts "frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a non-diverse party if his presence is not required under Rule 19."   Notice of Removal ¶ 62, at 25 (quoting Miller v. Leavenworth-Jefferson Elec. Co-op., Inc., 653 F.2d 1378, 1382 (10th Cir. 1982)).   They contend that Desert Mountain is not a necessary party, because: (i) it is the only agency named; (ii) it only has a relationship with one insurer -- Travelers Insurance; and (iii) severing Desert Mountain would not prevent the Plaintiffs from obtaining the requested declaratory relief.   See Notice of Removal ¶¶ 64-65, at 25-26.   The Defendants assert that severing Desert Mountain will not prejudice the Defendants

or the Plaintiffs.  See Notice of Removal ¶ 69, at 27.  In the alternative, the Defendants argue that the Court could sever or dismiss Desert Mountain on the basis of fraudulent joinder, because the Plaintiffs failed to state a claim against Desert Mountain.  See Notice of Removal ¶ 77, at 30.  They further assert that the Court could sever or dismiss Desert Mountain on the basis of fraudulent misjoinder, under rule 20, because the claims against Desert Mount have no relation to the other claims.  See Notice of Removal ¶¶ 78-84, at 31-32.

## 2.   **Answers to the Complaint.**

After removing the case to federal court, three of the insurer Defendants filed answers to the Complaint.  21st Century Insurance lists several affirmative defenses, including that: (i) the Plaintiffs fail to state a claim upon which relief can be granted; (ii) the Plaintiffs lack standing to pursue, for themselves or on behalf of the putative class, the relief sought; (iii) the Plaintiffs lack privity of contract with the purported entity "21st Century Insurance Company,"[2] which does not exist; and (iv) the Plaintiffs' claims, to the extent they ever existed, are moot.  Answer of Defendant 21st Century North America Insurance Company ¶ 85, at 13, filed June 16, 2011 (Doc. 35)("21st Century Answer").  Metropolitan Casualty also asserts several affirmative defenses, including that: (i) the Complaint fails to state a claim upon which relief may be granted; (ii) the Plaintiffs lack standing to pursue, for themselves or on behalf of the putative class, the relief sought; (iii) the Plaintiffs' claims, to the extent any claims ever existed, are moot; (iv) the applicable statute of limitations may bar the Plaintiffs's claims, in whole or in part; and (v) the doctrine of laches may bar the Plaintiffs' claims, in whole or in part.  See Answer of Defendant Metropolitan Property and Casualty Insurance Company at 12-13, filed June 17, 2011 (Doc. 43)("Metropolitan Casualty

---

[2]The Court notes that 21st Century Insurance was dismissed from the case on November 29, 2011.  See Order Regarding Dismissal of 21st Century, filed November 29, 2011 (Doc. 89).

Answer").  Pacific Indemnity raises the following affirmative defenses: (i) that Dressel's insurance policy with Pacific Indemnity, at all relevant times, provided equal limits uninsured motorist coverage; (ii) that the Complaint fails to state a cause of action, because Dressel has not been in an automobile accident with an uninsured motorist in which he sought and was denied equal limits uninsured motorist coverage; (iii) that the class alleged fails to satisfy the numerosity requirement; (iv) that the applicable statute of limitations bar the Plaintiffs's claims; (v) that Pacific Indemnity breached no duty to Dressel; (vi) that the doctrine of unjust enrichment bars any damages the Plaintiffs seek; (vi) that Dressel's claims, to the extent that they ever existed, are moot; (vii) the doctrine of laches bars Dressel's claims; and (viii) that the Plaintiffs have not met the requirements of rule 23 of the Federal Rules of Civil Procedure.  See Defendant Pacific Indemnity Insurance Company's Answer to Plaintiffs' Petition for Declaratory Judgment and Injunctive Relief at 16-17, filed July 14, 2011 (Doc. 68)("Pacific Indemnity Answer").  These Defendants have not raised any constitutional challenges to the Supreme Court of New Mexico's decision in Jordan v. Allstate Ins. Co. or questioned that it is governing law in New Mexico.

> **3.     Motion to Remand.**

The Plaintiffs move the Court to remand this case to state court for lack of federal jurisdiction.  See Motion at 1.  The Plaintiffs contend that the Notice of Removal fails to confer jurisdiction upon the Court, because there is a lack of complete diversity of citizenship as 28 U.S.C. § 1332 requires, or fraudulent joinder.  See Motion at 1.  In support of this argument, the Plaintiffs argue that: (i) the Notice of Removal fails to show that the CAFA applies; (ii) the Plaintiffs seek equitable relief only -- and no monetary relief -- to complete and enforce the Supreme Court of New Mexico's retroactive mandate in Jordan v. Allstate Ins. Co.; and (iii) jurisdiction would violate the well-established rule in Wilton v. Seven Falls Co., 515 U.S. 277 (1995), which establishes that the

-11-

Court should not exercise jurisdiction where such exercise would amount to unnecessary interference with the orderly and comprehensive disposition of state court litigation. See Motion at 1.

The Plaintiffs note that a removing party carries a "heavy burden of persuasion" to show that a non-diverse party was fraudulently joined. Motion at 3 (citing B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th 1981)). They assert that "CAFA did not change, lessen or shift the burden of proving fraudulent joinder," and that the Defendants' failure to meet their heavy burden to demonstrate that Desert Mountain was fraudulently joined is "fatal to Defendants' Notice of Removal." Motion at 4. The Plaintiffs argue that, "where there is any ambiguity about the State law or disputed questions of fact, the resolution of whether the [Complaint] states possibly viable claims against non-diverse defendants 'should be left to the state court where the action was commenced.'" Motion at 5 (emphasis original)(quoting Montano v. Allstate Indemnity, 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished table decision)). The Plaintiffs contend that the Complaint alleges that Desert Mountain participated in actions which could constitute a violation of the UTPA and that the "Defendants' denials or assertions that there are no viable claims that can be asserted against [Desert Mountain] must be resolved by the state court first." Motion at 5. They assert that the Court lacks "federal diversity jurisdiction mandating remand to the State court for further determination of the availability of claims against the non-diverse Defendant joined in this case." Motion at 6. The Plaintiffs further assert that remand is required if there is a reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant or that any one of the claims against Desert Mountain is possibly viable. See Motion at 7 (citing Zufelt v. Isuzu Motors Am., LLC, 727 F.Supp.2d 1117, 1124 (D.N.M. 2009)(Browning, J.)). They argue that the claims against Desert Mountain are not wholly frivolous or insubstantial, and that,

because there is a colorable claim under state law against Desert Mountain, the Court should remand.  See Motion at 7 (citing Bastoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992)).  The Plaintiffs contend that they have asked for injunctive relief against Desert Mountain under the UTPA, and that the Plaintiffs are "'persons' likely to be damaged by [Desert Mountain's] alleged unfair, deceptive, or unconscionable trade practices and thus have standing to assert their equitable UTPA claims against [Desert Mountain.]"  Motion at 8.

The Plaintiffs also argue that CAFA's local-controversy exception requires that the Court remand the case to state court.  They assert that the Court "shall decline to exercise jurisdiction" where: (i) greater than two-thirds of the proposed class members are citizens of the State in which the action was filed; (ii) significant relief is sought against at least one non-diverse defendant whose alleged conduct forms a significant basis for the claims asserted; (iii) the principal conduct of all defendants occurred in the State in which the action was filed; and (iv) no other class action has been filed asserting the same or similar factual allegations against the same defendants within the past three years.  Motion at 8.  The Plaintiffs represent that the local-controversy exception applies to a "truly local controversy [which is] a controversy that uniquely affects a particular locality to the exclusion of all others."  Motion at 9 (quoting Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006)).  They argue that this case presents a local controversy within the exception, because the

> granting of declaratory and injunctive relief to ensure that these named Defendants adhere in New Mexico to the unique holding of the New Mexico Supreme Court in Jordan -- which by definition will only apply to New Mexico [uninsured or underinsured motorist] policies and New Mexico policyholders -- is a matter that uniquely affects the locality of New Mexico to the exclusion of all others.

Motion at 9 (emphasis original).  The Plaintiffs assert that they meet each of the local-controversy exception requirements.  The Plaintiffs contend that: (i) all class members are New Mexico

residents; (ii) Desert Mountain is a New Mexico Corporation; (iii) the conduct involves uninsured motorist coverage in New Mexico; and (iv) they are aware of no similar actions being filed against the Defendants within the last three years.  <u>See</u> Motion at 9.

The Plaintiffs assert that, because this case seeks only equitable relief, the Court should decline to accept jurisdiction.  <u>See</u> Motion at 10.  The Plaintiffs argue that the Supreme Court of the United States has repeatedly characterized the Declaratory Judgment Act, 28 U.S.C. § 2201, as "an enabling Act which confers a discretion on the courts rather than an absolute right upon the litigant." Motion at 11 (quoting <u>Pub. Serv. Comm'n v. Wycoff Co., Inc.</u>, 344 U.S. 237, 241 (1952)).  They contend that it would be "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues," and that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."  Motion at 11 (quoting <u>Brillhart v. Excess Ins., Co.</u>, 316 U.S. 491, 495 (1942)).  The Plaintiffs assert that it is well settled that the existence of an independent basis for federal jurisdiction does not deprive the Court of its right and duty to exercise its independent discretion to decline jurisdiction in a case involving the "enforcement of a state court's declaratory judgment."  Motion at 12.  They argue that, when parallel proceedings are pending in state court, a federal court must determine whether to abstain from exercising jurisdiction using a variety of factors.  <u>See</u> Motion at 13.  The Plaintiffs state that there is no need for the Court to expend its resources on a matter which is "nothing more than a ministerial exercise in enforcement of a fully litigated state court action."  Motion at 15.

On July 25, 2011, the Defendants filed the Insurer Defendants' Joint Opposition to Motion to Remand.  <u>See</u> Doc. 70 ("Response").  The Defendants assert that the Plaintiffs conceded in the Motion that CAFA's requirements are met.  <u>See</u> Response at 1.  The Defendants emphasize that,

-14-

under CAFA, the requirement is minimal diversity and not complete diversity.  See Response at 2.

They argue that the Plaintiffs are trying to "circumvent CAFA jurisdiction by asking this Court to

make an exception that is not based in fact or law."  Response at 2.  The Defendants assert that the

local-controversy exception does not apply when "the allegations against the in-state defendant pale

in scope and number to those against the out-of-state defendants."  Response at 2.  They further

assert that, because the Plaintiffs seek the same relief against Travelers Insurance and Travelers

Insurance is the proper party to comply with Jordan v. Allstate Insurance Co., the allegations against

Desert Mountain do not meet the local-controversy requirements.  See Response at 2.  The

Defendants argue that there is no basis to abstain absent a parallel state proceeding and that, because

the Plaintiffs seek more than only declaratory relief, Wilton v. Seven Falls Co., does not apply.

See Response at 2.  The Defendants also make arguments, similar to those in the Notice of Removal,

that the Court has jurisdiction under the traditional diversity analysis, because the Court should sever

or dismiss Desert Mountain from the case.  See Response at 2-3.

The Defendants assert that fraudulent joinder is irrelevant under CAFA.  They argue that

CAFA jurisdiction exists when the proposed class contains at least one-hundred persons, the amount

in controversy exceeds $5,000,000.00 and there is minimal diversity.  See Response at 5.  They

contend that the presence of a non-diverse defendant does not defeat jurisdiction under CAFA.

See Response at 6.  The Defendants further assert that CAFA's local-controversy exception does

not apply, because Desert Mountain is not a party from whom significant relief is sought and whose

alleged conduct forms a significant basis for the claims alleged.  See Response at 6.  The Defendants

argue that the Plaintiffs bear the burden of establishing that an exception to CAFA jurisdiction

applies and that the local-controversy exception is narrow, with all doubts resolved in favor of

jurisdiction.  See Response at 7 (citing Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 153-54 (3d

Cir. 2009); Evans v. Walter Indus., 449 F.3d at 1164-65).  They contend that the Plaintiffs do not

seek "significant relief" from Desert Mountain and that its alleged conduct does not form a

"significant basis" of the claims asserted, because only four paragraphs, out of the eighty-two in the

Complaint, are directed at Desert Mountain.  Response at 7.  They assert that the requested relief

against Desert Mountain, provision of a menu under Jordan v. Allstate Ins. Co., would not originate

with Desert Mountain, but that Travelers Insurance would prepare and disseminate such a menu, and

that the Plaintiffs seek the same relief from Travelers Insurance.  Response at 7.  The Defendants

assert that, in contrast, the Plaintiffs seek a variety of significant relief from the out-of-state insurer

Defendants, including: (i) a declaration ordering them to reform automobile insurance policies

retroactively; (ii) an injunction requiring notices to insureds about that reformation and the attendant

consequences; and (iii) an injunction ordering the insurers to develop and implement new uninsured

motorist selection/rejection forms which local agents will use.  See Response at 7-8 (citing

Complaint ¶¶ 65-66, at 14-15, 18-19).  They contend that relief is significant only if it is a significant

portion of the entire relief sought "by the class," and assert that the Plaintiffs have not identified

anyone, other than Gatewood, who may have a relationship with Desert Mountain.  Response at 8

(quoting Evans v. Walter Indus., 449 F.3d at 1167).  The Defendants argue that the cases they cite

in the Notice of Removal reject the tactic of naming a local insurance agent to invoke the local-

controversy exception and that the Plaintiffs' Motion did not discuss or distinguish those cases.  See

Response at 9.  The Defendants point to the Senate Committee Report on CAFA, which states: "[I]n

a consumer fraud case alleging that an insurance company incorporated and based in another state

misrepresented its policies, a local agent of the company named as a defendant presumably would

not fit [the 'significant defendant'] criteria."  Response at 9 (citing Senate Report on CAFA, S. Rep.

No. 109-14 at 40, 2005 WL 627977, at *34 (Feb. 28, 2005)).  They assert that CAFA is not limited

to multi-state class actions and that allowing the Plaintiffs to avoid federal jurisdiction, because the Plaintiffs named Desert Mountain, would undermine CAFA's purpose.  See Response at 10.

The Defendants also argue that the Plaintiffs' reliance on the Court's discretion under the Declaratory Judgment Act is misplaced.  They assert that this situation is not one where abstention is appropriate, because there is not a parallel state proceeding and because the Plaintiffs are seeking more than declaratory relief.  See Response at 11.  The Defendants contend that abstention arises more appropriately when a plaintiff sues a defendant in state court, and when the defendant subsequently sues the plaintiff in federal court in a competing and parallel action seeking declaratory relief on the same core issues.  See Response at 11 (citing Brillhart v. Excess Ins. Co., 316 U.S. at 494-95; Wilton v. Seven Falls Co., 515 U.S. at 282; Amanatullah v. Colo. Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir. 1999)).  They assert that, when there is no pending state proceeding, abstention is not warranted.  See Response at 12 (citing United States v. City of Las Cruces, 289 F.3d 1170, 1183 (10th Cir. 2002); Hartford Ins. Co. of the Midwest v. Estate of Tollardo, Nos. 04-0997, 04-1120, 2005 WL 3662914, at *2 (D.N.M. Nov. 20, 2005)(Browning, J.)).  They argue that the rule permitting abstention from a declaratory judgment action does not apply where the defendant removed the action from state court instead of filing a declaratory relief action in federal court during the pendency of the state court action.  See Response at 12.  The Defendants further assert that the Court lacks discretion to decline jurisdiction, because the Plaintiffs seek injunctive and monetary relief, and because abstention under the Declaratory Judgment Act is not permitted when coercive claims are present.  See Response at 13.  They contend that it is well-settled that, where a complaint seeks injunctive as well as declaratory relief, abstention under Brillhart v. Excess Ins. Co. is not appropriate.  See Response at 13.  The Defendants also argue that a claim for reformation of insurance policies is more like a request for class-wide monetary relief than a

-17-

declaratory action.  See Response at 14 (citing Fincher v. Prudential Prop. & Cas. Ins. Co., No. 00-2098, 2007 WL 891371 (D. Colo. Mar. 22, 2007)(Blackburn, J.), aff'd 374 F.App'x 833 (10th Cir. 2010)(unpublished)).  The Defendants point to the Motion and to the Plaintiffs' comment that class members "may be entitled to new or additional [uninsured or underinsured motorist] benefits" as an admission that the requested relief is more akin to monetary relief.  Response at 14 (citing Motion at 15).  With respect to their traditional diversity jurisdiction analysis, the Defendants made substantially the same arguments in their Response as they did in the Notice of Removal. See Response at 15-17.

On August 8, 2011, the Plaintiffs filed their Reply on Motion to Remand to State Court for Lack of Federal Jurisdiction.  See Doc. 75 ("Reply").  The Plaintiffs assert that the Defendants "treat this case as if it were an ordinary insurance action brought to enforce some unresolved rule of law concerning [uninsured or underinsured motorist] insurance coverage."  Reply at 1 (emphasis original).  The Plaintiffs argue that this case is unique, because it is "an equitable action for declaratory relief brought to ensure enforcement of an affirmative mandate of the New Mexico Supreme Court."  Reply at 1 (emphasis original).  They emphasize that Jordan v. Allstate Ins. Co. is more than a judicial holding -- it is a "judicial act of insurance regulation."  Reply at 2 (emphasis original).  They assert that, in Jordan v. Allstate Ins. Co., the Supreme Court of New Mexico ordered every insurer in New Mexico to retroactively reform its non-conforming uninsured motorist policies and that such a broad sweeping reform distinguishes this case from the cases which the Defendants cite.  See Reply at 2.  The Plaintiffs argue that the "Defendants' unified opposition to this action more than amply demonstrates their united refusal to fully comply with the Supreme Court's regulatory mandate," and that this opposition "is directly relevant to whether the Supreme Court's regulatory Order should be enforced in the New Mexico State courts or in the federal courts."  Reply

at 3.  They contend that the Defendants are attempting to "try to reform Plaintiffs' pleadings to suit their arguments" and that the Defendants' presumption that the "Plaintiffs' 'ultimate' objective in this case is the payment of money is simply false."  Reply at 4.  The Plaintiffs assert that they seek no monetary damages and that what "happens after Plaintiffs achieve the equitable relief sought in this case will be left for other cases."  Reply at 4.

With respect to the local-controversy exception to CAFA, the Plaintiffs argue that: (i) the premium disclosure requirements of Jordan v. Allstate Ins. Co. is the most "substantial" element of that decision; and (ii) their request to enforce compliance with the premium disclosure ruling is the most "significant" relief sought against every Defendant.  Reply at 5.  The Plaintiffs assert that these facts establish that they seek significant relief from Desert Mountain.  See Reply at 6.  They contend that there is no statutory definition of "significant relief," and that whether significant relief is sought is determined through a comparison of relief sought between all Defendants.  Reply at 5-6.  They argue that, because the same relief is sought against each Defendant, they have sought significant relief against Desert Mountain.  Reply at 6.  The Plaintiffs further assert that there is not support in the record for the Defendants' allegation that Travelers Insurance is responsible for promulgating the uninsured motorist selection/rejection forms.  See Reply at 7.  They state that they specifically allege that Gatewood "seeks injunctive relief . . . to affirmatively provide all applicants for a New Mexico MFRA policy with a written Jordan menu" and that the Defendants' argument that "Gatewood seeks relief only against Travelers" is incorrect, because their allegations refer to every Desert Mountain customer.  Reply at 9.

On March 7, 2012, the Court held a hearing.  The Plaintiffs argued that the state courts have exclusive jurisdiction to enforce the state insurance regulations that were mandated in Montano v. Allstate Indem. Co., 135 N.M. 681, 92 P.3d 1255 (2004) and Jordan v. Allstate Ins. Co.  See

Transcript of Hearing at 8:22-9:2 (March 7, 2012)(Berardinelli)("Tr.").[3] They also asserted that the Court should consider the McCarran-Ferguson Act, 15 U.S.C. § 1012, abstention under Burford v. Sun Oil Co., 319 U.S. 315 (1943)[4] or Brillhart v. Excess Ins. Co., and the Rooker-Feldman[5] doctrine. See Tr. at 9:3-8 (Berardinelli). The Plaintiffs stated that this is a rare case and argued that the Court should remand to the state court, because the Plaintiffs are attempting to enforce the Supreme Court of New Mexico's universal mandate regulating automobile insurance. See Tr. at 9:9-16 (Berardinelli). They pointed to Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996), where the Supreme Court held that abstention under Burford v. Sun Oil Co. allows a federal court to abstain if it presents difficult questions of state law bearing on policy problems of substantial public import. See Tr. at 10:6-17 (Berardinelli). The Plaintiffs argued that the policies announced in Jordan v. Allstate Ins. Co. represent regulations of substantial public concern and that enforcement should take place in state court, because the Supreme Court of New Mexico prescribed certain procedures in the manner of a regulation. See Tr. at 10:17-11:6 (Berardinelli). They emphasized that abstention under Burford v. Sun Oil Co. stems from the discretion courts of equity traditionally enjoy, and from principles of federalism and comity, which are equally important in this case. See Tr. at 11:7-19

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

[4]A federal district court should give a "sound respect" to comprehensive state statutory schemes, under Burford v. Sun Oil Co., and allow state administrative systems to determine matters the state desires to have determined administratively. See Copar Pumice Co., Inc. v. Morris, No. 07-0079, 2009 WL 5201799, at *14 (D.N.M. Oct. 23, 2009)(Browning, J.).

[5]The Rooker-Feldman doctrine derives from two Supreme Court of the United States cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The United States Court of Appeals for the Tenth Circuit has held that the "Rooker-Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments." Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1142-43 (10th Cir. 2006).

(Berardinelli).  The Plaintiffs asserted that the state's interests in this case are paramount and that the dispute would best be adjudicated in a state forum.  See Tr. at 11:20-12:6 (Berardinelli).  They also contended that the McCarran-Ferguson Act preserves the state's right to regulate the business of insurance, and the relationships between an insurer and the insured.  See Tr. at 12:22-13:13 (Berardinelli).  The Plaintiffs asserted that the Supreme Court of New Mexico addressed that relationship in Jordan v. Allstate Ins. Co.  See Tr. at 14:10-15 (Berardinelli).  The Plaintiffs cited Safety National Casualty Corporation v. Certain Underwriters at Lloyd's London, 587 F.3d 714 (5th Cir. 2009), for the proposition that the McCarran-Ferguson Act allows state law to reverse preempt an otherwise applicable federal statute.  See Tr. at 17:12-25 (Berardinelli).  Extending this principle, the Plaintiffs argued that CAFA cannot invalidate, impair, or supersede the Supreme Court of New Mexico's regulatory, retroactive ruling in Jordan v. Allstate Ins. Co.  See Tr. at 18:4-14 (Berardinelli).  They contended that the Defendants have the burden of proving that the McCarran-Ferguson Act does not reverse preempt CAFA.  See Tr. at 18:15-20 (Berardinelli).

With respect to the Rooker-Feldman doctrine, the Plaintiffs argued that there can be no re-litigation of issues that are inextricably intertwined with Jordan v. Allstate Ins. Co. and cited DePasquale v. Allstate Ins. Co., 179 F.Supp.2d 51 (E.D.N.Y. 2002), for the proposition that the Rooker-Feldman bars federal courts from exercising jurisdiction over cases that seek review of "inextricably intertwined" state-court judgments.  Tr. at 20:2-22 (Berardinelli).  They asserted that for this Court to do anything other than enforce the mandate in Jordan v. Allstate Ins. Co. would mean that the Court was determining that the Supreme Court of New Mexico was wrong.  See Tr. at 20:23-21:5 (Berardinelli).

The Plaintiffs then discussed several New Mexico cases related to automobile insurance policies.  See Tr. at 21:17-30:11 (Berardinelli).  They argued that the Supreme Court of New

-21-

Mexico's objective in <u>Jordan v. Allstate Ins. Co.</u> is that all insurance companies operating in New Mexico offer the menu that <u>Jordan v. Allstate Ins. Co.</u> mandated, which the Plaintiffs asserted has been universally ignored.  <u>See</u> Tr. at 30:12-31:7 (Berardinelli).  The Plaintiffs contended that the Superintendent of Insurance has not issued a regulation with respect to the <u>Jordan v. Allstate Ins. Co.</u> menu and stated that the only viable vehicle to enforce the Supreme Court of New Mexico's mandate is through the state judicial courts.  <u>See</u> Tr. at 35:19-37:7 (Berardinelli).  They asserted that no insurance company has complied with <u>Jordan v. Allstate Ins. Co.</u>  <u>See</u> Tr. at 39:8-40:1 (Berardinelli).  The Plaintiffs stated that they seek equitable relief only: (i) a declaratory judgment stating that all insurance policies are retroactively reformed to provide equal-limits coverage; (ii) notice to the insureds of the policy changes; and (iii) a court order that the insurers must provide the menu that <u>Jordan v. Allstate Ins. Co.</u> requires.  <u>See</u> Tr. at 40:2-14 (Berardinelli).  The Plaintiffs argued that the only viable remedy is in state court and, under principles of comity and in deference to the regulatory system, the Court should find that it does not have jurisdiction.  <u>See</u> Tr. at 41:23-42:7 (Berardinelli).  They asserted that the Court must determine whether there is reverse preemption and noted that all of their claims apply equally to all of the Defendants, including Desert Mountain.  <u>See</u> Tr. at 43:4-10 (Berardinelli).

The Court asked whether the purpose of the McCarran-Ferguson Act was to determine what law applies and whether it would deprive the Court of jurisdiction.  <u>See</u> Tr. at 43:11-18 (Court).  The Plaintiffs responded that the McCarran-Ferguson Act is jurisdictional and intended to bar the federal courts from exercising jurisdiction when a case involves state regulation of insurance.  <u>See</u> Tr. at 43:19-25 (Berardinelli).  They argued that this issue is one of extreme public interest which goes to the very essence of the Court's jurisdiction and that Congress intended to withdraw federal jurisdiction from matters related to the regulation of insurance.  <u>See</u> Tr. at 44:12-24 (Berardinelli).

They further asserted that the Supreme Court of New Mexico has already determined that all insurers must provide this menu and coverage, and that the case before the Court is an attempt to enforce the Jordan v. Allstate Ins. Co. mandate.  See Tr. at 44:24-45:22 (Berardinelli).  The Plaintiffs explained that their argument is that, because CAFA is a federal statute, the Court cannot assume jurisdiction under CAFA in an insurance case if that exercise of jurisdiction would interfere with the State's right to regulate insurance.  See Tr. at 46:4-14 (Berardinelli).  They clarified that there is not an insurance exception to CAFA and conceded that a case involving insurance would not divest the Court of CAFA jurisdiction.  See Tr. at 46:24-47:16 (Berardinelli).  The Court then asked about the Plaintiffs' references to Rooker-Feldman and whether it would apply, because the Court is not being asked to determine the correctness of a state court judgment.  See Tr. at 47:17-23 (Court).  The Plaintiffs responded that they brought Rooker-Feldman up because the Defendants are arguing that they do not have to obey the Jordan v. Allstate Ins. Co. mandate and, if the Court agreed, the Court would be overruling the Supreme Court of New Mexico on an issue of New Mexico law.  See Tr. at 47:24-48:10 (Berardinelli).  They argued that, when the Supreme Court of New Mexico remands a case ordering insurance companies to comply with a decision, the federal courts do not get to take jurisdiction of that case.  See Tr. at 48:16-49:8 (Berardinelli).  The Court agreed that assessment would be true if the Defendants were trying to remove Jordan v. Allstate Ins. Co., but asked whether that assessment hold true where there is a different case and involved different parties.  See Tr. at 49:9-12 (Court).  The Plaintiffs responded that the Court's point was a distinction without a difference, because the Supreme Court of New Mexico chose to make a universal holding in Jordan v. Allstate Ins. Co.  See Tr. at 49:13-50:2 (Berardinelli).  The Court then asked, with respect to abstention, for what action it would be abstaining.  See Tr. at 50:3-6 (Court).  The Plaintiffs asserted that the Court would be abstaining to allow the state court to address these

issues, but conceded that there is not a separate state court action.  See Tr. at 50:7-10 (Berardinelli).

They reiterated that the only way to have a uniform insurance policy is to have the state court deal

with these cases.  See Tr. at 51:11-52:13 (Berardinelli).  They further asserted that the case before

the Court is a continuation of Jordan v. Allstate Ins. Co. and that the Court should send it back to

the state courts for enforcement.  See Tr. at 53:3-10 (Berardinelli).

The Defendants then argued in opposition.  The Defendants argued that the intent of

Congress in adopting CAFA was to expand federal jurisdiction and that all doubts in interpreting

the statute were to be resolved in favor of jurisdiction, with the exceptions construed narrowly.

See Tr. at 55:6-10 (Strong).  They argued that the Tenth Circuit has held that the Court has an

unflagging obligation to exercise jurisdiction where it has it.  See Tr. at 55:10-15 (Strong).  The

Defendants asserted that none of the Plaintiffs' arguments regarding abstention under Burford v. Sun

Oil Co., McCarran-Ferguson Act preemption, or Rooker-Feldman abstention were properly briefed.

See Tr. at 55:16-56:6 (Strong).  The Defendants then argued that this is not the type of complicated

case that calls for abstention under Burford v. Sun Oil Co., because this case is an enforcement

action and the Plaintiffs are taking the position that it is not a difficult question of state law.  See Tr.

at 56:7-24 (Strong).  They contended that the case law is clear that the value of declaratory or

injunctive relief include all benefits that logically flow from that relief.  See Tr. at 56:25-57:7

(Strong).  They asserted that the Senate Committee Report on CAFA commented that the value of

the matter in litigation can be determined from the viewpoint of the plaintiff or defendant.  See Tr.

at 57:7-13 (Strong).  They represented that the Senate Committee also stated that, in assessing

declaratory relief, a court should include in its assessment the value of all relief and all benefits that

would logically flow from the granting of the relief.  See Tr. at 57:19-58:12 (Strong).  The

Defendants contended that the Plaintiffs have not disputed that billions of dollars could be at issue.

See Tr. at 58:11-15 (Strong).  They argued that the relief that the Plaintiffs seek has a monetary value, and that there will be lost premiums and administrative costs.  See Tr. at 59:19-60:13 (Strong).  The Defendants stated that they do not contest that Jordan v. Allstate Ins. Co. applies or its constitutionality.  See Tr. at 60:18-61:11 (Strong).

With respect to the local-controversy exception to CAFA, the Defendants argued that an attorney's affidavit and allegations do not establish that significant relief was sought against a non-diverse defendant.  See Tr. at 61:11-25 (Strong).  The Defendants asserted that the Plaintiffs bear the burden of establishing that a CAFA exception applies and that the Plaintiffs have not met that burden.  See Tr. at 62:4-12 (Strong).  They explained that the local-controversy exception envisions a scenario where the local defendant is the primary focus of the plaintiff's claims.  See Tr. at 62:11-15 (Strong).  They argued that, under the statute's language, the Court must determine whether significant relief is sought against a non-diverse defendant whose conduct forms a significant basis for the claims asserted and contended that Desert Mountain was not the Complaint's focus.  See Tr. at 62:16-63:4 (Strong).  They represented that, in Evans v. Walter Indus., Inc., the United States Court of Appeals for the Eleventh Circuit held that the significant-relief prong is not established where only one of eighteen defendants was local and was alleged to have contributed to contamination.  See Tr. at 63:5-11 (Strong).  The Defendants noted that Desert Mountain was the only insurer agent who had been sued and that the Plaintiffs seek only one form of relief against it. See Tr. at 63:12-23 (Strong).  The Defendants also noted that the Complaint mentions only one Plaintiff to whom Desert Mountain issued a policy.  See Tr. at 64:7-17 (Strong).  The Defendants asserted that abstention under Brillhart v. Excess Ins. Co. also does not apply, because the Plaintiffs are not seeking pure declaratory relief and there is no pending state case.  See Tr. at 65:7-66:2 (Strong).  With respect to the traditional diversity jurisdiction analysis, the Defendants argued that

the Court should sever or dismiss Desert Mountain from this case, because it is an anomalous Defendant and does not fit easily into the case.  See Tr. at 67:16-68:8 (Rohback).  The Defendants emphasized that the Court has discretion to sever a party to preserve diversity jurisdiction and the Court could remand the case against Desert Mountain to state court.  See Tr. at 68:25-69:14 (Rohback).  They reiterated that none of the paragraphs that refer to Desert Mountain state a cause of action and that the Plaintiffs had admitted that the Superintendent of Insurance approved the forms used, establishing the applicability of an exception from the UTPA.  See Tr. at 69:15-71:8 (Rohback).

Regarding CAFA's specific requirements, the Defendants asserted that: (i) there are at least one-hundred putative class members; (ii) that the aggregated amount in controversy is in excess of $5,000,000.00; and (iii) no exceptions apply.  See Tr. at 73:10-21 (Spano).  Focusing on the amount in controversy, the Defendants argued that the relief sought would be costly, because the Plaintiffs seek to reform all policies issued after May 2004, to have the Defendants notify all insureds of this change, and to have the insurers develop and implement a new uninsured motorist coverage selection form.  See Tr. at 74:8-14 (Spano).  The Defendants contended that they need show only that it is possible that the cost of relief would satisfy the amount in controversy standard, and that the Court should look at the benefits or costs of the relief sought.  See Tr. at 74:15-75:21 (Spano).  The Defendants then discussed the costs that they calculated in their Response and argued that they have met the amount-in-controversy requirement.  See Tr. at 75:22-78:11 (Spano).  The Defendants asserted that reverse preemption under the McCarran-Ferguson Act is not a jurisdictional issue, and that a federal court retains jurisdiction to adjudicate the rights of policyholders and insureds.  See Tr. at 78:12-79:11 (Spano).  The Court asked whether the Defendants had a response to the Plaintiffs' argument that the McCarran-Ferguson Act affects congressional statutes and that CAFA is a

congressional statute.  <u>See</u> Tr. at 79:12-19 (Court).  The Defendants responded that, for the McCarran-Ferguson Act to apply, CAFA would have to conflict with a state law that is designed to regulate insurance and argued that CAFA does not conflict with state law.  <u>See</u> Tr. at 79:20-81:2 (Spano).  The Defendants also contended that the McCarran-Ferguson Act cannot preempt CAFA, because the McCarran-Ferguson Act applies only to state-enacted laws regulating insurance, and this case deals with a judicial decision.  <u>See</u> Tr. at 82:4-21 (Kohls).

The Court then asked the Plaintiffs whether they conceded the amount in controversy requirement under CAFA is met.  <u>See</u> Tr. at 83:24-84:9 (Court).  The Plaintiffs asserted that they did not concede the amount in controversy issue and argued that, beyond the estimated $500,000.00 in administrative costs, the amount in controversy calculations are entirely speculative.  <u>See</u> Tr. at 84:15-85:2 (Berardinelli).  The Plaintiffs stated that they are not asking for payment of premiums. <u>See</u> Tr. at 85:3-4 (Berardinelli).  The Court asked whether the Plaintiffs would agree that the relief they seek will, as a practical matter, have a financial impact and that the Court can look at the impact of these changes.  <u>See</u> Tr. at 85:12-20 (Court).  The Plaintiffs responded that whether policyholders can collect under the policies is not the Plaintiffs' objective and argued that all the relief they seek is compliance with <u>Jordan v. Allstate Ins. Co.</u>.  <u>See</u> Tr. at 85:20-86:7 (Court, Berardinelli).  They argued this case involves a regulatory action and the question is whether the federal court should be involved in telling insurance companies what is appropriate under the Supreme Court of New Mexico's case law.  <u>See</u> Tr. at 86:8-17 (Berardinelli).  The Plaintiffs asserted that Desert Mountain is wrong when it argues that the Plaintiffs do not seek significant relief against it, because the Plaintiffs want insurance agents to have to comply with the law as well.  <u>See</u> Tr. at 86:17-19 (Berardinelli).  They also contended that there is no evidence to support the assertion that Desert Mountain cannot promulgate a form.  <u>See</u> Tr. at 86:20-25 (Berardinelli).  The Plaintiffs argued that

comity, in its purest form, is at stake in this action and that, if the Court decides the case, then purpose of the McCarran-Ferguson Act will be defeated.  See Tr. at 87:5-10 (Berardinelli).  The Plaintiffs conceded that the only aspects of CAFA that they are challenging is the amount in controversy requirement and application of the local-controversy exception.  See Tr. at 89:6-22 (Court, Berardinelli).  The Plaintiffs asserted that they have satisfied the local-controversy exception, because the most significant relief is to obtain compliance and this case is dealing with significant public policy interests.  See Tr. at 89:23-90:12 (Berardinelli).  They also argued that, if the Court finds jurisdiction under CAFA, it will be in direct conflict with the McCarran-Ferguson Act.  See Tr. at 90:13-22 (Berardinelli).

On March 14, 2012, Metropolitan Casualty and Travelers Insurance filed the Supplemental Memorandum of Defendants Metropolitan Property and Casualty Insurance Company and Travelers Home and Marin Insurance Company in Support of Their Joint Opposition to Motion to Remand.  See Doc. 111 ("Sur-Reply").  Metropolitan Casualty and Travelers Insurance note that the Plaintiffs "never mentioned the McCarran-Ferguson Act, 'reverse-preemption' or the Burford Doctrine" in the Motion.  Sur-Reply at 1.  They argue that the McCarran-Ferguson Act does not divest federal courts of jurisdiction over cases involving the insurance industry.  See Sur-Reply at 2 (citing Grimes v. Crown Life Ins., 857 F.2d 699 (10th Cir. 1988); Atl. & Pac. Ins. Co. v. Combined Ins. Co. of Am., 312 F.2d 513, 515 (10th Cir. 1962)).  They assert that, although Grimes v. Crown Life Ins. was remanded under the Burford v. Sun Oil Co. abstention doctrine, Grimes v. Crown Life Ins. is distinguishable from the one before the Court, because, there, the plaintiff was the Oklahoma Insurance Commissioner, the subject of the litigation related to state court insolvency proceedings, and the Oklahoma statute provided for exclusive jurisdiction in the state district court.  See Sur-Reply at 2-3 (citing Grimes v. Crown Life Ins., 857 F.2d at 705).  Metropolitan Casualty and

-28-

Travelers Insurance also refer the Court to the numerous cases that they cite in the Notice of Removal to refute the argument that there is an insurance exception to CAFA.  See Sur-Reply at 3-4 (citing Notice of Removal ¶¶ 51-52, at 20-21).  They note that the Plaintiffs are not claiming that the Insurance Division of the New Mexico Public Regulation Commission has exclusive jurisdiction "to resolve the submission and approval of form language," because that would remove jurisdiction from the state courts as well and argue that the Plaintiffs "are simply attempting to deprive out-of-state insurance company defendants from being able to defend themselves in federal court."  Sur-Reply at 5.  They contend that there is no insurance exception for CAFA jurisdiction nor any case law or other authority that would deprive the Court of jurisdiction.  See Sur-Reply at 5.

## LAW REGARDING CAFA

CAFA jurisdiction exists when the proposed class contains at least one-hundred persons, the amount in controversy exceeds $5,000,000.00, and there is minimal diversity.  See 28 U.S.C. § 1332(d)(2) and (5).  "CAFA was enacted to respond to perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts."  Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1243 (10th Cir. 2009).

### 1.    Amount in Controversy.

The amount-in-controversy requirement is "an estimate of the amount that will be put at issue in the course of the litigation."  McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008).[6]

---

[6]The Court relies upon several cases discussing the amount-in-controversy requirement in the context of a traditional diversity jurisdiction analysis.  The Court found no cases suggesting that these cases would be inapplicable to CAFA, but found several cases, from other circuits and from within the Tenth Circuit, where a federal court cited a traditional diversity case to determine whether CAFA's amount-in-controversy requirement was met.  See Rolwing v. Nestle Holdings, Inc., 666 F.3d 1069, 1072 (8th Cir. 2012)(citing traditional diversity cases to inform whether the CAFA amount-in-controversy requirement was met); Armur v. Transamerica Life Ins. Co., No. 11-2034, 2011 WL 1699281, at *1 (D.Kan. May 4, 2011)(citing McPhail v. Deere & Co. and other traditional

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).  The Tenth Circuit follows the "either viewpoint rule," which considers either the value to the plaintiff, or the cost to the defendant of injunctive and declaratory relief, as the measure of the amount in controversy.  Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d 893, 897 (10th Cir. 2006).  The Senate Report on CAFA also provides that the amount in controversy shall be determined from the viewpoint either of the plaintiff or of the defendant.  See S. Rep. No. 109-14 at 42-43, 2005 WL 627977, at *37.  The Senate Report states: "[T]he Committee intends that a matter be subject to federal jurisdiction under this provision if the value of the litigation exceeds $5,000,000.00 either from the viewpoint of the plaintiff or the viewpoint of the defendant, regardless of the type of relief sought."  S. Rep. No. 109-14 at 42-43, 2005 WL 627977, at *37.

        The Senate Report also provides that, "in assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of relief and benefits that would logically flow from the granting of the declaratory relief sought."  S. Rep. No. 109-14 at 42-43, 2005 WL 627977, at *37.  In Keeling v. Esurance Ins. Co., 660 F.3d 273 (7th Cir. 2011)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit began its CAFA

---

diversity cases from the Tenth Circuit; In Re Gen. Motors Corp., "Piston Slap" Prods. Liab. Litig., No. MDL-04-1600, 2005 WL 1606445, at *4 (W.D. Okla. July 6, 2005)(citing Hunt v. Wash. State Apply Adver. Comm'n, 432 U.S. 333, 347 (1977) and other traditional diversity cases on the amount-in-controversy requirement).  The Court believes that applying case law from traditional diversity cases to determine the amount in controversy is appropriate, because CAFA "operates as an expansion of diversity jurisdiction" and is found in 28 U.S.C. § 1332 with the traditional diversity jurisdiction requirements.  Farina v. Nokia Inc., 625 F.3d 97, 110 (3d Cir. 2010).  Moreover, the way federal courts calculate the amount-in-controversy should not vary between CAFA and traditional diversity jurisdiction, because both provisions of § 1332 seek to determine the amount-in-controversy in the litigation and the value of the litigation to the parties.

analysis of the amount in controversy with the "value of the injunctive relief that the class demands," and held that "the cost of prospective relief cannot be ignored in the calculation of the amount in controversy." 660 F.3d at 274. The United States District Court for the Western District of Oklahoma has also held that the value of injunctive relief sought is determined "by 'the pecuniary effect an adverse declaration will have on either party to the lawsuit.'" Cox v. Allstate Ins. Co., No. 07-1449, 2008 WL 2167027, at *3 (W.D. Okla. May 22, 2008)(Leonard, J.) (quoting City of Moore v. Atchison, Topeka, & Santa Fe Ry. Co., 699 F.2d 507, 509 (10th Cir. 1983))(addressing CAFA's amount-in-controversy requirement). See Toller v. Sagamore Ins. Co., 558 F.Supp.2d 924, 930-31 (E.D. Ark. 2008)(addressing CAFA's amount-in-controversy requirement).

In determining the value of litigation which increases insurance coverage, several courts have held that the proper measure of the amount in controversy is the increase in coverage limits of the policy. In Whitehead-Rojas v. American Family Mutual Ins. Co., No. 08-0103, 2008 WL 1924899 (D.Colo. Apr. 28, 2008), the United States District Court for the District of Colorado calculated the amount in controversy, in a case where the plaintiff sought reformation of an insurance policy, by looking at the enhanced benefits that the plaintiff would receive through the increase in coverage. See 2008 WL 1924899, at *3. Accordingly, where the plaintiff alleged that the policy limits should increase from $130,000.00 to $200,000.00, the District of Colorado determined that $70,000.00 was in controversy. See Whitehead-Rojas v. Am. Family Mut. Ins. Co., 2008 WL 1924899, at *3. See also Henderlong v. Allstate Ins. Co., No. 10-0698, 2010 WL 3843324, at *2 (D.Colo. Sept. 24, 2010)(finding that, where the plaintiff sought an increase in coverage in excess of the policy limits, the amount in controversy was the value of the additional coverage); Robinson v. Home Indem. Co., 316 F.Supp. 129, 131 (E.D. Ark. 1970)(holding that amount in controversy, where plaintiffs sought to reform insurance policy, was the increased

exposure to the insurance company that would result from increasing coverage to the insured).  The United States Court of Appeals for the Sixth Circuit has held that, where the plaintiffs sought a declaratory judgment regarding their uninsured motorist coverage, the amount in controversy is the difference between the coverage they seek and the coverage that they currently have.  See Freeland v. Liberty Mut. Ins. Co., 632 F.3d 250, 254 (6th Cir. 2011).  The Seventh Circuit has held that, "when the validity of a policy is in dispute, the face-value of that policy is a proper measure of the amount-in-controversy."  Hawkins v. Aid Ass'n for Lutherans, 338 F.3d 801, 805 (7th Cir. 2003).

Federal courts have also held that a court can calculate the costs associated with the relief sought for the defendants to determine the amount in controversy.  The Seventh Circuit has held that, where an insurer-defendant would either have to "stop charging a premium or change the terms so that policyholders receive indemnity more frequently, it will suffer a financial loss" and that the $1,500,000.00 in lost premiums was part of the amount in controversy.  Keeling v. Esurance Ins. Co., 660 F.3d at 274.  In Armur v. Transamerica Life Ins. Co., No. 10-2136, 2010 WL 4180459 (D. Kan. Oct. 20, 2010)(Melgren, J.), the Honorable Eric F. Melgren, United States District Judge for the District of Kansas, held that the amount in controversy requirement was satisfied where the insurer-defendant "identified the total number of in-force LTC policies owned by Kansas residents as 4,683, and the amount of premium increases, over the lifetime of those policies, as $6,441,652," and where the plaintiffs challenged all premium increases.  2010 WL 4180459, at *4.  Another district court within the Tenth Circuit has also applied the lost-premium method of calculating the amount in controversy.  In Cox v. Allstate Ins. Co., the Honorable Tim Leonard, United States District Judge for the Western District of Oklahoma, held that the insurer-defendant presented uncontroverted evidence that, in 2006, it received $70,000,000.00 in premium payments for replacement cost policies sold in Oklahoma and that disgorgement of those premiums, which the

plaintiff sought in their complaint, exceeded CAFA's jurisdictional minimum.  See 2008 WL 2167027, at * 3.  The United States District Court for the Eastern District of Arkansas agreed with an insurer-defendant that the amount that class members would have had to pay to purchase the coverage they sought in the litigation was an appropriate measure for the amount in controversy.  See Toller v. Sagamore Ins. Co., 558 F.Supp.2d at 929.  There, the Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, held that, because "the value of the insurance coverage -- measured by the amount that Sagamore charged for the coverages at issue -- exceeds $10,000,000," the amount in controversy requirement was met and denied the motion to remand.  Toller v. Sagamore Ins. Co., 558 F.Supp.2d at 931.  In Lohr v. United Financial Casualty Co., No. 09-752, 2009 WL 2634204 (W.D. Pa. Aug. 25, 2009), the United States District Court for the Western District of Pennsylvania held that, where the insurer-defendant established that "Progressive could incur over $7.7 billion in coverage requirements for which it has received no premiums, would have to rewrite all of its 517,403 Pennsylvania policies, and would need to notify all policyholders of the change in coverage," the amount in controversy requirement was met.  2009 WL 2637204, at *7.  The federal courts have also held that a court could look to prospective claim costs to determine the amount in controversy.  In Rasberry v. Capitol County Mutual Fire Insurance Co., 609 F.Supp.2d 594 (E.D. Tex. 2009), the United States District Court for the Eastern District of Texas held that "one realistic measure of the value of all relief and benefits that could logically flow from the granting of the declaratory relief sought by the claimants is the remaining limits on 6,643 policies ($166,324,177) considering that Rasberry alleges that Capitol County systematically mishandled all Hurricane Rita claims."  609 F.Supp.2d at 601.  See Stanforth v. Farmers Ins. Co. of Ariz., No. 09-1146, Memorandum Opinion and Order Denying Plaintiffs' Motion to Remand at 5, filed April 22, 2010 (Doc. 40)("Stanforth Order")(Puglisi, M.J.)(finding that the amount in

controversy requirement is met, where the defendants calculated, based on the previous year's uninsured motorist claims, that they would pay an extra $5,435,052.00 if coverage were extended in the manner sought).

**2.      Local-Controversy Exception.**

Congress created an exception to CAFA for those cases that "consist of primarily local, intrastate matters, which it characterized as the 'Local Controversy Exception.'" Coffey v. Freeport McMoran Copper & Gold, 581 F.3d at 1243. A district court shall decline to exercise jurisdiction when a plaintiff shows that:

    (I)     greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

    (II)    at least 1 defendant is a defendant --

        (aa)    from whom significant relief is sought by members of the plaintiff class;

        (bb)    whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

        (cc)    who is a citizen of the State in which the action was originally filed; and

    (III)   principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed . . . .

28 U.S.C. § 1332(d)(4)(A)(i).  A plaintiff must also show that, during the three years preceding the filing of the class action, no other class action was filed asserting the same or similar allegations against any of the defendants.  See 28 U.S.C. § 1332(d)(4)(ii).

In Coffey v. Freeport McMoran Copper & Gold, the Tenth Circuit upheld the district court's interpretation of 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) that the significant relief requirement of the local-controversy exception is satisfied where the complaint "claims that every potential plaintiff

is entitled to recover from [the local defendant] and the proposed class seeks to recover damages from all defendants jointly and severally." 581 F.3d at 1244.  The Tenth Circuit held that a district court should focus the complaint when addressing subsection (aa).  See Coffey v. Freeport McMoran Copper & Gold, 581 F.3d at 1245.  In Cox v. Allstate Ins. Co., the Western District of Oklahoma held that, where the local defendant received less than two-tenths of one percent of the amount paid to the out-of-state defendants in premiums for coverage that the plaintiffs were seeking to disgorge, the plaintiffs were not seeking significant relief from the local defendant.  See 2008 WL 2167027, at *4.  The Eleventh Circuit, in Evans v. Water Industries, Inc., held that courts can compare the relief sought against the local defendant to the relief sought against the other defendants and that, where the plaintiffs gave no insight into the comparative significance of the relief sought against the local defendant, the significant relief prong is not met.  See 449 F.3d at 1167,

With respect to subsection (bb), the United States Court of Appeals for the Fifth Circuit, in Opelousas General Hospital Authority v. FairPay Solutions, Inc., 655 F.3d 358 (5th Cir. 2011), held that the plaintiff failed to meet the local-controversy exception requirements, because the allegations against the sole local defendant did not form a significant basis of claims of the potential class. See 655 F.3d at 361-62.  The Fifth Circuit held that the plaintiffs' allegations contained no information about the local defendant's conduct relative to the other defendants' conduct, and that the plaintiffs' claims against the local defendant rested on the allegation that the local defendant relied on the non-local defendant's calculations.  See Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc., 655 F.3d at 362.  The United State Court of Appeals for the Third Circuit, when addressing the local-controversy exception, held that the significant-basis prong "means the claims asserted by all the class members in the action," although not every member of the proposed plaintiff class need assert a claim against the local defendant.  Kaufman v. Allstate N.J. Ins. Co., 561 F.3d

144, 155 (3d Cir. 2009).  It held that, "[i]n relating the local defendant's alleged conduct to all the claims asserted in the action, the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants."  Kaufman v. Allstate N.J. Ins. Co., 561 F.3d at 156.  The Third Circuit also rejected "the assumption that the local defendant's conduct is significant as long as it is 'more than trivial or of no importance.'"  Kaufman v. Allstate N.J. Ins. Co., 561 F.3d at 157 (citations omitted).  In Lafalier v. Cinnabar Service Co., Inc., No. 10-0005, 2010 WL 1486900 (N.D. Okla. Apr. 13, 2010), the United States District Court for the Northern District of Oklahoma held that the local defendants' conduct formed a significant basis for the plaintiffs' claims, because the plaintiffs asserted claims against each local defendant and many plaintiffs did not have claims against the out-of-state defendants.  See 2010 WL 1486900, at *7-8. In Cox v. Allstate Ins. Co., the Western District of Oklahoma also held that the plaintiffs failed to establish that the local defendant's conduct formed a significant basis of the claims asserted, because its conduct was the basis for only one of the claims asserted, it did not write any of the policies, and it had a limited role in the class claims.  See 2008 WL 2167027, at *4.  In Evans v. Walter Industries, Inc., the Eleventh Circuit held that the plaintiff offered no insight into the role that the local defendant played in the alleged conduct and that the limited facts before the court gave rise to an inference that the local defendant was not a significant defendant, because numerous defendants were more closely related to the alleged harm.  See 449 F.3d at 1167-68.

## THE ROOKER-FELDMAN DOCTRINE

Although it has a complex history and was for a long time shrouded in mystery, the Rooker-Feldman doctrine embodies the simple principle that federal district courts have no jurisdiction to sit as courts of appeal to state courts.  "The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers'

-36-

challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance v. Dennis, 546 U.S. 459, 460 (2006)(quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).  See Erlandson v. Northglenn Mun. Court, 528 F.3d 785, 788-89 (10th Cir. 2008); Mann v. Boatright, 477 F.3d 1140, 1146 (10th Cir. 2007).  The elements, thus, are: (i) a state-court loser; (ii) who is asking a federal district court; (iii) to review the correctness of a judgment rendered by a state court; and (iv) which judgment was rendered before the commencement of the federal proceeding.  See Guttman v. Khalsa, 446 F.3d 1027, 1032 (10th Cir.2006)("The Rooker-Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.")(quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 284). The Tenth Circuit has made clear that "the Rooker-Feldman doctrine is confined to cases brought after the state proceedings have ended."  Mann v. Boatright, 477 F.3d at 1146 (internal quotation marks omitted).  See Guttman v. Khalsa, 446 F.3d at 1031-32 (holding that Rooker-Feldman doctrine applies only where state court appeals process has run its full course).

### LAW REGARDING EXERCISE OF DISCRETIONARY JURISDICTION OVER DECLARATORY JUDGMENT ACTIONS

In Brillhart v. Excess Insurance Co. of America, the Supreme Court explained that district courts are "under no compulsion to exercise . . . jurisdiction" under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 to 2202.  316 U.S. at 494.  The Supreme Court explained:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

Brillhart v. Excess Ins. Co. of Am., 316 U.S. at 495.  A court should determine whether the lawsuit

"can be better settled in the proceeding pending in the state court."  Brillhart v. Excess Ins. Co. of

Am., 316 U.S. at 495.

    The Tenth Circuit has adopted a five-factor test for evaluating whether a district court should

exercise its discretionary jurisdiction over a declaratory judgment action.  See St. Paul Fire and

Marine Ins. Co. v. Runyon, 53 F.3d at 1169.  These factors include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would
> serve a useful purpose in clarifying the legal relations at issue; [3] whether the
> declaratory remedy is being used merely for the purpose of "procedural fencing" or
> "to provide an arena for a race to res judicata "; [4] whether use of a declaratory
> action would increase friction between our federal and state courts and improperly
> encroach upon state jurisdiction; and [5] whether there is an alternative remedy
> which is better or more effective.

St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1169 (alterations original)(quoting State

Farm Fire and Cas. Co. v. Mhoon, 31 F.3d at 983).  The Tenth Circuit has held that a district court's

dismissal of a declaratory judgment action is an abuse of discretion when there is no pending state

proceeding.  See United States v. City of Las Cruces, 289 F.3d 1170, 1183 (10th Cir. 2002) (citing

ARW Exploration Corp. v. Aguirre, 947 F.2d 450, 454 (10th Cir. 1991)).   In St. Paul Fire and

Marine Insurance Co. v. Runyon, the plaintiff, an insurance company, sought a declaratory judgment

holding that it had no obligation to defend the defendant under the terms of a professional-liability

insurance policy.  See 53 F.3d at 1168.  The defendant sought indemnification and argued that the

plaintiff had a duty to defend him against claims brought by his coworkers.  See St. Paul Fire and

Marine Ins. Co. v. Runyon, 53 F.3d at 1168.  The insurance-company plaintiff refused to provide

a defense.  See St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1168.  The district court in

St. Paul Fire and Marine Ins. Co. v. Runyon had abstained from exercising jurisdiction, "because

the same issues were involved in the pending state proceeding, and therefore, there existed a more

effective alternative remedy."  53 F.3d at 1169.

The Tenth Circuit in <u>St. Paul Fire and Marine Insurance Co. v. Runyon</u> explained:

> The parties have a pending state contract action, which incorporates the identical issue involved in the declaratory judgment action.  [The defendant's] state breach of contract complaint against [the insurance-company plaintiff] alleges the coworkers' lawsuit is a "covered claim" pursuant to the insurance policy. In resolving the insurance contract, the state court will necessarily determine rights and obligations under the contract. [The insurance-company plaintiff] is seeking a declaration by the federal court that the coworkers' lawsuit is not a covered claim.  The issue in the federal declaratory judgment action is identical to what would be a defense to the state court contract action -- whether [the defendant]'s insurance contract with [the insurance-company plaintiff] protects him from the coworkers' lawsuit. Because the state court will determine, under state contract law, whether the tort action is covered by the insurance contract, it is not necessary for the federal court to issue a declaration on the insurance contract.

<u>St. Paul Fire and Marine Ins. Co. v. Runyon</u>, 53 F.3d at 1169.  A federal court is not required to refuse jurisdiction, but it "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."  <u>St. Paul Fire and Marine Ins. Co. v. Runyon</u>, 53 F.3d at 1170.  <u>See</u> <u>Schering Corp. v. Griffo</u>, No. 11-357, 2012 WL 394603, at *24-25 (D.N.M. Jan. 17, 2012)(Browning, J.).

### LAW REGARDING THE MCCARRAN-FERGUSON ACT AND FEDERAL JURISDICTION

The McCarran-Ferguson Act provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purposes of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance."  15 U.S.C. § 1012(b).  In <u>Grimes v. Crown Life Ins. Co.</u>, 857 F.2d 699 (10th Cir. 1988), the Tenth Circuit held that "we are hesitant to accept the proposition that a state statute, even when buttressed by the federal policy expressed in the McCarran-Ferguson Act, can affect the invocation of federal diversity jurisdiction."  857 F.2d at 702 (citing <u>Atl. & Pac. Ins. Co.</u>

-39-

v. Combined Ins. Co. of Am., 312 F.2d 513, 515 (10th Cir. 1962)).  It found that the policy of "the

McCarran-Ferguson Act was to leave the regulation of insurers to the states, it did not intend to

divest federal courts of the right to apply state law regarding the regulation of insurers in appropriate

diversity proceedings."  Grimes v. Crown Life Ins. Co., 857 F.2d at 702.  "The McCarran Act serves

to limit the authority of federal regulatory agencies as to practices in the insurance business in the

face of state acts and in the absence of specific federal law, but it does not follow that there is

thereby a modification of diversity jurisdiction of the federal courts."    Atl. & Pac. Ins. Co. v.

Combined Ins. Co. of Am., 312 F.2d at 515.   In Safety National Casualty Corp. v. Certain

Underwriters at Lloyd's London, the Fifth Circuit held that "we look skeptically on a claim that the

McCarran-Ferguson Act intended to deny diversity jurisdiction or federal question jurisdiction to

federal courts in the state of Louisiana."  587 F.3d at 724 n.39 (citing Grimes v. Crown Life Ins. Co.,

857 F.2d at 702-03).  The United States Court of Appeals for the Fourth Circuit, in Gross v.

Weingarten, 217 F.3d 208 (4th Cir. 2000), held:

> We are skeptical that Congress intended, through the McCarran-Ferguson Act, to
> remove federal jurisdiction over every claim that might be asserted against an insurer
> in state insolvency proceedings.  If nothing else, the argument proves too much, for
> it would operate to divest exclusively federal jurisdiction as effectively as it would
> diversity jurisdiction, leaving many plaintiffs with no forum in which to assert their
> federal rights.  In any event, we do not believe that concurrent federal jurisdiction
> over the defendants' counterclaims threatens to "invalidate, impair, or supersede" (as
> those terms are used in the McCarran-Ferguson Act) Virginia's efforts to establish
> a single equitable proceeding to liquidate or rehabilitate insolvent insurers.

217 F.3d at 222.  The United States Court of Appeals for the Ninth Circuit, in Hawthorne Savings

F.S.B. v. Reliance Ins. Co. of Illinois, 421 F.3d 835 (9th Cir.2005), followed the Fourth Circuit and

Tenth Circuit.  See 421 F.3d at 843.  In United States v. Wisconsin State Circuit Court for Dane

County, 767 F.Supp.3d 980 (W.D. Wisc. 2011), however, the United States District Court for the

Western District of Wisconsin held that the McCarran-Ferguson Act reverse preempts jurisdictional

statutes, such as 28 U.S.C. § 1332, when application of the federal removal statutes would impair the operation of a state law regulating insurance, which gave jurisdiction to state rehabilitation courts. See 767 F.Supp.2d at 983-84.

### LAW REGARDING ABSTENTION UNDER BURFORD V. SUN OIL CO.

In Burford v. Sun Oil Co., the Supreme Court held that the federal proceedings should have been dismissed where the lawsuit's subject matter in the federal district court involved a state agency's review of oil drilling permits, because the state had established its own review system for the permits and a federal court ruling would have an impermissibly disruptive affect on state policy for management of the oil fields. See 319 U.S. at 316-35. The Supreme Court found that Texas provided a "unified method for the formation of policy and determination of cases by the Commission and by the state courts," and that conflicts "in interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts." Burford v. Sun Oil Co., 319 U.S. at 333-34. The Tenth Circuit has noted that "Burford 'is concerned with protecting complex state administrative processes from undue federal interference.'" Heavy Petroleum Partners, LLC v. Atkins, No. 11-3017, 2012 WL 120058, at *8 n.8 (10th Cir. Jan. 17, 2012)(unpublished)(citing New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 362 (1989)). In New Orleans Public Service, Inc. v. Council of City of New Orleans, the Supreme Court held that, under the "Burford doctrine," a federal district court, sitting in equity, must decline to interfere with the proceedings or orders of state administrative agencies: (i) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (ii) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." 491 U.S. at 361.

Professors Charles Wright and Arthur Miller have commented that

the Court appears to sanction <u>Burford</u>-type abstention where, as in the <u>Burford</u> and <u>Alabama Public Service [Commission v. Southern Railway Co.</u>, 341 U.S. 341 (1951)] cases themselves, the state has a unified scheme for review of its administrative orders and federal intervention in cases in which diversity is present would have a disruptive effect on the state's efforts to establish a coherent policy on a matter of substantial public concern.

17A <u>Federal Practice & Procedure</u>, Jurisdiction § 4244 (3d ed. 2011). "While <u>Burford</u> is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." <u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. at 362. The Supreme Court has noted that an analysis of <u>Burford</u> will "only rarely" favor abstention, and that "the power to dismiss recognized in <u>Burford</u> represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 728 (1996). The United States Court of Appeals for the First Circuit has held that "<u>Burford</u> is normally implicated only 'when the federal courts are asked to interfere with state processes by reviewing the proceedings or orders of state administrative agencies." <u>Guillemard-Ginorio v. Contreras-Gomez</u>, 585 F.3d 508, 525 (1st Cir. 2009). The United States Court of Appeals for the Ninth Circuit has determined that "<u>Burford</u> abstention is improper where state law provides for judicial review in any state court of general jurisdiction rather than concentrating review in a 'particularized or specialized' court." <u>Cingular Wireless, LLC v. Thurston Cnty.</u>, 150 F.App'x 633, 635 (9th Cir. 2005)(unpublished).

In <u>Grimes v. Crown Life Ins. Co.</u>, the Tenth Circuit held that the McCarran-Ferguson Act becomes relevant to <u>Burford</u> abstention, because it encourages the states to formulate their own systems to regulate insurers doing business in their states. <u>See</u> 857 F.2d at 703. It found that,

> in instances where states have responded to this congressional policy by formulating complex and specialized administrative and judicial to regulate insurers, especially the liquidation of insolvent insurers, it becomes increasingly possible that the exercise by a federal court of its jurisdiction will prove to be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Grimes v. Crown Life Ins. Co., 857 F.2d at 703.  The Tenth Circuit explained that a number of factors are relevant to whether the exercise of jurisdiction is proper when states formulate comprehensive schemes for insurance regulation, including: (i) whether the suit is based on a cause of action which is exclusively federal; (ii) whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry; (iii) whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues; and (iv) whether difficult or unusual state laws are at issue.  See Grimes v. Crown Life Ins. Co., 857 F.2d at 704-05.  In Hawthorne Savings F.S.B. v. Reliance Insurance Co. of Illinois, the Ninth Circuit held that, when looking at Burford abstention in the insurance context, a court should consider whether resolution of the dispute would entail any more federal intrusion into state policy than any other diversity case.  See 421 F.3d at 848.  The Fifth Circuit has noted that the insurance solvency context presents the "classic example" of when a court should abstain under Burford.  Callon Petroleum Co. v. Frontier Ins. Co., 351 F.3d 204, 209 (5th Cir. 2003).

### SUPREME COURT OF NEW MEXICO CASES ON UNINSURED MOTORIST COVERAGE

N.M.S.A. 1978, § 66-5-301(A) and (C), in relevant part, state:

A.  No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in

New Mexico <u>unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy</u>, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

* * * *

C.   <u>[T]he named insured shall have the right to reject uninsured motorist coverage as described in Subsections A and B of this section</u>; provided that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer.

N.M. Stat. § 66-5-301(A) & (C)(emphasis added).  Regulation 13.12.3.9, which elaborates § 66-5-301, provides: "The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped, or otherwise made a part of the policy of bodily injury and property damage insurance."  N.M.A.C. § 13.12.3.9.

The Supreme Court of New Mexico has recognized that § 66-5-301 "embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state, with certain limited exceptions," and that the statute is "intended to expand  insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists."  <u>Romero v. Dairyland Ins. Co.</u>, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990).  Based upon those observations, the Supreme Court of New Mexico considers § 66-5-301 a remedial statute and, thus, maintains that it be liberally interpreted to further its purpose, construing exceptions to uninsured motorist coverage strictly to protect the insured.  <u>See</u>

-44-

Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  The Supreme Court of New

Mexico has noted that an insured may reject uninsured motorist coverage, but that such rejection

must satisfy the applicable regulations.  See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803

P.2d at 245.  To be valid, a rejection of uninsured motorist coverage must be made a part of the

policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy,

or by some other means that makes the rejection a part of the policy so as to clearly and

unambiguously call to the insured's attention that UM coverage has been waived.  See Romero v.

Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  With respect to the regulation requiring that

the rejection be made a part of the policy delivered to the insured, the Supreme Court of New

Mexico has stated:

> [Regulation 13.12.3.9] ensure[s] that the insured has affirmative evidence of the
> extent of coverage.  Upon further reflection, consultation with other individuals, or
> after merely having an opportunity to review one's policy at home, an individual may
> well reconsider his or her rejection of uninsured motorist coverage. Providing
> affirmative evidence of the rejection of the coverage comports with a policy that any
> rejection of the coverage be knowingly and intelligently made. Any individual
> rejecting such coverage should remain well informed as to that decision. We find that
> the regulation of the superintendent of insurance furthers a legislative purpose to
> provide for the inclusion of uninsured motorist coverage in every automobile liability
> policy unless the insured has knowingly and intelligently waived such coverage.

Romero v. Dairyland Ins. Co., 111 N.M. at 156-57, 803 P.2d at 245-46.  Based upon that assessment

of § 66-5-301 and N.M.A.C. § 13.12.3.9, the Supreme Court of New Mexico has held that, unless

the named insured rejects UM coverage in a manner consistent with statutory and administrative

requirements, UM coverage shall be read into an insured's policy regardless of the parties' intent

or the fact that a premium has not been paid.  See Kaiser v. DeCarrera, 122 N.M. 221, 223, 923 P.2d

588, 590 (1996)(quoting  Romero v. Dairyland Ins. Co., 111 N.M. at 155, 803 P.2d at 244).  In

Kaiser v. DeCarrera, the Supreme Court of New Mexico ruled that a valid rejection of uninsured

motorist coverage did not take place and, therefore, read uninsured motorist coverage into the policy.  The plaintiff had signed a rejection as part of the application for insurance, and the insurance company sent an amended policy reflecting the rejection to the address on the application that was returned to sender.  See Kaiser v. DeCarrera, 122 N.M. at 223, 923 P.2d at 590.  The Supreme Court of New Mexico found that the plaintiff was never provided a policy with the rejection included and that, as a result, uninsured motorist coverage should be read into the policy.  See Kaiser v. DeCarrera, 122 N.M. at 223, 923 P.2d at 590.

In Montano v. Allstate Indemnity Co., 135 N.M. 681, 92 P.3d 1255 (2004), the Supreme Court of New Mexico addressed the stacking of insurance coverage, noting that its cases had "expressed a public policy in favor of stacking," and that "it is unfair not to allow stacking when multiple premiums are paid or when the policy is otherwise ambiguous."  135 N.M. at 685, 92 P.3d at 1259 (emphasis original).  The Supreme Court of New Mexico indicated that it would take the opportunity to "chart a new course."  Montano v. Allstate Indem. Co., 135 N.M. at 686, 92 P.3d at 1260.  Interpreting § 66-5-301(A) and (C), the Supreme Court of New Mexico held that "an insurance company should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision" and that, with "written waivers, insureds will know exactly what coverage they are receiving and for what cost."  Montano v. Allstate Indem. Co., 135 N.M. at 686-87, 92 P.3d at 1260-61.  The Supreme Court of New Mexico also illustrated its holding:

> [I]n a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three [uninsured or underinsured motorist] coverages and allow the insured to reject, in writing, all or some of the offered coverages. Thus, hypothetically, in the case of a $25,000 policy, if the premium for one [uninsured or underinsured motorist] coverage is $65, two coverages is an additional $60, and three coverages $57, the insured who paid all three (for a total premium of $182) would be covered up to $75,000 in [uninsured or underinsured motorist] bodily injury coverage.  However, the insured may reject, in writing, the third available coverage and pay $125 for $50,000 of uninsured motorist coverage; or the

> insured may reject, in writing, the third available coverage and pay $65 for $25,000 of [uninsured or underinsured motorist] coverage; or the insured may reject all three [uninsured or underinsured motorist] coverages.  In any event, the coverage would not depend on which vehicle, if any, was occupied at the time of the injury.  Thus, the insured's expectations will be clear, and an insured will only receive what he or she paid for.

Montano v. Allstate Indem. Co., 135 N.M. at 687, 92 P.3d at 1261.

In Marckstadt v. Lockheed Martin Corp., 147 N.M. 678, 229 P.3d 462 (2009), the Supreme Court of New Mexico consolidated cases before it, including a case that the Tenth Circuit certified to it, to answer the question of what is required under § 66-5-301 and N.M.A.C. § 13.12.3.9 to effectively reject uninsured motorist coverage.  See 147 N.M. at 683, 229 P.3d at 467.[7]  The Supreme Court of New Mexico held that, "in order for the offer and rejection requirements of Section 66-5-301 to effectuate the policy of expanding [uninsured or underinsured motorist] coverage, the insurer is required to meaningfully offer such coverage and the insured must knowingly and intelligently act to reject it before it can be excluded from a policy."  Marckstadt v. Lockheed Martin Corp., 147 N.M. at 684, 229 P.3d at 468 (emphasis original).  It found that "the rejection which the regulation requires to be in writing must be the act of rejection described in the statute" and held that an insured must reject uninsured motorist coverage in writing.  Marckstadt v. Lockheed Martin Corp., 147 N.M. at 687, 229 P.3d at 470.  In Progressive Northwestern Insurance Co. v. Weed Warrior Services, the Supreme Court of New Mexico answered

---

[7]The Tenth Circuit certified Federated Serv. Inc. Co. v. Martinez, 300 F.App'x 618 (10th Cir. 2008)(unpublished), and the question: "For a valid rejection of [uninsured or underinsured motorist] coverage under New Mexico law, must that rejection be written, signed by the insured, and attached to the policy."   300 F.App'x at 619.  In the district court, the Honorable James A. Parker, United States District Judge for the District of New Mexico, granted the plaintiffs' motion for summary judgment and found that the defendant's employer had validly rejected uninsured motorist coverage for its employees.  See Federated Serv. Inc. Co. v. Martinez, No. 06-638, 2006 WL 6571771, at *4 (D.N.M. July 14, 2006)(Parker, J.).

in the affirmative the question, certified to us by the United States Court of Appeals for the Tenth Circuit, of whether election by an insured to purchase [uninsured or underinsured motorist] coverage in an amount less than the policy limits constitutes a rejection of the maximum amount of [uninsured or underinsured motorist] coverage permitted under Section 66-5-301.

149 N.M. at 158, 245 P.3d at 1210.[8]  It found that § 66-5-301 provides that insurers must offer uninsured motorist coverage, or underinsured motorist coverage, in an amount greater than the minimums required.  See Progressive N.W. Ins. Co. v. Weed Warrior Servs., 149 N.M. at 160, 245 P.3d at 1212.  The Supreme Court of New Mexico held that the "Legislature intended for drivers to have the option of carrying [uninsured or underinsured motorist] coverage equal to their policy limits," and rejected "any suggestion that Section 66–5-301 places a burden on the insured to request [uninsured or underinsured motorist] coverage."  Progressive N.W. Ins. Co. v. Weed Warrior Servs., 149 N.M. at 161, 245 P.3d at 1213.  It noted that the right to reject coverage cannot be meaningfully exercised without an offer of coverage equal to policy limits, and that it would not "impose on the consumer an expectation that she or he will be able to make an informed decision as to the amount of [uninsured or underinsured motorist] coverage desired or required without first receiving information from the insurance company."  Progressive N.W. Ins. Co. v. Weed Warrior Servs., 149 N.M. at 161, 245 P.3d at 1213.

---

[8]The Tenth Circuit certified, in Progressive Northwestern Ins. Co. v. Weed Warrior Services, 368 F.App'x 853 (10th Cir. 2010)(unpublished), the question: "Does the election to take [uninsured or underinsured motorist] coverage for less than the general policy liability limits constitute a rejection under the New Mexico uninsured motorist statute, N.M. Stat. § 66-5-301(A)."  368 F.App'x at 854. In the district court, the Honorable Judith C. Herrera, United States District Judge for the District of New Mexico, denied both the defendant's and the plaintiff's motions for summary judgment. See Progressive N.W. Ins. Co. v. Weed Warrior Servs., 588 F.Supp.2d 1281, 1282 (D.N.M. 2008)(Herrera, J.).  Judge Herrera found that the policy at issue "should be enforced as written, to provide $100,000 in [uninsured or underinsured motorist] coverage, which is offset by the $100,000 already received from the tortfeasor, rather than being reformed to provide $1 million in [uninsured or underinsured motorist] coverage."  Progressive N.W. Ins. Co. v. Weed Warrior Servs., 588 F.Supp.2d at 1288.

In <u>Jordan v. Allstate Ins. Co.</u>, the Supreme Court of New Mexico held that "a rejection of [uninsured or underinsured motorist] coverage equal to the liability limits in an automobile insurance policy must be made in writing and must be made a part of the insurance policy delivered to the insured."  149 N.M. at 165, 245 P.3d at 1217.  It then further found that:

> In order to honor these requirements effectively, insurers must provide the insured with the premium charges corresponding to each available option for [uninsured or underinsured motorist coverage] so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled.  If an insurer fails to obtain a valid rejection, the policy will be reformed to providing [uninsured or underinsured motorist] coverage equal to the limits of liability.

<u>Jordan v. Allstate Ins. Co.</u>, 149 N.M. at 165, 245 P.3d at 1217.  It noted that "insurers continue to offer [uninsured or underinsured motorist] coverage in ways that are not conducive to allowing the insured to make a realistically informed choice," and found it "necessary to prescribe workable requirements for a valid and meaningful rejection of [uninsured or underinsured motorist] coverage in amounts authorized by statute."  <u>Jordan v. Allstate Ins. Co.</u>, 149 N.M. at 169, 245 P.3d at 1221.  The Supreme Court of New Mexico then provided that:

> When issuing an insurance policy, an insurer must inform the insured that he or she is entitled to purchase [uninsured or underinsured motorist] coverage in an amount equal to the policy's liability limits and must also provide the corresponding premium charge for that maximum amount of [uninsured or underinsured motorist] coverage.  The premium cost for the minimum amount of [uninsured or underinsured motorist] coverage allowed by Section 66-5-301(A) must also be provided, as well as the relative costs for any other levels of [uninsured or underinsured motorist] coverage offered to the insured.  The insured must be informed that he or she has a right to reject [uninsured or underinsured motorist] coverage altogether.  Providing the insured with a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision . . . .

<u>Jordan v. Allstate Ins. Co.</u>, 149 N.M. at 169, 245 P.3d at 1221.  It held that, unless these requirements are met, the "policy will be reformed to provide [uninsured or underinsured motorist] coverage equal to the liability limits."  <u>Jordan v. Allstate Ins. Co.</u>, 149 N.M. at 169, 245 P.3d at

-49-

1221.  The Supreme Court of New Mexico also found that the rules that it announced should be retroactive, because, on balance, "we deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law" and retroactive application "will ensure that all insureds will be treated equally."  Jordan v. Allstate Ins. Co., 149 N.M. at 171, 245 P.3d at 1223.

**ANALYSIS**

The Court will deny the Motion.  The Defendants appropriately removed this case under CAFA, because the amount in controversy exceeds $5,000,000.00 and no exception applies. Furthermore, there is no basis on which the Court should decline to exercise jurisdiction.

## I.      **THE COURT HAS JURISDICTION UNDER CAFA.**

The Court finds that the McCarran-Ferguson Act does not reverse preempt CAFA, because the Court's exercise of jurisdiction does not impair, supersede, or invalidate a state insurance statute. The Court concludes that the Defendants have proved, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000.00.  Finally, the local-controversy exception to CAFA does not apply.

### A.      **THE MCCARRAN-FERGUSON ACT DOES NOT REVERSE PREEMPT CAFA.**

The Plaintiffs argued that the McCarran-Ferguson Act allows state law to reverse preempt an otherwise applicable federal statute, and that CAFA cannot invalidate, impair, or supersede the Supreme Court of New Mexico's regulatory, retroactive ruling in Jordan v. Allstate Ins. Co.  See Tr. at 17:12-18:14 (Berardinelli).  They asserted that the McCarran-Ferguson Act is jurisdictional and intended to bar the federal courts from exercising jurisdiction when a case involves state regulation of insurance.  See Tr. at 43:19-25 (Berardinelli).

Four circuit courts of appeals, including the Tenth Circuit, have held that the McCarran-Ferguson Act does not reverse preempt jurisdictional statutes or expressed skepticism that the McCarran-Ferguson Act would do so.  See  Safety National Casualty Corp. v. Certain Underwriters at Lloyd's London, 587 F.3d at 724 n.39;  Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Illinois, 421 F.3d at 843; Gross v. Weingarten, 217 F.3d at 222; Grimes v. Crown Life Ins. Co., 857 F.2d at 702; Atl. & Pac. Ins. Co. v. Combined Ins. Co. of Am., 312 F.2d at 515.  Although none of these cases addressed the potential impact of the McCarran-Ferguson Act on CAFA, the Tenth Circuit held that the McCarran-Ferguson Act is not "a modification of diversity jurisdiction of the federal courts."  Atl. & Pac. Ins. Co. v. Combined Ins. Co. of Am., 312 F.2d at 515.  At bottom, CAFA is another means of obtaining diversity jurisdiction.  It is part of the same statute, 28 U.S.C. § 1332, as the traditional diversity jurisdiction requirements and was enacted with the same purpose in mind -- to protect out-of-state defendants from the perceived biases of state courts in favor of in-state plaintiffs.  See Coffey v. Freeport McMoran Copper & Gold, 581 F.3d at 1243.  As the Fourth Circuit noted, in Gross v. Weingarten, the Plaintiffs' argument that the McCarran-Ferguson Act applies to jurisdictional statutes proves too much, because "it would operate to divest exclusively federal jurisdiction as effectively as it would diversity jurisdiction, leaving many plaintiffs with no forum in which to assert their federal rights."  217 F.3d at 222.  Moreover, the Plaintiffs advanced no arguments explaining how the Court, exercising jurisdiction under CAFA, would -- without more -- be construing CAFA to "invalidate, impair, or supersede any law enacted by any State for the purposes of regulating the business of insurance."  15 U.S.C. § 1012(b).  To say that the Court lacks jurisdiction because it might rule against the Plaintiffs would be to confuse jurisdiction and the merits.  It is difficult to perceive how the Court's exercise of jurisdiction -- without more -- invalidates or impairs any New Mexico law respecting insurance, because the Court is required,

under the precepts of <u>Erie Rail Road v. Tompkins</u>, 304 U.S. 64, 78 (1938), to apply state substantive

law when exercising diversity jurisdiction.  The Plaintiffs did not argue that any state statute grants

a state court exclusive jurisdiction to address this type of insurance issue, which is the basis on

which the Western District of Wisconsin held that the McCarran-Ferguson Act reverse preempted

the federal removal and jurisdictional statutes.  <u>See</u> <u>United States v. Wisc. State Circuit Court for</u>

<u>Dane Cnty.</u>, 767 F.Supp.2d at 983-84.

In this case, there is an absence of any argument that CAFA would impair or supersede any

state insurance jurisdictional statute.[9]   In any case, the Court follows the Tenth Circuit's holdings

in <u>Grimes v. Crown Life Ins. Co.</u> and <u>Atlantic & Pacific Insurance Co. v. Combined Insurance Co.</u>

<u>of America</u>.  Accordingly, the Court finds that the McCarran-Ferguson Act does not reverse preempt

CAFA, and the Court will analyze CAFA to determine whether it has jurisdiction over this case.

## B.    THE DEFENDANTS HAVE MET CAFA'S JURISDICTIONAL REQUIREMENTS.

At the hearing, the Plaintiffs conceded that the only aspects of CAFA that they are

challenging is the amount-in-controversy requirement and the local-controversy exception.  <u>See</u> Tr.

at 89:6-22 (Court, Berardinelli).  The Plaintiffs also conceded that CAFA only requires minimal

diversity.  <u>See</u> Tr. at 89:6-13 (Court, Berardinelli).  Accordingly, the Plaintiffs admit that this action

involves at least one-hundred persons and that there is minimal diversity.   <u>See</u> 28 U.S.C.

---

[9]Additionally, the Court has held, in other contexts, that New Mexico cannot limit claims to state courts.  In <u>Clayton v. Pioneer Bank</u>, No. 07-680, 2008 WL 5787472 (D.N.M. Dec. 31, 2008)(Browning, J.), the Court held that it had jurisdiction over claims under the New Mexico Human Rights Act, N.M.S.A. 1978, §§ 28-1-1 to 28-1-15, even though New Mexico contemplated, "by its express language, exclusive jurisdiction over appeals from the New Mexico Human Rights Commission in the state district courts," because the New Mexico Legislature cannot "deprive the federal court of jurisdiction that Congress has given it."  2008 WL 5787472, at *10 (citing <u>Ry. Co. v. Whitton's Adm'r</u>, 13 Wall. 270, 80 U.S. 270 (1871)).

§ 1332(d)(2) and (5).  The Plaintiffs argue that this case is unique, because it is "an <u>equitable</u> action

for declaratory relief brought to ensure enforcement of an affirmative mandate of the New Mexico

Supreme Court."  Reply at 1 (emphasis original).  The Plaintiffs assert that they seek no monetary

damages and that what "happens after Plaintiffs achieve the equitable relief sought in this case will

be left for other cases."  Reply at 4.  The Plaintiffs asserted that they did not concede the amount-in-

controversy issue and argued that, beyond the estimated $500,000.00 in administrative costs, the

amount-in-controversy calculations are entirely speculative.  <u>See</u> Tr. at 84:15-85:2 (Berardinelli).[10]

The Plaintiffs stated that they are not asking for payment of premiums.  <u>See</u> Tr. at 85:3-4

(Berardinelli).  They argued that whether policyholders can collect under the policies is not the

Plaintiffs' objective and argued that all the relief they seek is compliance with <u>Jordan v. Allstate Ins.</u>

<u>Co.</u>.  <u>See</u> Tr. at 85:20-86:7 (Court, Berardinelli).

      The amount in controversy requirement is "an estimate of the amount that will be put at issue

in the course of the litigation."  <u>McPhail v. Deere & Co.</u>, 529 F.3d 947, 956 (10th Cir. 2008).  "In

actions seeking declaratory or injunctive relief, it is well established that the amount in controversy

is measured by the value of the object of the litigation."  <u>Hunt v. Wash. State Apple Adver.</u>

---

[10]At the hearing, the Defendants argued that the Plaintiffs concede that the Defendants have met the CAFA's amount-in-controversy requirement on page 14 of the Motion.  <u>See</u> Tr. at 74:2-6 (Spano).  In the Motion, the Plaintiffs recite the contents of Coulson's affidavit, and note that she calculates that the increase in uninsured motorist coverage could run into the billions and that Colorado Casualty could lose $3,000,000.00 in premiums.  <u>See</u> Motion at 14.  The Plaintiffs also state that the cost, to the New Mexico automobile insurance industry, of complying with <u>Jordan v. Allstate Ins. Co.</u> "will certainly run well into the billions."  Motion at 14.  The Court does not agree that the Plaintiffs concede that the amount-in-controversy is satisfied; rather, the Plaintiffs are reciting facts from the Notice of Removal and extrapolating that the cost to the entire insurance industry will be high.  The Plaintiffs do not admit that these costs are permissible measurements of the amount-in-controversy or that the Defendants' calculations are correct.  Furthermore, because the amount-in-controversy goes to the Court's jurisdiction, the Court has an independent obligation to analyze the amount-in-controversy requirement.  <u>See</u> <u>City of Hugo v. Nichols (Two Cases)</u>, 656 F.3d 1251, 1255 (10th Cir. 2011).

Comm'n, 432 U.S. at 347.   The Senate Report on CAFA also provides that the amount in controversy shall be determined from the viewpoint of either the plaintiff or the defendant.   See S. Rep. No. 109-14 at 42-43, 2005 WL 627977, at *37.   See also Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d at 897 (holding that the Tenth Circuit follows the "either viewpoint rule").   Under CAFA, a court aggregates the class claims to determine the amount in controversy.   See 28 U.S.C. § 1332(d)(2).   Accord Lafalier v. State Farm Fire & Cas. Co., 391 F.App'x at 734 ("Thus, under CAFA a defendant may remove an action if it involves the claims of at least 100 persons that are worth at least $5,000,000 in the aggregate, so long as there is minimal diversity between the parties.").

## 1.   The Plaintiffs Seek Relief Which Will Have a Monetary Impact, Even Though They Do Not Seek Monetary Damages.

The Plaintiffs seek: (i) a declaratory judgment which retroactively reforms each of the insurer Defendants' uninsured motorist policies, without the payment of any premiums; (ii) an injunction ordering the insurer Defendants to notify all of their insureds of these changes; (iii) an injunction ordering each insurer Defendant to adopt and implement a form containing the menu of uninsured motorist coverage options that the Supreme Court of New Mexico discussed in Jordan v. Allstate Ins. Co.; and (iv) an injunction ordering Desert Mountain to adopt and implement a form containing the menu of uninsured motorist coverage options discussed in Jordan v. Allstate Ins. Co. See Complaint ¶¶ 1-2, at 18-19.   Accordingly, the Plaintiffs ask that the Court apply Jordan v. Allstate Ins. Co. to these Defendants, who were not a part of that case.[11]   In Jordan v. Allstate Ins.

---

[11]Under New Mexico law, "collateral estoppel, also called issue preclusion, prevents a party from re-litigating 'ultimate facts or issues actually and necessarily decided in a prior suit,'" and establishes that, for collateral estoppel to apply, four elements must be met: "(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions in different, (3) the ultimate fact or issue was actually litigated, and (4) the issue

Co., the Supreme Court of New Mexico established a specific menu of options and information that an insurer must provide to the insured for a written rejection of uninsured motorist coverage to be valid and that, unless those requirements are met, the "policy will be reformed to provide [uninsured or underinsured motorist] coverage equal to the liability limits." 149 N.M. at 169, 245 P.3d at 1221. Thus, the Court will have to determine whether these Defendants' insurance policies meet the Jordan v. Allstate Ins. Co. and § 66-5-301 requirements.  If the Court, for the first time, determines that these Defendants are not complying with the law as stated in Jordan v. Allstate Ins. Co., such that Jordan v. Allstate Ins. Co. mandates that their policies should be retroactively reformed, then there will be an immediate benefit conferred onto the Plaintiffs in terms of increased coverage, without a resulting increase in premiums, and an assortment of costs imposed on the Defendants.

### 2. CAFA'S Amount-in-Controversy Requirement is Met When the Court Examines the Benefits of the Relief Sought to the Plaintiffs.

The Court first analyzes the amount in controversy from the Plaintiffs' viewpoint.  Although the Plaintiffs assert that they do not seek any monetary damages, there is a monetary benefit to the equitable relief that they seek.  See Reply at 4.  The Senate Report instructs that the federal court should "include in its assessment the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants."  S. Rep. No. 109-14 at 42-43, 2005 WL 627977, at *37.  Two cases within the Tenth Circuit have determined that, when litigations

---

was necessarily determined." Cordova v. N.M. Taxation and Revenue Dep't, No. 08-681, 2011 WL 7164459, at *11 (D.N.M. Dec. 28, 2011)(Browning, J.)(citations omitted).  Claim preclusion or res judicata "bars relitigation of the same claim between the same parties or their privies when the first litigation resulted in final judgments on the merits."  Hartnett v. Papa John's Pizza USA, Inc., No. 10-1105, 2011 WL 5220231, at *5 (D.N.M. Oct. 7, 2011)(Browning, J.) (citation omitted).  Because no party in the case before the Court was a party in Jordan v. Allstate Ins. Co., neither res judicata nor collateral estoppel apply to this case, although Jordan v. Allstate Ins. Co., as a decision of the Supreme Court of New Mexico, is controlling law.

-55-

seeks to increase insurance coverage, the proper measure of the amount in controversy is the increase in coverage limits of the policy. See Whitehead-Rojas v. Am. Family Mut. Ins. Co., 2008 WL 1924899, at *3; Henderlong v. Allstate Ins. Co., No. 10-0698, 2010 WL 3843324, at *2. Additionally, the Sixth Circuit has calculated the amount in controversy in a similar case by subtracting the existing policy coverage from the coverage sought. See Freeland v. Liberty Mut. Ins. Co., 632 F.3d at 254 (holding that the amount in controversy was $75,000.00 where the plaintiffs sought "a declaratory judgment that their insurance policy provides [uninsured or underinsured motorist] coverage up to $100,000 per accident, instead of the $25,000 per accident maximum that appears on the policy's face"). The Court agrees that the value of the litigation, viewed from the Plaintiffs' perspective, is the total increase in additional uninsured motorist coverage. No court has determined that these Defendants' insurance policies fail to comply with § 66-5-301, and it is only when an insurer's policies fail to comply that a court should retroactively reform the policy. See Jordan v. Allstate Ins. Co., 149 N.M. at 169, 245 P.3d at 1221 (stating that, "if an insurer" does not comply with the rules the Supreme Court of New Mexico set forth, "the policy will be reformed"). The injunction and declaratory judgment that the Plaintiffs seek would reform the putative class' insurance policies to ensure that their uninsured motorist coverage is equal to the limits of the policy and this confers a benefit on the Plaintiffs, extending their coverage. If the Plaintiffs are successful they receive a declaration increasing their uninsured motorist coverage to the limits of their liability; accordingly, the Court will look to the difference between existing uninsured motorist limits and bodily injury limits in policies within the putative class. See Freeland v. Liberty Mut. Fire Ins. Co., 632 F.3d at 253 ("The 'value of the consequences which may result from the litigation,' . . . -- that is, the monetary consequence that would result from a victory for the Freelands -- is the difference between $100,000 and $25,000."); Liberty Mut. Fire Ins. Co. v. Yoder,

112 F.App'x 826, 828 (3d Cir. 2004)("[I]t is evidence from Yoder's notice to Liberty Mutual of his claim for benefits, which was incorporated by reference into the complaint, that the $2 million liability limits of the insurance policy were also at issue.").  Although the Defendants will likely not have to pay out the full amount of coverage on each putative class members' policy, the Court is examining the benefits to the Plaintiffs and, even if they never use it, increased coverage provides a benefit in the form of peace of mind as well as added protection should the coverage be needed. See Apartment Inv. and Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co., 593 F.3d 1188, 1193 (10th Cir. 2010)(discussing the "peace of mind that insurance promises").

The Defendants assert that the aggregate increase in insurance coverage exceeds $1,500,000,000.00, because the increase in uninsured motorist coverage for Colorado Casualty alone is $1,470,000,000.00.  See Notice of Removal ¶ 32, at 13.  Brigitte Coulson, an Underwriting Consultant with Colorado Casualty, swore that she identified 4,799 Colorado Casualty policies that were issued or were in force after May 20, 2004, where uninsured motorist coverage was less than bodily injury coverage or rejected in its entirety.  See Coulson Aff. ¶ 9, at 2.  She calculated that the total coverage benefit to the putative class of an increase in uninsured motorist coverage would be "no less than $1.47 billion" and that when the increase in coverage is stacked per vehicle, the increase in coverage would be a benefit of "over $9 billion."  Coulson Aff. ¶ 11, at 2.  She asserted that these figures represent the "total difference" between uninsured motorist and bodily injury coverage limits "as set forth in approximately one-half of the policies that would be encompassed in the putative class (those policies in force before 2008) and would be significantly higher if the policies issued between 2008 and 2011 were included."  Coulson Aff. ¶ 11, at 2.  Turning to one specific policy, number 3013563, effective on December 6, 2006, Coulson stated that there is currently $500,000.00 in uninsured motorist coverage and $1,000,000.00 bodily injury coverage for

-57-

twenty vehicles.  See Coulson Aff. ¶ 15, at 3.  The Complaint seeks a declaratory judgment retroactively reforming all uninsured motorist policies issued in New Mexico so as to provide equal limits uninsured motorist coverage.  See Complaint ¶ 1, at 18.  Coulson calculated that, per the relief sought in the Complaint, that the increase in coverage for this class member alone would be $10,000,000.00 for all vehicles -- an increase of $500,000.00 in coverage for each vehicle.  See Coulson Aff. ¶ 15, at 3.  Jessica Schmidt, Product Manager for Farmers Group, Inc and the person who analyzes data for 21st Century Insurance, declared that the Plaintiffs' requested relief would result in an additional $691,000,000.00 of coverage.  See Schmidt Decl. ¶ 11, at 3.  She stated that there were 6,404 policies issued from 2004 to April, 2011, that had uninsured motorist coverage less than the bodily injury coverage limits and 1,499 policies with no uninsured motorist coverage. See Schmidt Decl. ¶ 10, at 2.  She calculated that reforming those policies would cost $691,000,000.00 after subtracting the total uninsured motorist coverage for those policyholders ($1,448,075,000.00) from the total bodily injury coverage limits ($2,139,375,000.00).  See Schmidt Decl. ¶ 11, at 3.

The Plaintiffs challenged these calculations as "entirely speculative," but offered no caselaw, reasoning, or other calculations to support that statement.  Tr. at 84:15-85:2 (Berardinelli).  They asserted that the Defendants offered no statistics or information that would support a finding that the amount in controversy exceeds $5,000,000.00.  See Tr. at 84:19-85:2 (Berardinelli).  The specific calculations related to policy number 3013563 demonstrate the kind of calculations done to reach the $1,470,000,000.00 calculation for Colorado Casualty and the data for that policy alone satisfies the amount in controversy requirement.  The Plaintiffs do not challenge the number of policies that Coulson asserts would be affected and do not argue that it is unreasonable for retroactive reformation of six large insurance companies' policies to exceed $5,000,000.00.  In fact,

the Plaintiffs assert that Colorado Casualty is one of the smaller auto insurers in New Mexico and that it may be one of the smallest Defendants.  See Motion at 14.  A party seeking removal under CAFA need only establish the amount in controversy by a preponderance of the evidence "regardless of whether the complaint alleges an amount below the jurisdictional minimum."  Bell v. Hershey Co., 557 F.3d 953, 958 (8th Cir. 2009).  With at least 10,000 policies at issue and an estimated benefit of $2,000,000,000.00 between only two of the six insurer Defendants, the Court believes that the Defendants have proven jurisdictional facts that make it "possible that [$5,000,000.00 is] in play."  McPhail v. Deere & Co., 529 F.3d at 955 (emphasis added).

### 3.  CAFA'S Amount-in-Controversy Requirement is Met When the Court Examines the Costs to the Defendants of the Relief Sought.

When viewed from the perspective of costs to the Defendants, the Defendants also establish the amount in controversy by a preponderance of the evidence.  The Senate Report establishes that the need to cease and desist from conduct will often "cost" a defendant in excess of $5,000,000.00.  See S. Rep. No. 109-14 at 42-43, 2005 WL 627977, at *37.  Several courts, including two district courts within the Tenth Circuit, have held that costs associated with reforming an insurance policy include lost premiums.  See Keeling v. Esurance Ins. Co., 660 F.3d at 274; Armur v. Transamerica Life Ins. Co., 2010 WL 4180459, at *4 (holding that the amount in controversy is satisfied where the "Defendant identified the total number of in-force LTC policies owned by Kansas residents as 4,683, and the amount of premium increases, over the lifetime of these specific policies, as $6,441,652"); Lohr v. United Financial Casualty Co., 2009 WL 2634204, at *7; Cox v. Allstate Ins. Co., 2008 WL 2167027, at * 3 ("Defendants have presented uncontroverted evidence that in 2006 alone, Allstate received $70,000,000.00 in premium payments for replacement cost policies in Oklahoma. . . . Thus, disgorgement of the premiums paid to Allstate in only one year exceeds

CAFA's jurisdictional amount."); Toller v. Sagamore Ins. Co., 558 F.Supp.2d at 931 ("Thus, using the value of the coverage at issue as measured by the cost to purchase those coverages, the amount in controversy for the class members' claims would be $10,123,282."). No court has determined that these Defendants' insurance policies fail to comply with § 66-5-301, and it is only when an insurer's policies fail to comply that a court should retroactively reform the policy. See Jordan v. Allstate Ins. Co., 149 N.M. at 169, 245 P.3d at 1221 (stating that, "if an insurer" does not comply with the rules the Supreme Court of New Mexico set forth, "the policy will be reformed" (emphasis added)). The injunction and declaratory judgment that the Plaintiffs seek would reform the putative class' insurance policies to ensure that their uninsured motorist coverage is equal to the policies' limits, without the payment of additional premiums. Accordingly, if the Plaintiffs are successful, then the Defendants will be providing coverage without receiving the payment to which they are ordinarily entitled. Because the Defendants are providing a benefit without compensation, the loss in compensation is a value which the Court can measure and consider in determining the amount in controversy. An injunction requiring the insurer Defendants to provide coverage without premiums, would have the Defendants foregoing potential profits. See Keeling v. Esurance Ins. Co., 660 F.3d at 274 ("Suppose it were to comply with an injunction by eliminating this coverage and its premium. Its current profit on this coverage in Illinois is about $125,000 a year. The present value of foregoing this stream of profits is about $1.5 million."). Insurance companies are in the business of providing coverage in exchange for premiums, and are not in the business of providing coverage without premiums. Coverage requires reserves and effects balance sheets, and application of Jordan v. Allstate Ins. Co. will have a real impact on the Defendants. Another cost that the federal courts have held that the insurer Defendants can use to reach the jurisdictional amount is the expected claims under the underinsured motorist coverage that the Defendants would be obligated

to provide.  See Stanforth Order at 5 (finding that the amount in controversy requirement is met, where the defendants calculated, based on the previous year's uninsured motorist claims, that they would pay an extra $5,435,052.00 in claims if coverage were extended in the manner sought); Toller v. Sagamore Ins. Co., 558 F.Supp.2d at 929 ("Sagamore provided information stating the number of policies in Arkansas from April 2002 through May 2007, the number of policies nationwide during that period which have maintained the relevant coverages, the average percentage of claims made under those coverages, and the average amount of those claims."); Rasberry v. Capitol County Mutual Fire Insurance Co., 609 F.Supp.2d at 601 ("[O]ne realistic measure of the value of all relief and benefits that could logically flow from the granting of the declaratory relief sought by the claimants is the remaining limits on 6,643 policies ($166,324,177) considering that Rasberry alleges that Capitol County systematically mishandled all Hurricane Rita claims.").

The Plaintiffs did not dispute that the administrative costs of complying with their requested relief was appropriate for calculating the amount in controversy.  See Tr. at 84:15-85:2 (Berardinelli).  The Defendants assert that the administrative costs would be more than $493,358.00. See Notice of Removal ¶ 46, at 18 (citing Coulson Aff. ¶ 13, at 3; Schmidt Decl. ¶ 19, at 6; Mellino Aff. ¶ 10, at 3; Palazzolo Decl. ¶ 14, at 5).  Colorado Casualty estimates that the lost premiums it will suffer amount to over $2,900,000.00.  See Coulson Aff. ¶ 12, at 3.  Coulson based her calculation on the number of policies within the putative class -- 4,799 -- multiplied by the premium that Colorado Casualty would have charged for the increase in uninsured motorist coverage that the Plaintiffs seek.  See Coulson Aff. ¶ 12, at 3.  Schmidt estimates that 21st Century Insurance would lose in excess of $2,600,000.00 in lost premiums, if the Plaintiffs obtain the relief they seek.  See Schmidt Decl. ¶ 13, at 3.  She breaks down the average premium earned per policy for each of the 1,449 policies with no uninsured motorist coverage -- calculating, for example, that a reformed

policy increasing coverage to $25,000.00 uninsured motorist coverage would cost an average $242.13 in premiums -- and determines that, in only one year, 21st Century Insurance would lose $938,729.74 in premiums.  See Schmidt Decl. ¶ 14, at 4.  Schmidt also discusses the difference in average premium per policy for the 6,404 policies with uninsured motorist coverage less than equal to the bodily injury coverage and provides a chart detailing the different adjustments that would need to be made in those policies.  See Schmidt Decl. ¶ 15, at 4.  She calculates that, in one year, 21st Century Insurance would lose $1,721,414.32 in premiums.  See Schmidt Decl. ¶ 15, at 4-5.  In total, 21st Century Insurance would lose $2,660,144.06 in premiums.  Schmidt also estimates that 21st Century Insurance could become liable for $182,907.98 in new claims.  See Schmidt Decl. ¶ 18, at 6.  She calculated this figure by dividing the total indemnity paid on uninsured motorist claims from 2004 to 2011 ($2,444,405.11) with the number of New Mexico uninsured motorist policies (20,032) to obtain a $122.02 average amount paid per policy with some uninsured motorist coverage.  See Schmidt Decl. ¶ 18, at 6.  She then multiplied that figure by the 1,499 policies with no uninsured motorist coverage and determined that 21st Century Insurance would face at least $182,907.98 in potential claims.  See Schmidt Decl. ¶ 18, at 6.  Although they do not provide the same detailed calculations, employees of Travelers Insurance and Amica Insurance also attested that their companies would lose premiums.  Benjamin J. Mellino, Amica Insurance's Assistant Vice-President, swore that, if the policyholders in the putative class with uninsured motorist coverage less than liability limits had paid premiums for that coverage, Amica Insurance would have received an additional $863,559.57 and $252,727.28 for those with no uninsured motorist coverage -- a total of $1,126,286.85 in lost premiums.  See Mellino Aff. ¶¶ 6-7, at 2-3.  Jodi Ebersole, Travelers Insurance's Vice President, Associate Group General Counsel, attests that there are thousands of policies where the policyholder purchased no uninsured motorist coverage or coverage less than

-62-

liability limits.  See Ebersole Aff. ¶ 5, at 2.  She calculates that, if those policyholders who purchased coverage in 2010 had paid premiums for uninsured motorist coverage equal to their liability limits, they would have paid an additional $225,728.94.  See Ebersole Aff. ¶ 7, at 3. Metropolitan Casualty identified 417 policies that had unequal or no uninsured motorist coverage, and estimates that it may need to make an additional $1,200,000.00 in uninsured motorist payments to comply with Jordan v. Allstate Ins. Co.  See Palazzolo Decl. ¶¶ 5-7, at 2-3.  Accordingly, the Defendants have identified costs of approximately: (i) $493,358.00 in administrative costs; (ii) $6,940,000.00 in lost premiums; and (iii) $1,380,000.00 in potential claims payments.  The Tenth Circuit has held that a defendant need only establish jurisdictional facts that make it possible that the jurisdictional amount is "in play."  McPhail v. Deere & Co., 529 F.3d at 955 (emphasis added). While the administrative costs and the potential claims payments are perhaps the most "hard" numbers, given that the insurance companies are in the business of providing coverage for a premium, the Court also believes that it can use lost premiums as an actual cost to the insurer Defendants.  Lost premiums are neither a phantom issue nor, with the affidavits filed, speculative.

The Plaintiffs challenged these calculations as "entirely speculative," but offered no caselaw, reasoning, or other calculations to support that statement. Tr. at 84:15-85:2 (Berardinelli).  Although the Plaintiffs denied that the Defendants met the amount in controversy requirement at the hearing, they concede, in their Motion, that "the cost to the New Mexico auto insurance industry of complying with Jordan will certainly run well into the billions."  Motion at 14.  The Plaintiffs offer no basis on which to challenge the calculations given, and offered no evidence to contradict the affidavits and declarations offered in support of removal.  The Plaintiffs complained that the Defendants offered no statistics or information that would support a finding that the amount in controversy exceeds $5,000,000.00.  See Tr. at 84:19-85:2 (Berardinelli).  The calculations that

-63-

Colorado Casualty and 21st Century Insurance offer are fairly detailed. and the lost premiums those two Defendants assert, alone, establish the an amount in controversy in excess of $5,000,000.00. The Defendants' calculations establish that, when viewed from their prospective, the amount in controversy exceeds $5,000,000.00.

Because the Defendants have demonstrated by a preponderance of the evidence that the amount in controversy may in the aggregate exceed $5,000,000.00, it is incumbent on the Plaintiffs to demonstrate to a legal certainty that an amount less than $5,000,000.00 is at issue.  See Woodmen of World Life Ins. Society v. Manganaro, 342 F.3d 1213, 1216 (10th Cir. 2003)("'When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiffs must show that it does not appear to a legal certainty that they cannot recover' the jurisdictional amount.").  The Plaintiffs do not address this issue as the Plaintiffs do not specifically address the jurisdictional amount.

### C.   THE COURT WILL NOT DECLINE JURISDICTION UNDER THE LOCAL-CONTROVERSY EXCEPTION.

Congress created an exception to CAFA for those cases that "consist of primarily local, intrastate matters, which it characterized as the 'Local Controversy Exception.'" Coffey v. Freeport McMoran Copper & Gold, 581 F.3d at 1243.  The Plaintiffs argue that CAFA's local-controversy exception requires that the Court remand the case to state court.  The Plaintiffs assert that the local-controversy exception applies to a "truly local controversy [which is] a controversy that uniquely affects a particular locality to the exclusion of all others."  Motion at 9 (quoting Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006)).  They argue that this case presents a local controversy within the exception, because the

> granting of declaratory and injunctive relief to ensure that these named Defendants adhere in New Mexico to the unique holding of the New Mexico Supreme Court in

> Jordan -- which by definition will only apply to New Mexico [uninsured or underinsured motorist] policies and New Mexico policyholders -- is a matter that uniquely affects the locality of New Mexico to the exclusion of all others.

Motion at 9 (emphasis original).  The Plaintiffs contend that: (i) all class members are New Mexico residents; (ii) Desert Mountain is a New Mexico Corporation; (iii) the conduct involves uninsured motorist coverage in New Mexico; and (iv) they are aware of no similar actions being filed against the Defendants within the last three years.  See Motion at 9.  They argue that: (i) the premium disclosure requirements of Jordan v. Allstate Ins. Co. is the most "substantial" element of that decision; and (ii) their request to enforce compliance with the premium disclosure ruling is the most "significant" relief sought against every Defendant.  Reply at 5.  The Plaintiffs assert that these facts establish that they seek significant relief from Desert Mountain.  See Reply at 6.  They contend that, because the same relief is sought against each defendant, they have sought significant relief against Desert Mountain.  Reply at 6.  The Defendants argue that only four of the eighty-two paragraphs in the Complaint are directed towards Desert Mountain, that the relief sought against it is not significant, and that its conduct does not form a significant basis of the claims asserted.  See Notice of Removal ¶¶ 50-54, at 21-22.

The Plaintiffs bear the burden of establishing that a CAFA exception applies.  See Evans v. Walter Indus., Inc., 449 F.3d at 1164.  All of the putative class members are citizens of New Mexico, and the alleged injuries occurred in New Mexico.  As a result, the Defendants focus their dispute on requirements that the Plaintiffs seek significant relief from Desert Mountain and that Desert Mountain's conduct forms a significant basis for the claims asserted.  See Notice of Removal at 19-20; Response at 6-7.  The Court focuses on the Complaint when determining whether the Plaintiffs seek significant relief from Desert Mountain, the local defendant.  See Coffey v. Freeport McMoran Copper & Gold, 581 F.3d at 1245.  The Complaint seeks relief against each of the

Defendants individually.  See Complaint ¶ 1, at 18.  The Complaint alleges that Desert Mountain

is licensed to sell "MFRA auto policies in New Mexico, but only in compliance with the rules and

regulations" of the state, and that it is "an agent clothed with the real or apparent authority of

Travelers to sell and offer [uninsured or underinsured motorist] coverages under MFRA policies

issued by Travelers."  Complaint ¶¶ 18-19, at 5.  Gatewood seeks injunctive relief against Desert

Mountain under the UTPA ordering it to affirmatively provide policyholders or applicants with the

menu that Jordan v. Allstate Ins. Co. mandates.  See Complaint ¶ 66, at 15.  The Plaintiffs also

separately allege that Travelers Insurance, with whom Gatewood has her policy, provides coverage

less than equal to the policy limits and that Travelers Insurance violated the UTPA.  See Complaint

¶¶ 35-36, at 8.  The Court finds that these allegations do not support a finding that Desert Mountain

is a significant Defendant.

This case is not one where relief is sought jointly and severally against the Defendants, or

where every potential plaintiff is entitled to recover from the local defendant.  See Coffey v.

Freeport McMoran Copper & Gold, 581 F.3d at 1244.  Very few paragraphs in the Complaint

address Desert Mountain, and, in apparent recognition that the relief sought against the insurer

Defendants does not apply to Desert Mountain, the Plaintiffs separately state that they seek an

injunction against Desert Mountain ordering it to provide the menu that Jordan v. Allstate Ins. Co.

requires.  Desert Mountain is an agent of Travelers Insurance, and Gatewood has a policy with

Travelers Insurance, and not with Desert Mountain.  See Complaint ¶¶ 18-19, 35-36, at 5, 8.  The

Complaint recognizes that the policies which Desert Mountain sells are not its own, acknowledges

that Travelers Insurance issues these policies, and, because it separately asks for injunctive relief

against Desert Mountain, appears to recognize that much of the relief it seeks against the insurer

Defendants would not be applicable to Desert Mountain.  See Complaint ¶ 19, at 5; id. ¶ 2, at 19.

In Escoe v. State Farm Fire & Cas. Co., No. 07-1123, 2007 U.S. Dist. LEXIS 30088 (E.D. La. Apr. 23, 2007), the United States District Court for the Eastern District of Louisiana held, in similar circumstances, that "State Farm is correct that it is likely that only a small portion of the members of the putative class were affected by Glass's alleged wrongs," because the class was defined as those Louisiana citizens who purchased State Farm insurance and "not all Louisiana citizens who had State Farm homeowners insurance who purchased their policies through Glass." 2007 U.S. Dist. LEXIS 30088, at * 7.  Here, the number of policies that Desert Mountain sold is likely much smaller than the total number of policies at issue in this case, because the Plaintiffs have alleged only that Desert Mountain was an agent for Travelers Insurance.  The Complaint does not address any other New Mexico insurance agents or allege that Desert Mountain has sold policies for any other insurers.  Furthermore, Travelers Insurance likely sold policies through other agents or means than Desert Mountain.  Additionally, there appears to be comparatively less relief sought against Desert Mountain, because Desert Mountain has no policies which could be retroactively reformed and provides no coverage which could be increased.  Additionally, some of the relief against it would be duplicative, because the Plaintiffs also ask that Travelers Insurance, for whom Desert Mountain is an agent, provide the menu that Jordan v. Allstate Ins. Co. requires at the point of sale.  See Complaint  ¶ 1, at 18.

The Tenth Circuit, in Coffey v. Freeport-McMoran Copper & Gold, found that the district court had correctly interpreted the "significant relief" provision of the local-controversy exception and affirmed the district court's finding that it lacked jurisdiction under CAFA.  See 581 F.3d at 1245 ("Accordingly, because we agree with the district court's interpretation of the statute, and because there is no dispute over the court's application of the statutory language to the facts of this case, we affirm the district court's conclusion that plaintiffs satisfied the 'significant relief'

requirement in § 1332(d)(4)(A)(i)(ii)(aa).").  The district court in that case, the Western District of

Oklahoma, followed the Eleventh Circuit's approach in Evans v. Water Indus., Inc. and looked to

whether the "relief sought against the [local] defendant is a significant portion of the entire relief

sought by the class." Coffey v. Freeport-McMoran Copper & Gold Inc., 623 F.Supp.2d at 1265

(citing Evans v. Water Indus., Inc., 449 Fl3d at 1167).  See Opelousas Gen. Hosp. Auth. v. FairPay

Solutions, Inc., 655 F.3d at 353; Kaufman v. Allstate N.J. Ins. Co., 561 F.3d at 155-56.  A plain

reading of the phrase "significant relief" supports this interpretation.  All relief is significant to the

plaintiff, so the only way that the phrase makes sense is to interpret it in a relative way: is the relief

sought against the local defendant significant in comparison to the relief sought against the diverse

defendants.  To look at just the amount sought against the local defendant is not a meaningful test,

because it is subjective whether viewed from the plaintiff's or the defendant's standpoint.  The

comparison of relief sought within the case remains relatively objective, which is consistent with

Congress' intent and provides for a more principled judicial test.  The Senate Report also supports

this interpretation and, in the example it provides, states that an insurance agent "would not be one

from whom significant relief would be sought by the plaintiff class viewed as a whole."  S. Rep. No.

109-14 at 40, 2005 WL 627977, at *40.

    Additionally, the case law suggests a putative class seeks "significant relief" against a non-

diverse defendant when the relief is a significant portion of the total relief sought by the class.

Evans v. Water Indus., Inc., 449 F.3d at 1167.  In Waters v. Advent Product Development, Inc.,

2008 U.S. Dist. LEXIS 50686 (S.D. Cal. June 26, 2008), the Court held that significant relief was

not sought against a local defendant who was an "isolated role player" who "had contact with only

some of the class members," and that the local defendant "would not be a defendant from whom the

class seeks significant relief when compared to the whole."  2008 U.S. Dis. LEXIS 50686, at *16.

Similarly, Desert Mountain appears to be an "isolated role player" who acted for only one of the six insurer Defendants and who had little control over the content of the policies actually sold. This conclusion comports with CAFA's legislative history where the following example regarding the application of subsection (aa)'s "significant relief" requirement was given:

> [I]n a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria. He or she would probably have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself.

S. Rep. No. 109-14 at 40, 2005 WL 627977, at *40. The local defendant in this case, Desert Mountain, fits squarely within this example of what would not constitute a defendant from whom significant relief is sought. Accordingly, the Court finds that the subsection (aa) requirement is not met.

With respect to subsection (bb), the Court finds that Desert Mountain is not a defendant whose conduct forms a significant basis for the conduct alleged in the Complaint. Again, the Court notes that: (i) very few paragraphs in the Complaint focus on Desert Mountain's conduct; (ii) Desert Mountain is not an insurer and does not issue its own policies; and (iii) Desert Mountain is only alleged to have sold policies for one insurer Defendant -- Travelers Insurance. Relative to the other Defendants, Desert Mountain's role appears to have been less significant; Desert Mountain relied on Travelers Insurance to supply the insurance policies. This conduct is much like the local defendant's conduct in Opelousas General Hospital Authority v. FairPay Solutions, Inc., where the Fifth Circuit held that the plaintiff failed to meet the local-controversy exception's requirements, because the plaintiffs' claims against the local defendant rested on the allegation that the local

defendant relied on the non-local defendant's calculations.  See 655 F.3d at 362.  "In relating the local defendant's alleged conduct to all the claims asserted in the action, the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants."  Kaufman v. Allstate N.J. Ins. Co., 561 F.3d at 156.  This case involves thousands of insurance policies, and the Complaint connects Desert Mountain to only one insurer.  Desert Mountain appears to have been an "isolated role player" who did not touch a majority of the policies that form the basis of the putative class' claims.  The Western District of Oklahoma held that the plaintiffs failed to establish that a local defendant's conduct formed a significant basis of the claims asserted, because its conduct was the basis for only one of the claims asserted, it did not write any of the policies, and had a limited role in the class claims.  See Cox v. Allstate Ins. Co., 2008 WL 2167027, at *4.  The Court finds the separate and sparse treatment of Desert Mountain's conduct in the Complaint indicative that Desert Mountain's conduct does not form a significant basis for the putative class' claims.  The Complaint recognizes that Desert Mountain is only "clothed with the real or apparent authority of Travelers to sell and offer [uninsured or underinsured motorist] coverages under MFRA policies issued by Travelers in New Mexico."  Complaint ¶ 19, at 5.  Thus, Desert Mountain was not issuing its own policies and, ultimately, did not determine coverage.  The legislative history, using the same example as with subsection (aa), also supports the Court's finding that Desert Mountain's conduct does not form a significant basis for the allegations.  See S. Rep. No. 109-14 at 40, 2005 WL 627977, at *40 ("Similarly, the agent presumably would not be a person whose alleged conduct forms a basis for the claims asserted.  At most, the agent would have been an isolated role player in the alleged scheme implemented by the insurance company.").

Because the Plaintiffs have failed to establish that Desert Mountain is a defendant from

-70-

whom significant relief is sought and whose alleged conduct forms a significant basis for the claims asserted, the Court concludes that the local controversy exception does not apply. Accordingly, the Court will not decline to exercise jurisdiction or remand the case to state court under CAFA's local-controversy exception.[12]

## II.    THE COURT WILL NOT ABSTAIN FROM DECIDING THIS CASE.

The Court will not abstain or decline jurisdiction. The Rooker-Feldman doctrine does not apply in these circumstances, because there is no final state court judgment being challenged in federal court. The Court will not abstain under Brillhart v. Excess Insurance Co., because there is no pending state proceeding and the Plaintiffs have not established that the State Farm Fire and Cas. Co. v. Mhoon factors have been met. Finally, the Court will not abstain under Burford v. Sun Oil Co., because the Court's exercise of jurisdiction will not have a disruptive effect on New Mexico's efforts to establish a coherent insurance policy and will not force the Court to decide a difficult question of state law.

### A.    THE ROOKER-FELDMAN DOCTRINE DOES NOT APPLY.

The Plaintiffs argued that there can be no re-litigation of issues that are inextricably intertwined with Jordan v. Allstate Ins. Co. and cited DePasquale v. Allstate Ins. Co., for the proposition that the Rooker-Feldman bars federal courts from exercising jurisdiction over cases that seek review of "inextricably intertwined" state court judgments. Tr. at 20:2-22 (Berardinelli). They asserted that for this Court to do anything other than enforce the mandate in Jordan v. Allstate Ins. Co. would mean that the Court was determining that the Supreme Court of New Mexico was wrong.

---

[12]Because the Court determines that it has jurisdiction under CAFA, it need not conduct a traditional diversity jurisdiction analysis and determine whether Desert Mountain was fraudulently joined or misjoined.

See Tr. at 20:23-21:5 (Berardinelli).

"The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance v. Dennis, 546 U.S. at 460 (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 284). See Erlandson v. Northglenn Mun. Court, 528 F.3d at 788-89. The elements, thus, are: (i) a state-court loser; (ii) who is asking a federal district court; (iii) to review the correctness of a judgment rendered by a state court; and (iv) which judgment was rendered before the commencement of the federal proceeding. See Guttman v. Khalsa, 446 F.3d at 1032. The Tenth Circuit has made clear that "the Rooker-Feldman doctrine is confined to cases brought after the state proceedings have ended." Mann v. Boatright, 477 F.3d at 1146 (internal quotation marks omitted). The Plaintiffs argued that the case before the Court is an extension of Jordan v. Allstate Ins. Co., and that the only way for the Court to rule in the Defendants' favor would be to find that the Supreme Court of New Mexico wrongly decided Jordan v. Allstate Ins. Co. See Tr. at 20:2-5; id. at 48:1-7 (Berardinelli). In this case, however, the parties before the case are not state-court losers seeking to review a state court judgment. The purpose behind the Rooker-Feldman doctrine is to bar federal district court review of state final judgments, because that task is reserved for state appellate courts and the Supreme Court. See Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009). The Rooker-Feldman doctrine does not prevent the federal district courts from applying and interpreting a state court's decision in another case. See Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1145 (10th Cir. 2006)(holding that Rooker-Feldman does not bar a case that does not seek to overturn a state-court judgment, "regardless of whether a favorable judgment in federal court would be inconsistent with that judgment and would 'den[y] a legal conclusion that [the] state court has reached.'"). None of the Defendants to this action were

defendants in Jordan v. Allstate Ins. Co., in which the plaintiffs asserted claims against Allstate Insurance Company, Progressive Northwestern Insurance Company, and Safeco Insurance Company of America.  See 149 N.M. 162, 245 P.3d 1214.  The Supreme Court has held that Rooker-Feldman is inapplicable where the federal party was not a party in the state suit and was in no position to ask to review the state court's judgment.  See Johnson v. De Gandy, 512 U.S. 997, 1006 (1994)("But the invocation of Rooker/Feldman is just as inapt here, for unlike Rooker or Feldman, the United States was not a party in the state court.  It was in no position to ask this Court to review the state court's judgment and has not directly attacked it in this proceeding.").  Furthermore, neither the Plaintiffs nor the Defendants seek to review the correctness of a judgment rendered in state court; rather, the Court will be asked to interpret and apply New Mexico law as the Supreme Court of New Mexico discussed it in Jordan v. Allstate Ins. Co. and other like cases.  It may be that this case flows from the Supreme Court of New Mexico's decision in Jordan v. Allstate Ins. Co., but the Defendants were not parties to that case, were in no position to appeal that case, and this case does not implicate the concerns that the Rooker-Feldman doctrine was designed to guard against.  The Defendants have represented that they do not intend to challenge the constitutionality of the holding in Jordan v. Allstate Ins. Co., or to challenge its legality or controlling effect in some other way.[13]  Because the

---

[13]The Court notes that several Defendants have challenged the Plaintiffs' standing to assert their claims.  See 21st Century Answer ¶ 85, at 13; Metropolitan Casualty Answer at 12-13; Pacific Indemnity Answer at 16-17.  The Court has previously held that, under Tenth Circuit precedent, it should remand a case when lack of standing divests it of subject-matter jurisdiction over a case removed to federal court.  See Hill v. Vanderbilt Capital Advisors, LLC, No. 10-0133, 2011 WL 6013025, at * (D.N.M. Sept. 30, 2011)(Browning, J.)("The Tenth Circuit has held that, when lack of standing divests a district court of subject-matter jurisdiction over a case removed to federal court, the matter should be remanded to state court pursuant to 28 U.S.C. § 1447(c).").  Accordingly, this case may yet be remanded to state court, because the Court has pending before it at least one motion asserting that the Plaintiffs lack standing and that the case should be dismissed pursuant to rule 12(b)(1).  See Defendant Colorado Casualty Insurance Company's Motion to Dismiss at 3, filed June 17, 2011 (Doc. 44).

-73-

elements of the Rooker-Feldman doctrine are not satisfied, the Court will not decline jurisdiction.

**B.      THE COURT WILL NOT ABSTAIN UNDER BRILLHART V. EXCESS INSURANCE CO.**

The Plaintiffs argue that the Supreme Court has repeatedly characterized the Declaratory Judgment Act as "an enabling Act which confers a discretion on the courts rather than an absolute right upon the litigant." Motion at 11 (quoting Pub. Serv. Comm'n v. Wycoff Co., Inc., 344 U.S. at 241). They contend that it would be "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues," and that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." Motion at 11 (quoting Brillhart v. Excess Ins., Co., 316 U.S. at 495). The Plaintiffs state that there is no need for the Court to expend its resources on a matter which is "nothing more than a ministerial exercise in enforcement of a fully litigated state court action." Motion at 15. The Defendants contend that abstention typically arises when a plaintiff sues a defendant in state court and the defendant subsequently sues the plaintiff in federal court in a competing and parallel action seeking declaratory relief on the same core issues. See Response at 11 (citing Brillhart v. Excess Ins. Co., 316 U.S. at 494-95; Wilton v. Seven Falls Co., 515 U.S. at 282; Amanatullah v. Colo. Bd. of Med. Exam'rs, 187 F.3d at 1163). They assert that, when there is no pending state proceeding, abstention under Brillhart v. Excess Insurance Co. of America is not warranted. See Response at 12 (citing United States v. City of Las Cruces, 289 F.3d 1170, 1183 (10th Cir. 2002); Hartford Ins. Co. of the Midwest v. Estate of Tollardo, Nos. 04-0997, 04-1120, 2005 WL 3662914, at *2 (D.N.M. Nov. 20, 2005)(Browning, J.)). At the hearing, the Court asked, with respect to abstention, for what action it would be abstaining. See Tr. at 50:3-6 (Court). The Plaintiffs asserted that the Court would be abstaining to allow the state court to address

-74-

these issues, but conceded that there is not a separate state court action.  See Tr. at 50:7-10 (Berardinelli).

In Brillhart v. Excess Insurance Co. of America, the Supreme Court explained that district courts are "under no compulsion to exercise . . . jurisdiction" under the Declaratory Judgment Act. A court should first determine whether the lawsuit "can be better settled in the proceeding pending in the state court."  Brillhart v. Excess Ins. Co. of Am., 316 U.S. at 495.  The Tenth Circuit has held that a district court's dismissal of a declaratory judgment action under Brillhart v. Excess Insurance Co. of America is an abuse of discretion when there is no pending state proceeding.  See United States v. City of Las Cruces, 289 F.3d at 1183 (citing ARW Exploration Corp. v. Aguirre, 947 F.2d at 454)("In ARW Exploration Corp. v. Aguirre, this court deemed the district court's dismissal of a declaratory judgment action an abuse of discretion because there was no pending state proceeding whatsoever.").  A federal court is not required to refuse jurisdiction, under Brillhart v. Excess Insurance Co., but it "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."  St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1170.

Here, there is no state proceeding to which the Court should defer, and the Tenth Circuit has held that abstention, under Brillhart v. Excess Insurance Co., is an abuse of discretion when there is no pending state proceeding.  See United States v. City of Las Cruces, 289 F.3d at 1183 (citing ARW Exploration Corp. v. Aguirre, 947 F.2d at 454).  Brillhart v. Excess Insurance Co. and its progeny allow a court to decline jurisdiction, because jurisdiction is discretionary under the federal Declaratory Judgment Act.  See Wilton v. Seven Falls Co., 515 U.S. at 289-90.  Generally, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992).  The Plaintiffs assert claims under New Mexico

law and ask for relief under the New Mexico Declaratory Relief Act, N.M.S.A. 1978, § 44-6-1.  See

Complaint ¶ 7, at 2.  The Plaintiffs also seek injunctive relief.  See Complaint ¶¶ 1-2, at 18-19.

"Brillhart applies to declaratory judgment actions generally, but not to actions that, like this one,

involve good faith claims for injunctive relief."  Royal Indem. Co. v. Apex Oil Co., 511 F.3d 788,

795 (8th Cir. 2008).  See also Great Am. Ins. Co. v. Gross, 468 F.3d 199, 211 (4th Cir. 2006)("[W]e

stated that the Brillhart/Wilton standard does not apply when a declaratory judgment claim is joined

with a nondeclaratory claim, such as a claim for damages or injunctive relief.");  THI of N.M. at Las

Cruces, LLC v. Fox, 727 F.Supp.2d 1195, 1203 (D.N.M. 2010)(Browning, J.)(recognizing that the

Tenth Circuit "has cited favorably" cases which hold that abstention under Brillhart v. Excess Ins.

Co. is inappropriate when a party seeks an injunction or other coercive relief).  Accordingly, because

the Plaintiffs seek injunctive relief, abstention under Brillhart v. Excess Ins. Co. is inappropriate.

Furthermore, the Plaintiffs have not established that any of the State Farm Fire and Cas. Co. v.

Mhoon factors weigh in favor of abstention.  These factors include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would
> serve a useful purpose in clarifying the legal relations at issue; [3] whether the
> declaratory remedy is being used merely for the purpose of "procedural fencing" or
> "to provide an arena for a race to res judicata "; [4] whether use of a declaratory
> action would increase friction between our federal and state courts and improperly
> encroach upon state jurisdiction; and [5] whether there is an alternative remedy
> which is better or more effective.

St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1169 (alterations original)(quoting State

Farm Fire and Cas. Co. v. Mhoon, 31 F.3d at 983).  Because there is no pending, parallel state

proceeding, and because the Plaintiffs did not bring this suit pursuant to the Declaratory Judgment

Act, the Court will not abstain under Brillhart v. Excess Insurance Co.

### C.     THE COURT WILL NOT ABSTAIN UNDER BURFORD V. SUN OIL CO.

The Plaintiffs did not raise abstention under Burford v. Sun Oil Co. until the hearing on

March 7, 2012.  The Plaintiffs stated that this is the rare case where the Court should remand to the state court, because the Plaintiffs are attempting to enforce the Supreme Court of New Mexico's universal mandate regulating automobile insurance.  See Tr. at 9:9-16 (Berardinelli).  They pointed to Quackenbush v. Allstate Ins. Co., where the Supreme Court held that abstention under Burford v. Sun Oil Co. allows a federal court to abstain if it presents difficult questions of state law bearing on policy problems of substantial public import.  See Tr. at 10:6-17 (Berardinelli).  The Plaintiffs argued that the policies announced in Jordan v. Allstate Ins. Co. represent regulations of substantial public concern and that enforcement should take place in state court, because the Supreme Court of New Mexico prescribed certain procedures in the manner of a regulation.  See Tr. at 10:17-11:6 (Berardinelli).  They emphasized that abstention under Burford v. Sun Oil Co. stems from the discretion courts of equity traditionally enjoy and principles of federalism and comity.  See Tr. at 11:7-19 (Berardinelli).  The Plaintiffs asserted that the state's interests in this case are paramount and that the dispute would best be adjudicated in a state forum.  See Tr. at 11:20-12:6 (Berardinelli).  The Defendants asserted that none of the Plaintiffs' arguments regarding abstention under Burford v. Sun Oil Co. were properly briefed.  See Tr. at 55:16-56:6 (Strong).  The Defendants then argued that this case is not a complicated one that calls for abstention under Burford v. Sun Oil Co., because it is an enforcement action and the Plaintiffs are taking the position that it is not a difficult question of state law.  See Tr. at 56:7-24 (Strong).

In Burford v. Sun Oil Co., the Supreme Court held that the federal proceedings should have been dismissed, because the state had established its own review system for the Texas oil permits and a federal court ruling would have an impermissibly disruptive affect on state policy for management of the oil fields.  See 319 U.S. at 316-35.  The Supreme Court found that Texas provided a "unified method for the formation of policy and determination of cases by the

Commission and by the state courts," and that conflicts "in interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts." Burford v. Sun Oil Co., 319 U.S. at 333-34. In New Orleans Public Service, Inc. v. Council of City of New Orleans, the Supreme Court held that, under the "Burford doctrine," a federal district court, sitting in equity, must decline to interfere with the proceedings or orders of state administrative agencies: (i) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (ii) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." 491 U.S. at 361. "While Burford is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. at 362. The Supreme Court has noted that an analysis of Burford v. Sun Oil Co. will "only rarely" favor abstention. Quackenbush v. Allstate Ins. Co., 517 U.S. at 728.

Abstention under Burford v. Sun Oil Co. does not depend on the existence of a pending state proceeding. See Stoe v. Flaherty, 436 F.3d 209, 213 (3d Cir. 2006)("First, the existence of an ongoing state proceeding is not inherent in the nature of abstention."); Sierra Club v. City of San Antonio, 112 F.3d 789, 798 (5th Cir. 1997)("Factually, the record indicates that the Edwards Aquifer Authority has proceeded with rulemaking . . . . The federal court's injunction conflicts with these actions. Legally, Burford abstention does not require the existence of an ongoing state proceeding, with which the federal court action directly interferes."); Cristina v. Dep't of State of State of N.Y., 417 F.Supp. 1012, 1018 (S.D.N.Y. 1976)("It is equally true, however, that abstention does not

depend upon a pending state action.  There was no state action pending in either <u>Railroad Comm'n</u> <u>of Texas v. Pullman Co.</u> . . . or <u>Burford v. Sun Oil. Co.</u> . . . two of the leading Supreme Court cases on abstention.").  Accordingly, unlike <u>Brillhart v. Excess Insurance Co.</u>, that there is no ongoing state proceeding does not determine whether the Court should abstain from deciding this case.  The Court turns first to a discussion of the administrative system that New Mexico has designed to address insurance.  The Superintendent of Insurance is the director of the insurance division of the Public Regulation Commission, <u>see</u> N.M.S.A. 1978, § 8-8-9, which "shall administer and enforce the laws with which it is charged and has every power conferred by law," N.M.S.A. 1978, § 8-8-4. Under New Mexico law, the Superintendent of Insurance has the authority to make "reasonable rules and regulations necessary for or as an aid to administration or effectuation of any provision of the Insurance Code."  N.M.S.A. 1978, § 59A-2-9.  The Insurance Division maintains all powers "relating to state supervision of insurance, insurance rates and rate practices."  N.M.S.A. 1978, § 59A-2-1.  It does not, however, provide for special courts or proceedings to address insurance cases; if there is a violation of the Insurance Code, the Superintendent of Insurance is directed to "invoke the aid of any court of competent jurisdiction."  N.M.S.A. 1978, § 59A-2-11.  N.M.S.A. 1978, § 66-5-301, a provision in the Motor Vehicle Code, governs uninsured motorist coverage in New Mexico. It provides that the insured is entitled to uninsured motorist coverage "in minimum limits . . . and such higher limits as may be desired . . . up to the limits of the policy," and that the insured has the right to reject uninsured motorist coverage.  <u>See</u> N.M.S.A. 1978, § 66-5-301(A) and (C).  "[T]he rules and regulations promulgated by the superintendent of insurance" establish the form and manner of a valid rejection.  <u>Kaiser v. DeCarrera</u>, 122 N.M. 221, 223, 923 P.2d 588, 590 (1996). Regulation 13.12.3.9 provides that "[t]he rejection of the provision covering damage caused by an uninsured or unknown motor vehicle as required in <u>writing</u> by the provisions of Section 66-5-301

-79-

N.M.S.A. 1978 must be endorsed, attached, stamped or otherwise made a part of the policy."
N.M.A.C. 13.12.3.9 (emphasis original).  Thus, there is a state administrative system in place in
New Mexico, but it does not have the scope and extent of the administrative system discussed in
Burford, where the state designated that all claims related to oil licenses be assigned to a specific
court and extensively regulated that licensing system.

When analyzing abstention under Burford v. Sun Oil Co., the policies behind the McCarran-
Ferguson Act again become relevant.  Where states have responded to the McCarran-Ferguson Act
"by formulating complex and specialized administrative and judicial schemes to regulate insurers
. . . it becomes increasingly possible that the exercise by a federal court of its jurisdiction will prove
to be 'disruptive of state efforts to establish a coherent policy with respect to a matter of substantial
public concern.'" Grimes v. Crown Life Ins. Co., 857 F.2d at 703.  New Mexico law also reflects
that uninsured motorist coverage is an issue of substantial public importance and that the Supreme
Court of New Mexico has written several opinions discussing the duties of New Mexico automobile
insurers.  See Jordan v. Allstate Ins. Co., 149 N.M. at 168, 245 P.3d at 1220 (citing Marckstadt v.
Lockheed Martin Corp., 147 N.M. at 684, 228 P.3d at 468; Romero v. Dairyland Ins., 111 N.M. at
156, 803 P.2d at 245); 149 N.M. at 160-61, 245 P.3d at 1212-13; Montano v. Allstate Indem. Co.,
135 N.M. at 687, 92 P.3d at 1260).  It is not apparent, however, from the statutes and regulations the
Court has seen, that New Mexico has "complex state administrative processes" in place.  Heavy
Petroleum Partners, LLC v. Atkins, 2012 WL 120058, at *8 n.8.  New Mexico has not concentrated
review in a particularized or specialized court, as Texas had in Burford v. Sun Oil Co., see 319 U.S.
at 318, and the Plaintiffs assert that the Superintendent of Insurance is not in the process of
establishing regulations on this issue, as the state agency in Sierra Club v. City of San Antonio was,
see 112 F.3d at 798.  The Plaintiffs argue that the Superintendent of Insurance has failed to

"promulgate any rules or forms during the six plus years since <u>Montano</u>," and that the Superintendent has not taken "any meaningful action" since <u>Jordan v. Allstate Ins. Co.</u>  Motion at 2-3.  Additionally, although it is not a determinative factor, that there are no administrative proceedings or orders being challenged weighs against there being a need for abstention for a complex administrative system. The congressional concerns reflected in the McCarran-Ferguson Act and the special role of the state in regulating insurance, however, demand that the Court still examine whether it should decline jurisdiction under <u>Burford v. Sun Oil Co</u>.

To justify declining jurisdiction under <u>Burford v. Sun Oil Co.</u>, there must be a difficult question of state law whose importance transcends the case at bar or federal review of the question would be disruptive of state efforts to establish a coherent policy.  See <u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. at 361.  The Plaintiffs concede that this case does not present a difficult question of state law.  The Plaintiffs argue that there is no need for the Court to expend its resources on this matter, because it is "nothing more than a ministerial exercise in enforcement of a fully litigated state court action."  Motion at 15.  The Defendants also argued that this case presents nothing more than an enforcement action.  See Tr. at 56:7-24 (Strong).  The Court agrees with this assessment.  The Supreme Court of New Mexico has already answered questions regarding what kind of options, forms, and coverage New Mexico law requires for uninsured motorist insurance.  See <u>Jordan v. Allstate Ins. Co.</u>, 149 N.M. at 168, 245 P.3d at 1220.  This action requires the Court to determine the impact of those decisions and apply the case law that the Supreme Court of New Mexico decoded.  The Court need not decide any question presented in a vacuum as there are, as the Plaintiffs discussed at the hearing, many cases discussing the obligations of insurers in this context.  The Court performs this function in most diversity cases, where it looks to state substantive law.  See <u>Erie R.R. v. Tompkins</u>, 304 U.S. at 78.  A court should not abstain

when deciding an issue of state law will "not entail any more <u>federal</u> intrusion into state policy or <u>federal</u> disruption of a state regulatory scheme than in any other diversity case." <u>Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Ill.</u>, 421 F.3d at 848 (emphasis original).  Because the Supreme Court of New Mexico has answered the most complex questions of state law, there does not appear to be a reason to abstain for a "difficult question[] of state law." <u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. at 361.  "<u>Burford</u> abstention is rarely, if ever, appropriate when 'the state law to be applied appears to be settled.'" <u>Int'l College of Surgeons v. City of Chicago</u>, 153 F.3d 356, 362 (7th Cir. 1998)(quoting <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 815(1976)).  The Plaintiffs contend that the law is settled, and the Defendants state that they will not be challenging the law. <u>See</u> Motion at 15; Tr. at 60:14-25 (Strong)("[I]f the question is do, for example, the insurance companies contest that <u>Jordan</u> applies here, no.").

The next question the Court must answer is whether the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." <u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. at 361.  As the Plaintiffs emphasized at the hearing, this is an area of law where the Supreme Court of New Mexico has been very active. <u>See</u> Tr. at 10:17-11:6 (Berardinelli).  The Plaintiffs argued that the state's interests in this case are paramount and that the dispute would best be adjudicated in a state forum. <u>See</u> Tr. at 11:20-12:6 (Berardinelli).  This case centers around state law.  The Plaintiffs have not, however, explained how the Court's exercise of jurisdiction would be disruptive of state efforts to establish a coherent policy.  The Plaintiffs asserted that the only way to have a uniform insurance policy is to have these kinds of cases dealt with in state court. <u>See</u> Tr. at 51:11-52:13 (Berardinelli).  The Court does not see how its decision would be any more disruptive in this case than any other diversity case. <u>See</u> <u>Hawthorne Sav. F.S.B.</u>

v. Reliance Ins. Co. of Ill., 421 F.3d at 848.  In this area of the law, the Superintendent of Insurance

has been largely inactive, there is no specialized court to address these concerns, and the Supreme

Court of New Mexico has already addressed the controlling legal issue.  In the wake of Jordan v.

Allstate Ins. Co., and the New Mexico insurance industry's alleged lack of compliance with that

case, there may be more cases in various New Mexico district courts determining how to apply

Jordan v. Allstate Ins. Co.'s directions.  The Plaintiffs have not explained how the Court's decision

on this question will stop the development of the law in the state courts or would be perceived as

anything other than another lower court decision interpreting the Supreme Court of New Mexico's

opinions.  Here again, that there is no specialized or particular forum for the resolution of these

claims.  See Cingular Wireless, LLC v. Thurston Cnty., 150 F.App'x at 635; Int'l College of

Surgeons v. City of Chicago, 153 F.3d at 364 & n.9 (holding that, to abstain under the second prong

of Burford v. Sun Oil Co., there must be an available forum and "that forum must be special -- it

must stand in a special relationship of technical oversight or concentrated review to the evaluation

of those claims")(collecting cases).  This case does not present the "awkward circumstance of

turning the federal court into a forum that will effectively decide a host of detailed state regulatory

matters, to the point where the presence of the federal court, as a regulatory decision-making center,

makes it significantly more difficult for a state to operate its regulatory system."  Guillemard-

Ginorio v. Contreras-Gomez, 585 F.3d at 524 (citations omitted).  Because the Supreme Court of

New Mexico has already answered the controlling legal questions regarding uninsured motorist

coverage, and apparently decided the most difficult issues, the Court's task will be to determine

whether the insurer Defendants are acting in compliance with those rulings.  The Plaintiffs ask for

declaratory and injunctive relief retroactively reforming existing insurance policies, ordering the

Defendants to notify their insureds about these changes, and ordering the Defendants to comply with

Jordan v. Allstate Ins. Co.. See Complaint ¶¶ 1-2, at 18-19. At bottom, this case is an enforcement action which will not involve the detailed regulatory decision-making or federal interference that concerned the Supreme Court in Burford v. Sun Oil Co. The Court will not be reviewing any administrative decisions or circumventing any state administrative proceedings.

Abstention under Burford v. Sun Oil Co. should be exercised "only rarely." Quackenbush v. Allstate Ins. Co., 517 U.S. at 728. "[T]he power to dismiss recognized in Burford represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." Quackenbush v. Allstate Ins. Co., 517 U.S. at 728. Here, while this case may have some precedential value to other insureds and insurance companies, the exercise of jurisdiction does not require that the Court answer a difficult question of state law whose importance transcends this case. Also, federal review of the question would not be disruptive of state efforts to establish a coherent policy. Accordingly, the Court does not believe that abstention under the Burford v. Sun Oil Co. doctrine is appropriate.

Even if there was a complex administrative process which might necessitate abstention under Burford v. Sun Oil Co., the Supreme Court has held that Burford v. Sun Oil Co. "does not require abstention whenever there exists such a [complex state administrative] process, or even in all cases where there is a 'potential for conflict' with the state regulatory law or policy." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. at 362. "Because Burford abstention is concerned with potential disruption of a state administrative scheme, rather than the mere existence of such a scheme, looking behind the action to determine whether it implicates the concerns of Burford is necessary." Saginaw Housing Comm'n v. Bannum, Inc., 576 F.3d 620, 626 (6th Cir. 2009). The Tenth Circuit has explained that, when there is a comprehensive administrative system in place, a number of factors are relevant to whether the exercise of jurisdiction is proper under

Burford v. Sun Oil Co., including: (i) whether the suit is based on a cause of action which is exclusively federal; (ii) whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry; (iii) whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues; and (iv) whether difficult or unusual state laws are at issue.  See Grimes v. Crown Life Ins. Co., 857 F.2d at 704-05.  Here: (i) the matter before the Court is based exclusively on state law, weighing in favor of abstention; (ii) the matter involves the regulation of the insurance industry, weighing in favor of abstention; (iii) New Mexico has evinced no desire to create special state forums to adjudicate these issues, weighing against abstention; and (iv) there are no difficult issues of state law, weighing against abstention.  The factors that the Tenth Circuit identified in Grimes v. Crown Life Ins. here are evenly divided and, given the Court's earlier analysis and the Court's "unflagging" obligation to exercise its jurisdiction, and that abstention under Burford v. Sun Oil Co. should be exercised rarely, the Court does not believe that such an even split counsels in favor of abstention.  Accordingly, even if the Plaintiffs established that this case fell into one of the two categories that the Supreme Court established in New Orleans Public Service, Inc. v. Council of City of New Orleans, the Court would not exercise its discretion to decline jurisdiction under Burford v. Sun Oil Co.

Because the Court has jurisdiction under CAFA and there is no sound basis on which to decline jurisdiction, the Court will deny the Motion.

**IT IS ORDERED** that the Plaintiffs' Memorandum Motion to Remand to State Court for Lack of Federal Jurisdiction, filed June 24, 2011 (Doc. 55), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

David J. Berardinelli
Santa Fe, New Mexico

    *Attorney for the Plaintiffs*

Andrew G. Schultz
R. Nelson Franse
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

*-- and --*

John M. Vaught
Sean D. Baker
Jason C. Astle
Wheeler Trigg O'Donnell LLP
Denver, Colorado

    *Attorneys for Defendant Amica Mutual Insurance Company*

Ann Maloney Conway
Keleher & McLeod, P.A.
Albuquerque, New Mexico

*-- and --*

Floyd P. Bienstock
Jon T. Neumann
Timothy M. Strong
Phoenix, Arizona

    *Attorneys for Defendant Metropolitan Property & Casualty Insurance Co.*

Robert A. Corchine
Miller Stratvert P.A.
Albuquerque, New Mexico

*-- and --*

-86-

Brian J. Spano
Jessica L. Fuller
Rothgerber, Johnson & Lyons, LLP
Denver Colorado

      *Attorneys for Defendant Colorado Casualty Insurance Company a subsidiary of Liberty Mutual Insurance Company*

James H. Johnson
Geoffrey D. White
Butt Thornton & Baehr, PC
Albuquerque, New Mexico

      *Attorneys for Defendant Pacific Indemnity Insurance Company*

Gary W. Larson
Hinkle, Hensley, Shanor & Martin, LLP
Santa Fe, New Mexico

*-- and --*

Gail L. Gottehrer
Thomas G. Rohback
Axinn, Veltrop & Harkrider LLP
Hartford, Connecticut

      *Attorneys for Defendant Travelers Insurance Company d/b/a The Travelers Home and Marine Insurance Company*

Thomas A. Simons, IV
Faith Kalman Reyes
Kelcey C. Nichols
The Simons Firm, LLP
Santa Fe, New Mexico

*-- and --*

Daniel V. Kohls
Hansen, Kohls, Jones, Sommer & Jacob, LLP
Roseville, California

      *Attorneys for Defendant Desert Mountain Agency*