IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL VALDEZ, KIM DRESSEL, DRESSEL
CONSTRUCTION, INC., FREDDIE SUE
GATEWOOD, MARY JO VAUGHN, and
MARCUS PERKINS,

        Plaintiffs,

v.                                  No. CIV 11-0507 JB/KBM

METROPOLITAN PROPERTY & CASUALTY
INSURANCE COMPANY, COLORADO
CASUALTY INSURANCE COMPANY a
subsidiary of LIBERTY MUTUAL INSURANCE
COMPANY, PACIFIC INDEMNITY INSURANCE
COMPANY, TRAVELERS INSURANCE COMPANY,
d/b/a THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY, 21st CENTURY
INSURANCE COMPANY, and DESERT
MOUNTAIN AGENCY,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on the Motion of Defendant Travelers Home and

Marine Insurance Company to Dismiss Plaintiffs' Complaint, filed June 17, 2011 (Doc.

40)("Travelers Insurance Motion").  The Court held a hearing on March 27, 2012.  The primary

issues are: (i) whether the Plaintiffs have stated a claim for relief, under the New Mexico Unfair

Insurance Practices Act, N.M.S.A. 1978, §§ 59A-16-1 to 59A-16-20 ("UIPA"),[1] which depends on

whether the Plaintiffs may seek an injunction; (ii) whether the Plaintiffs have stated a claim under

---

[1]The Plaintiffs refer to N.M.S.A. 1978, § 59A-16-20 of this act as the Unfair Claims Practices Act and N.M.S.A. 1978, § 59A-16-3 to -4 as the Insurance Trade Practices and Fraud Act, but New Mexico courts refer to both provisions as the Unfair Insurance Practices Act.  See Smoot v. Physicians Life Ins. Co., 135 N.M. 265, 267, 269, 87 P.3d 545, 547, 549 (Ct. App. 2003).

the New Mexico Unfair Practices Act, N.M.S.A. 1978, § 57-12-2 to 58-12-10 ("UPA")[2]; and (iii) whether there is an actual controversy to permit a declaratory judgment. The Court will grant the Travelers Insurance Motion. The Court concludes that the Plaintiffs have failed to state a claim under the UIPA or under the UPA, because they have failed to allege irreparable harm. The Court also concludes that any declaratory judgment action is not ripe. Accordingly, the Court will dismiss the claims against The Travelers Insurance Company d/b/a The Travelers Home & Marine Insurance Company ("Travelers Insurance").

## FACTUAL BACKGROUND

All of the Plaintiffs are New Mexico residents. See Petition for Declaratory Judgment and Injunctive Relief ¶¶ 1-6, at 1-2 (dated April 15, 2011), filed June 10, 2011 (Doc. 4)("Complaint"). Defendants Metropolitan Property & Casualty Insurance Company ("Metropolitan Casualty"), Colorado Casualty Insurance Company ("Colorado Casualty"), Pacific Indemnity Insurance Company ("Pacific Indemnity"), Travelers Insurance, 21st Century Insurance Company ("21st Century Insurance"), and Amica Mutual Insurance Company ("Amica Mutual") are foreign insurance companies authorized to issue automobile liability insurance policies within the State of New Mexico in compliance with all the rules and regulations that the Superintendent of Insurance promulgated, as well as with the applicable New Mexico statutes and case law. See Complaint ¶¶ 10-16, at 3-4. Defendant Desert Mountain Agency ("Desert Mountain") is a New Mexico corporation authorized to sell automobile insurance policies in New Mexico. See Complaint ¶¶ 17-18, at 4-5.

Plaintiff Michael Valdez is a named insured in an insurance policy with Metropolitan

---

[2]Plaintiffs refer to this act as the Unfair Trade Practices Act, but the short title of the act is the "Unfair Practices Act." N.M.S.A. 1978, § 57-12-1.

Casualty, policy number 045192877-3, whose policy provides uninsured motorist coverage with limits that are less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage. <u>See</u> Complaint ¶ 29, at 7. Plaintiff Kim Dressel is a named insured in an insurance policy with Pacific Indemnity, policy number 12714973-03, whose policy provides uninsured motorist coverage with limits that are less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage. <u>See</u> Complaint ¶ 31, at 7. Plaintiff Dressel Construction, Inc. is a named insured in an insurance policy with Colorado Casualty, policy number CBP08431076, whose policy provides uninsured motorist coverage with limits that are less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage. <u>See</u> Complaint ¶ 33, at 8. Plaintiff Freddie Sue Gatewood is a named insured in an insurance policy with Travelers Insurance, policy number 979038Q62-1011, whose policy provides uninsured motorist coverage with limits that are less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage. <u>See</u> Complaint ¶ 35, at 8. Plaintiff Mary Jo Vaughn is a named insured in an insurance policy with 21st Century Insurance, policy number 979038Q62-1011, whose policy provided uninsured motorist coverage with limits that were less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage. <u>See</u> Complaint ¶ 38, at 9. Plaintiff Marcus Perkins is a named insured in an insurance policy with Amica Mutual, policy number 910730-20FF, whose policy provides uninsured motorist coverage with limits that are less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage. <u>See</u> Complaint ¶ 39, at 9.

## PROCEDURAL BACKGROUND

The Plaintiffs initiated this action by filing the Complaint against the six insurance

companies and the one New Mexico insurance agency in the First Judicial District Court, Santa Fe County, State of New Mexico.  The Plaintiffs allege that the Defendants have failed to comply with the Supreme Court of New Mexico's decisions in Progressive Northwestern Insurance Co. v. Weed Warriors Services, 149 N.M. 157, 245 P.3d 1209 (2010), and in Jordan v. Allstate Insurance Co., 149 N.M. 162, 245 P.3d 1214 (2010), because they failed to provide the Plaintiffs with full and adequate information about their legal options, at the point of sale, when buying uninsured motorist coverage.  See Complaint ¶¶ 7, 46, at 2, 10.  The Plaintiffs allege:

> In Jordan and Weed Warriors, the Supreme Court [of New Mexico] established, as a matter of New Mexico public policy, the following retroactive rules regulating all MFRA[3] policies and [uninsured or underinsured motorist] coverages issued in New Mexico since May 20, 2004: a) the purchase of less than equal limits [uninsured or underinsured motorist] coverage constitutes a "rejection" by the insured of the available equal limited [uninsured or underinsured motorist] coverage; b) an insured's rejection of [uninsured or underinsured motorist] coverage or equal limits [uninsured or underinsured motorist] coverage under a New Mexico MFRA policy must be in writing and must be attached to, endorsed upon, or otherwise made a part of the MFRA/[uninsured or underinsured motorist] policy; c) every written rejection of [uninsured or underinsured motorist] coverage in New Mexico must include a "menu" showing each vehicle insured, each limit of [uninsured or underinsured motorist] coverage available for purchase for that vehicle (up to the policy's limits for that type of coverage whether [uninsured or underinsured motorist] or [property damage]), and the premium prices for each available limit of [uninsured or underinsured motorist] coverage for each vehicle (hereinafter "the Jordan menu"); d) if an insurer does not, or did not after May 20, 2004, comply with these requirements for a written rejection, then any [uninsured or underinsured motorist] policy issued in New Mexico that provides, or provided, less than equal limits [uninsured or underinsured motorist] coverage must be retroactively reformed as a matter of law to provide equal limits [uninsured or underinsured motorist] coverage

_____

[3]Although the Complaint does not define the term "MFRA," the Court is aware that the Mandatory Financial Responsibility Act, N.M.S.A. 1978, §§ 66-5-201 to -239 is frequently abbreviated as "MFRA."  Whiting v. Hogan, No. 11-671, 2012 WL 664805, at *2 (D.N.M. Feb. 28, 2012)(Browning, J.); Arnold v. Farmers Ins. Co. of Az., No. 09-0330, 2011 WL 5220320, at *2 (D.N.M. Sept. 29, 2011)(Browning, J.).  The MFRA was enacted to "require residents of New Mexico who own and operate vehicles upon the highways of the state either to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle or to obtain a motor vehicle insurance policy."  N.M.S.A. 1978, § 66-5-201.

regardless of the payment of any premium or the intent of the parties so that all
similarly situated insureds will be treated equally.

Complaint ¶ 27, at 6-7. The Plaintiffs assert that the Defendants are violating a retroactive duty to

provide them with "full and complete information about all [uninsured or underinsured motorist]

coverage available to them." Complaint ¶ 42, at 9-10. The Plaintiffs assert that the Defendants

engaged in "unconscionable trade practices" under the UPA. Complaint ¶ 48, at 11. They allege

that the Defendants have issued and renewed thousands of policies which did and do not comply

with Jordan v. Allstate Insurance Co., and that none of the Defendants will comply with the

Supreme Court of New Mexico's mandate unless ordered to do so. See Complaint ¶¶ 50, 52, at 11.

With respect to the class allegations, the Plaintiffs assert that each of the Defendants has failed: (i)

"to affirmatively offer their insured equal limits [uninsured or underinsured motorist] coverage [--]

together with a Jordan menu [--] at the time of the sale of the policy"; (ii) "to obtain written

rejections of all [uninsured or underinsured motorist] coverage or of equal limits [uninsured or

underinsured motorist] coverage as retroactively mandated by Jordan"; (iii) "to unilaterally and

retroactively reform every . . . policy issued, or renewed, with less than equal limits [uninsured or

underinsured motorist] coverage as retroactively mandated by Jordan"; and (iv) "to unilaterally

notify each insured to whom [a] . . . policy was issued providing no [uninsured or underinsured

motorist] coverage or less than equal limits [uninsured or underinsured motorist] coverage of their

entitlement to have such policies reformed." Complaint ¶ 68, at 15-16.

The Plaintiffs request the following relief against the insurer Defendants:

a) a Declaratory Judgment retroactively reforming all the [uninsured or underinsured
motorist] policies issued in New Mexico to Plaintiffs and the class members since
May 20, 2004, so as to provide equal limits [uninsured or underinsured motorist]
coverage, where the policy did not already do so, without the payment of any
premiums by the class members and regardless of the intent of the parties; b)
injunctive relief ordering each Defendant to immediately notify all its insureds who

were issued less than equal limits [uninsured or underinsured motorist] policies since May 20, 2004, that their policies have been retroactively reformed to provide equal limits [uninsured or underinsured motorist] coverage together with an explanation of the effect of this retroactive reformation that can be easily understood by the hypothetical average insured -- including notice to seek independent legal advice or contact the Defendant if they have any questions about the legal impact of this retroactive reformation of their MFRA/[uninsured or underinsured motorist] policies, and especially if any insureds have been involved in an auto accident since May 20, 2004; and c) injunctive relief ordering each Defendant to adopt and immediately implement a[n uninsured or underinsured motorist] selection form for use in New Mexico that fully and substantially complies with the retroactive requirements of Jordan.

Complaint ¶ 1, at 18.  The Plaintiffs also separately ask for the following relief against Desert Mountain:

For the Court's Order granting injunctive relief pursuant to the UTPA and/or [New Mexico Unfair Claims Practices Act, N.M.S.A. 1978, § 59A-16-20] and/or the common law in equity ordering Defendant Agent in the future to affirmatively provide all applicants for a New Mexico MFRA policy with a written Jordan menu at the time the original policy is sold and again whenever one of Agent's insureds requests a change in his or her MFRA policy including, but not limited to, a change in liability or [uninsured or underinsured motorist] limits or the addition of a vehicle.

Complaint ¶ 2, at 19.

On June 10, 2011, the Defendants filed their Notice of Removal.  See Doc. 1.  They assert that removal is based upon the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") and, alternatively, the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a).  See Notice of Removal ¶ 3, at 3.  On June 24, 2011, the Plaintiffs filed the Memorandum Motion to Remand to State Court for Lack of Federal Jurisdiction.  See Doc. 55 ("Motion to Remand").  The Plaintiffs moved the Court to remand the case to state court for lack of federal jurisdiction.  See Motion to Remand at 1.  The Plaintiffs argued that the Notice of Removal failed to confer jurisdiction upon the Court, because there is a lack of complete diversity of citizenship, as 28 U.S.C. § 1332 requires, or fraudulent joinder.  See Motion at 1.  In support of this argument, the Plaintiffs asserted that: (i)

the Notice of Removal fails to show that the CAFA applied; (ii) the Plaintiffs seek equitable relief only -- and no monetary relief -- to complete and to enforce the Supreme Court of New Mexico's retroactive mandate in <u>Jordan v. Allstate Ins. Co.</u>; and (iii) jurisdiction would violate the well-established rule in <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995), which establishes that the Court should not exercise jurisdiction where such exercise would amount to unnecessary interference with the orderly and comprehensive disposition of state court litigation.  <u>See</u> Motion to Remand at 1.  On March 21, 2012, the Court issued its Memorandum Opinion and Order, in which it found that it had jurisdiction under CAFA and that there was no reason to decline jurisdiction.  <u>See</u> Doc. 117 at 1 ("MOO").

In the Travelers Insurance Motion, Travelers Insurance asserts that there is "no factual basis for assuming that Travelers would fail to obey the law."  Travelers Insurance Motion ¶ 2, at 2.  It argues that, while "the Complaint cites the UCPA, no specific allegations appear to relate to it," and that, as a matter of New Mexico law, "there is no private claim for injunctive relief under the UCPA."  Travelers Insurance Motion ¶ 5, at 2.  Travelers Insurance contends that the Plaintiffs fail to allege irreparable harm, which is a necessary element for any claim for injunctive relief.  <u>See</u> Travelers Insurance Motion ¶ 5, at 3.  It argues that the Plaintiffs also fail to allege irreparable harm with respect to the UPA claims and asserts that no Travelers Insurance policyholder will be irreparably harmed.  <u>See</u> Travelers Insurance Motion ¶ 6, at 3.  Travelers Insurance does not challenge <u>Jordan v. Allstate Insurance Co.</u>, and asserts that, generally, declaratory judgments are not available to construe or clarify a judgment because judgments and decrees speak for themselves. <u>See</u> Travelers Insurance Motion ¶¶ 8-9, at 3.  It argues that the Plaintiffs have failed to demonstrate the "concrete" risk of future harm required to obtain declaratory relief.  Travelers Insurance Motion ¶ 10, at 3.  Finally, Travelers Insurance represents that it cannot alter or change policy language

without the Insurance Division of the New Mexico Public Regulation Commission's approval and that, unless and until the Insurance Division approves new policy language, it would be improper for the Court to require the use of language that has not been lawfully approved.  See Travelers Insurance Motion ¶ 11, at 4.

Travelers Insurance also filed its Memorandum of Law in Support of Defendant Travelers Home & Marine Company's Motion to Dismiss on June 17, 2011.  See Doc. 41 ("Travelers Insurance Memo").  Travelers Insurance asserts that injunctions are a form of relief, and not an independent cause of action, and that the Plaintiffs must base their request for injunctive relief on some underlying cause of action.  See Travelers Insurance Memo at 4.  It also argues that, to obtain injunctive relief, a plaintiff must demonstrate irreparable harm, which it argues that the Complaint fails to do.  See Travelers Insurance Memo at 5.  Travelers Insurance contends that, while the Complaint cites the UIPA, no specific allegations relate to it and that there is no private claim for injunctive relief under the UIPA.  See Travelers Insurance Memo at 5.  It argues, with respect to the UPA, that, under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.C. 1937 (2009), a plaintiff must plead specific facts, and that there is no factual basis showing that Travelers knowingly made a misleading or false statement.  See Travelers Insurance Memo at 5.  Travelers Insurance further contends that New Mexico provides an exemption to the UPA for transactions which regulatory bodies permit:

> Nothing in the Unfair Practices Act [N.M.S.A. 1978, § 57-12-1] shall apply to actions or transactions expressly permitted under laws administered by a regulatory body of New Mexico or the United States, but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the Unfair Practices Act.

Travelers Insurance Memo at 6-7.  It represents that courts have interpreted this statute as applicable when "the regulatory body must render permission to engage in the business of the transaction

through licensing, registration or some other manifestation of 'permitting' the business activity," and that the United States Court of Appeals for the Tenth Circuit has invoked this exception in the insurance context. Travelers Insurance Memo at 8 (quoting Branch v. Weltman, No. 96-931, 1997 U.S. Dist. LEXIS 23983, at *8 (D.N.M. May 22, 1997)(Vazquez, J.))(citing Coll v. First Am. Title Ins. Co., 642 F.3d 876, 900 (10th Cir. 2011)). See Travelers Insurance Memo at 6-7. It argues that, under the New Mexico Declaratory Relief Act, N.M.S.A. 1978, § 44-6-2, a party may obtain a declaratory judgment only if there is an actual controversy and that courts will not issue declaratory judgments to "re-announce" the law. Travelers Insurance Memo at 8-9. Travelers Insurance asserts that it does not challenge the holding in Jordan v. Allstate Insurance Co. and contends that the Plaintiffs have not demonstrated a concrete risk of future harm. See Travelers Insurance Memo at 9-10. It argues that the Complaint speculates that, unless the Court reforms every MFRA policy, none of the Defendants will unilaterally and voluntarily conform with Jordan v. Allstate Insurance Co., and that there is no allegation that Travelers Insurance has failed to provide full coverage limits. See Travelers Insurance Memo at 10. It also asserts that, because the Insurance Division controls what language is in insurance forms, the Court cannot order the relief that the Plaintiffs seek. See Travelers Insurance Memo at 11.

On March 26, 2012, the Plaintiffs filed their Memorandum Response to Defendant Travelers Insurance Company's Motion to Dismiss. See Doc. 118 ("Travelers Insurance Response"). They note that the procedural posture of this case has changed and that the parties have agreed to dismiss 21st Century Insurance, Amica Mutual, Pacific Indemnity, and Colorado Casualty from the suit. See Response at 1. The Plaintiffs also assert that they have reached an agreement to dismiss Desert

Mountain.  See Response at 1.[4]  The Plaintiffs represent that they are withdrawing their request for injunctive relief establishing a form for uninsured or underinsured motorist coverage that complies with Jordan v. Allstate Insurance Co. See Response at 1.  They further represent that there are only two parties remaining in the case -- Metropolitan Casualty and Travelers Insurance -- and only two remaining issues: (i) do the uninsured motorist selection/rejection forms used by these Defendants comply with the Supreme Court of New Mexico's mandate in Jordan v. Allstate Insurance Co.; and (ii) if the forms do not comply, to what declaratory or equitable relief are the Plaintiffs entitled. See Response at 1-2.  The Plaintiffs assert that they have "nudged their claims across the line from conceivable to plausible" with respect to establishing a "reasonably foreseeabl[e] necessity for this Court to order retroactive reformation of every [uninsured motorist] policy issued by each Defendant."  Response at 4.  They argue that, as "person(s) interested," they properly seek a declaratory judgment under N.M.S.A. 1978, § 44-6-4, that the remaining Defendants' uninsured motorist selection/rejection forms are void and ineffective.  Response at 4.  They ask that the Court enter a declaratory judgment which retroactively reforms every uninsured motorist policy that the Defendants have issued since May 2004 to provide equal-limits uninsured motorist coverage. See Response at 5.  As supplemental relief, the Plaintiffs ask that the Court order the remaining Defendants to send written notice to each policyholder whose rights might be effected.  See Response at 5.

The Plaintiffs argue that there is an actual controversy, because these Defendants were not parties to Jordan v. Allstate Insurance Co. and, thus, no court has determined whether the uninsured

---

[4]Since the Response was filed, Desert Mountain and the Plaintiffs submitted their Party Stipulation Dismissing Defendant Desert Mountain Agency, With Prejudice, filed March 28, 2012 (Doc. 121).

motorist coverage selection/rejection forms that they use comply with New Mexico law. See Response at 5 (citing Memorandum Opinion and Order at 60, filed March 19, 2012 (Doc. 113)("MOO")).  The Plaintiffs rely on the Court's references, in its MOO, to this case as an "enforcement" action, and assert that any interested person whose rights are affected by a contract may have any question of construction or validity determined through a declaratory judgment action. Response at 6 (citing MOO at 81; N.M.S.A. 1978, § 44-6-4).  They represent that they have filed the selection/rejection forms that Metropolitan Casualty and Travelers Insurance use, and assert that neither form complies with Jordan v. Allstate Insurance Co. See Response at 7.  The Plaintiffs assert that both forms require insureds to select the same uninsured motorist coverage for each car and that the forms allow insureds only to reject uninsured motorist coverage as to all insured cars.  See Response at 7.  The Plaintiffs assert that Valdez and Gatewood have standing to pursue these claims, and are "persons interested."  Response at 9.

The Plaintiffs contend that the Defendants' reliance on the UPA exemption in N.M.S.A. 1978, § 57-12-7 is groundless.  They argue that, under the UPA, an allegation of "irreparable harm" is not a required condition for injunctive relief.  Response at 9.  They assert that the New Mexico Legislature amended N.M.S.A. 1978, § 57-12-7 in 1999 to eliminate the argument that Travelers Insurance attempts to make and that the Supreme Court of New Mexico has held that all actions about which a regulatory body remains silent are subject to the UPA.  See Response at 10 (citing Truong v. Allstate Ins. Co., 147 N.M. 583, 594-95, 227 P.3d 73, 84-85 (2010)).  The Plaintiffs contend that the Superintendent of Insurance has expressly refused to issue any rules or mandatory forms for compliance with Jordan v. Allstate Insurance Co. See Response at 11.  They further assert that it is well-settled that the Superintendent of Insurance's approval of an uninsured motorist policy form does not establish compliance.  See Response at 11 (citing Padilla v. Dairyland Ins. Co., 109

N.M. 555, 560, 787 P.2d 835, 840 (1990)).  The Plaintiffs argue that the "primary jurisdiction" argument is similarly unavailing, because "a private plaintiff may pursue the remedies contained under Section 57-12-10 for unfair or deceptive trade practices, notwithstanding the statutory authority investing the superintendent of insurance with broad administrative powers under the Insurance Code."  Response at 11 (citing Truong v. Allstate Ins. Co., 147 N.M. at 597, 227 P.3d at 87).  The Plaintiffs also argue that they have alleged irreparable harm, because they have alleged that the remaining Defendants' selection/rejection forms do not comply with Jordan v. Allstate Insurance Co., and that the Defendants refuse to inform their policyholders of their rights to equal limits uninsured motorist coverage.  See Response at 12.  The Plaintiffs contend that it is "beyond peradventure that Defendants' unsophisticated policyholders will not know about, much less be able to enforce, their rights to judicially mandated equal limits [uninsured motorist] coverage so long as Defendants refuse to notify them of this right."  Response at 13 (citing Progressive N.W. Ins. Co. v. Weed Warrior Servs., 149 N.M. 157, 161, 245 P.3d 1209, 1213 (2010)).  They assert that the Defendants' continued refusal to notify policyholders is bad faith per se.  See Response at 13-14 (citing Salas v. Mountain States Mut. Cas. Co., 145 N.M. 542, 546, 202 P.3d 801, 805 (2009)).  They also argue that, independent of the Jordan v. Allstate Insurance Co. mandate, the Defendants have a fiduciary responsibility to notify policyholders of these changes.  See Response at 14.

With respect to the N.M.S.A. 1978, § 59A-16-20 and N.M.S.A. 1978, § 59A-16-3 and -4, the Plaintiffs assert that the Defendants have "continuously engaged in practices which have been found deceptive or unfair," and that "the UCPA's private remedy is not limited to damages."  Response at 15.  The Plaintiffs argue that, on the record of this case, it is "beyond cavil that neither of these Defendants were providing insureds with a Jordan/Montano menu prior to the filing of this case."  Response at 15-16.  They assert that the Supreme Court of New Mexico has held that the

Insurance Code and UIPA are "remedial" statutes intended to promote "ethical" practices within the insurance industry, and that it would be "illogical" to hold that the private remedy provided in the UIPA cannot include an insured's right to seek equitable relief.  Response at 16 (citing <u>Hovet v. Allstate Ins. Co.</u>, 135 N.M. 397, 402, 89 P.3d 69, 74 (2004)).  They assert that it strains logic that the continued perpetration of institutional insurance practices found to be unfair would not constitute <u>per se</u> irreparable harm.  <u>See</u> Response at 16.

The Court held a hearing on March 27, 2012.  Travelers Insurance first asserted, that under rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court should confine its review to the allegation in the Complaint.  <u>See</u> Transcript of Hearing at 4:12-18 (March 27, 2012)(Rohback)("Tr.").[5]  It argued that, with regard to the claims for injunctive relief, under the UIPA and UPA, the Plaintiffs have failed to allege irreparable harm as New Mexico law requires.  <u>See</u> Tr. at 4:19-25 (Rohback).  Travelers Insurance represented that the UIPA allows a person to sue for damages, but not for declaratory or injunctive relief.  <u>See</u> Tr. at 5:3-5 (Rohback).  It asserted that the same statute allows the Superintendent of Insurance to sue for injunctive relief, and cited <u>New Mexico Associates v. Credit General Insurance Co.</u>, 973 F.Supp. 1027, 1031 (D.N.M. 1997)(Svet, M.J.), in support of the proposition that individuals cannot sue for injunctive or declaratory relief under the UIPA.  <u>See</u> Tr. at 5:3-17 (Rohback).  With respect to the UPA, Travelers Insurance again emphasized that there was no allegation of irreparable harm and argued that, in their Response, the Plaintiffs concede that a UPA injunction would be determined under principles of equity, which require that the Plaintiffs establish irreparable harm.  <u>See</u> Tr. at 6:4-18 (Rohback).  It argued that the Plaintiffs do not allege irreparable harm in their Complaint.  <u>See</u> Tr. at 6:18-19 (Rohback).

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Travelers Insurance pointed out that the statute which the Plaintiffs cite, N.M.S.A. 1978, § 57-12-10, establishes the relief available to an individual, whereas N.M.S.A. 1978, § 57-12-10 specifies that a class may sue only for damages.  See Tr. at 6:20-7:3 (Rohback).  It asserted that there is no provision in § 57-12-10 which provides that a class may seek injunctive or declaratory relief, and that, under the expressio unius est exclusio alterius canon of statutory construction, the New Mexico Legislature did not permit classes to sue for injunctive relief.  See Tr. at 7:4-12 (Rohback). Travelers Insurance argued that, under the UPA, there is an exemption for actions which regulatory agencies permit.  See Tr. at 7:12-14 (Rohback).  It reminded the Court that, during the hearing on the Motion to Remand, the Plaintiffs argued that every form that the insurer Defendants had submitted to the Superintendent of Insurance had been approved and that such a statement is a judicial admission in the case.  See Tr. at 7:15-20 (Rohback).  Travelers Insurance argued that the Plaintiffs cannot sue for a practice of which the Superintendent of Insurance has approved.  See Tr. at 8:1-3 (Rohback).  It reiterated that the Plaintiffs cannot show irreparable harm, because the Supreme Court of New Mexico has held that, if an insurer does not comply with Jordan v. Allstate Ins. Co., the policy will be automatically reformed.  See Tr. at 8:13-24 (Rohback).

The Plaintiffs argued that the Court addressed the irreparable-harm argument in its MOO, when the Court commented that no court has determined that these insurer Defendants' policies failed to comply with Jordan v. Allstate Ins. Co.  See Tr. at 9:13-24 (Berardinelli).  They asserted that the issue before the Court is whether the remaining insurer Defendants' policies conform, and, if they do not, what relief is available for the Plaintiffs.  See Tr. at 9:24-10:3 (Berardinelli).  They contended that insureds are presumed ignorant of uninsured motorist law and that there is no way for policyholders to find out about the rights they may have unless they are given notice.  See Tr. at 10:4-15 (Berardinelli).  The Plaintiffs further asserted that, because the insurer Defendants fail

-14-

to disclose the changes that Jordan v. Allstate Ins. Co. mandated for uninsured motorist policies, the current policies misrepresent to the insureds what the true limits of their policies are. See Tr. at 10:16-11:6 (Berardinelli). They agreed with the Court's statement, in its MOO, that this is an enforcement action and argued that it is typical to request declaratory relief, because they want the Court to find that the selection/rejection forms do not conform with policy requirements. See Tr. at 11:6-16 (Berardinelli). The Plaintiffs contended that insureds cannot make claims for damages if they do not know their true policy limits and that there is irreparable harm in the very nature of what they have alleged -- policyholders will have no effective remedy at law, because they are unaware that they are entitled to these benefits. See Tr. at 11:17-24 (Berardinelli). They asserted that insureds will be deprived of benefits through their insurance companies' silence. See Tr. at 11:25-12:2 (Berardinelli). With respect to Traveler Insurance's § 57-12-7 argument, the Plaintiffs argued that the Supreme Court of New Mexico rejected a similar argument in Truong v. Allstate Ins. Co. and that, unless something is "expressly permitted," it will not fall within the exclusion. Tr. at 12:5-10 (Berardinelli). The Plaintiffs emphasized that the Superintendent of Insurance has refused to act. See Tr. at 12:23-24 (Berardinelli).

The Court then asked how the Plaintiffs would characterize the relief sought in Jordan v. Allstate Ins. Co. See Tr. at 13:11-14 (Court). The Plaintiffs responded that they would characterize that action as one for declaratory relief. See Tr. at 13:15-18 (Berardinelli). They asserted that the New Mexico district court in that case entered a declaratory judgment that Allstate Insurance Company's selection/rejection forms did not comply with uninsured motorist coverage statutes or with the Superintendent of Insurance's regulations. See Tr. at 13:20-14:1 (Berardinelli). The Court asked whether there was any injunctive relief issued. See Tr. at 14:23-25 (Court). The Plaintiffs answered that it could be injunctive relief, but stated that none of the Defendants in this case were

defendants in <u>Jordan v. Allstate Ins. Co.</u>  <u>See</u> Tr. at 15:1-6 (Berardinelli).  The Court then asked Travelers Insurance why, if this case is just like <u>Jordan v. Allstate Ins. Co.</u>, the Court would not be able to issue an identical remedy as the Supreme Court of New Mexico, because if the Supreme Court of New Mexico found a remedy in that case, there must be a cause of action.  <u>See</u> Tr. at 16:6-16 (Court).  Travelers Insurance stated that it was unaware whether the defendants in <u>Jordan v. Allstate Ins. Co.</u> made the same arguments that it was making before the Court.  <u>See</u> Tr. at 16:24-17:1 (Rohback).  It argued that the Complaint specifies certain causes of action that are not available for a class and that, to the extent <u>Jordan v. Allstate Ins. Co.</u> declared the law of New Mexico, it does not dispute the law.  <u>See</u> Tr. at 17:15-22 (Rohback).  When Travelers Insurance asserted that there is no controversy, the Court asked whether that assertion implicates the Court's decision in its MOO that it has jurisdiction.  <u>See</u> Tr. at 17:22-18:3 (Court, Rohback).  The Court stated that the Plaintiffs are trying to enforce the law.  <u>See</u> Tr. at 18:4-7 (Rohback).   Travelers Insurance argued that citizens are presumed to know the law and cited <u>Quigley v. Rosenthal</u>, 327 F.3d 1044 (10th Cir. 2003).  <u>See</u> Tr. at 18:24-19:8 (Rohback).  It also asserted that, generally, after a decision has announced the law in a case, courts do not then declare it to be the law in other cases.  <u>See</u> Tr. at 19:9-13 (Rohback).

The Court asked whether its decision in the Motion to Remand was correct, if Travelers Insurance was arguing there is no controversy.  <u>See</u> Tr. at 19:14-15 (Court).  Travelers Insurance stated that the Court's decision was correct and that the case was now at the next step, looking at whether a declaratory judgment is the appropriate vehicle.  <u>See</u> Tr. at 19:16-19 (Rohback).  It asserted that the Supreme Court of New Mexico did not order the insurer defendants before it to give notice to their policyholders of the changes it announced.  <u>See</u> Tr. at 19:20-24 (Rohback).  The Court noted that, as it held in its MOO, no court has yet determined whether Travelers Insurance's selection/rejection forms violate the uninsured motorist statute, N.M.S.A. 1978, § 66-5-301.  <u>See</u> Tr.

at 19:25-20:4 (Court).  Travelers Insurance responded that the Supreme Court of New Mexico's decision was not specific to those policies, and the Court indicated that this argument contradicted the Court's finding that <u>Jordan v. Allstate Ins. Co.</u> was not collateral estoppel or res judicata in this case.  <u>See</u> Tr. at 20:5-23 (Court, Rohback).  Quoting from the Complaint, Travelers Insurance stated that the Plaintiffs had alleged that, "if an insurer does not, or did not after May 20, 2004, comply with these requirements for a written rejection, then any [uninsured motorist] policy issued in New Mexico that provides, or provided less than equal limits [uninsured motorist] coverage must be retroactively reformed as a matter of law."  Tr. at 21:1-15 (Rohback).  It agreed that the doctrines of collateral estoppel and res judicata do not apply, because none of the parties before the Court were parties to <u>Jordan v. Allstate Ins. Co.</u>  <u>See</u> Tr. at 22:15-18 (Rohback).  It asserted that it is not disputing the law, which says that policies not in compliance with § 66-5-301 are automatically reformed, and that the only party that will be injured is the insurance company.  <u>See</u> Tr. at 22:15-24 (Rohback).  Travelers Insurance argued that the insured does not suffer irreparable harm, because the insured is protected under <u>Jordan v. Allstate Ins. Co.</u>  <u>See</u> Tr. at 22:25-23:1 (Rohback).

With respect to declaratory relief, the Plaintiffs asserted that it would be a disservice to believe that the Supreme Court of New Mexico intended to announce a rule that could never be enforced.  <u>See</u> Tr. at 24:1-5 (Berardinelli).  They further asserted that the Superintendent of Insurance does not have exclusive jurisdiction to issue declaratory relief or issue injunctions, and that the Superintendent of Insurance's approval of a form does not preclude a court from determining whether that form complies with New Mexico law.  <u>See</u> 24:6-17 (Berardinelli).  The Plaintiffs expressed disappointment that Travelers Insurance would argue that policyholders know the law, when the Supreme Court of New Mexico has held that they do not.  <u>See</u> Tr. at 24:18-25:1 (Berardinelli).  They contended that Travelers Insurance is arguing that no plaintiff can bring an

-17-

action to enforce the public policy that the Supreme Court of New Mexico announced and that Travelers Insurance misunderstands the law.  See Tr. at 25:15-26:5 (Berardinelli).  Metropolitan Casualty, which was also attending the hearing, then asked the Court to clarify why it thought Travelers Insurance was questioning its MOO.  See Tr. at 26:11-18 (Strong).  The Court stated that key to its decision to deny the Motion to Remand was that the Court would have to apply Jordan v. Allstate Ins. Co. to the insurer Defendants and that this is similar to the Jordan v. Allstate Ins. Co. action.  See Tr. at 26:19-27:13 (Court).  Metropolitan Casualty asserted that it does not believe that there has to be something for the Court to do, for the Court to maintain jurisdiction, because, otherwise, the Court would lack jurisdiction any time a plaintiff failed to state a claim.  See Tr. at 27:14-28:9 (Strong).  The Plaintiffs emphasized that the Court has to determine whether these insurer Defendant's selection/rejection forms comply with Jordan v. Allstate Ins. Co.  See Tr. at 28:19-29:7 (Berardinelli).  Travelers Insurance argued that the Court was now combining the remand and the motion to dismiss, and that, with respect to the remand, the Court had before it a real controversy whether injunctive relief should be entered.  See Tr. at 29:9-22 (Rohback).  Travelers Insurance asserted that the Plaintiffs mischaracterized its argument when they stated that no one would be able to bring an enforcement action and that the proper way to bring such a case would be when an insurance company denies equal limits coverage after an accident.  See Tr. at 29:23-30:3 (Rohback).  It contended that the Plaintiffs' request for declaratory relief has never been appropriate. See Tr. at 30:11-13 (Rohback).

With respect to Travelers Insurance's primary jurisdiction argument, the Court noted that the argument echoed the Plaintiffs' Burford v. Sun Oil Co., 319 U.S. 315 (1943),[6] abstention

<hr />

[6]Under Burford v. Sun Oil Co., a federal district court should give a "sound respect" to comprehensive state statutory schemes and allow state administrative systems to determine matters

argument.  See Tr. at 30:25-31:7 (Court).  Travelers Insurance asserted that, in the briefing on the Motion to Remand, it was clear that the Plaintiffs were not arguing that the Insurance Division has exclusive jurisdiction; rather, they were saying that the state courts have exclusive jurisdiction. See Tr. at 31:8-13 (Rohback).  It argued that the Supreme Court of New Mexico has announced what insurance companies need to do, but before a company may follow the Supreme Court of New Mexico's mandate, the Superintendent of Insurance needs to approve of the new selection/rejection form.  See Tr. at 31:14-19 (Rohback).  Travelers Insurance contended that the Plaintiffs have conceded that the Superintendent of Insurance has considered and rejected this issue, such that the Plaintiffs' dispute is with the Superintendent of Insurance.  See Tr. at 31:20-24 (Rohback).  The Plaintiffs asserted that the MOO answered the primary-jurisdiction question.  See Tr. at 32:16-19 (Berardinelli).  They also stated that the Supreme Court of New Mexico, in Truong v. Allstate Ins. Co., and the Court of Appeals of New Mexico, in Azar v. Prudential Ins. Co. of America, 133 N.M. 669, 68 P.3d 909 (Ct. App. 2003), held that the Superintendent of Insurance does not have exclusive jurisdiction over these cases.  See Tr. at 32:20-33:4 (Berardinelli).  They argued that the Supreme Court of New Mexico has held that the Superintendent of Insurance's approval does not conclusively establish statutory compliance.  See Tr. at 33:4-11 (Berardinelli).  The Plaintiffs contended that the Superintendent of Insurance approves the uninsured motorist selection/rejection forms regardless whether the proper forms have been filed.  See Tr. at 33:12-25 (Berardinelli).

On March 29, 2012, Travelers Insurance filed its Reply Memorandum of Law in Support of Travelers Home & Marine Company's Motion to Dismiss.  See Doc. 123 ("Reply").  Travelers Insurance argues that, unlike the Plaintiffs, it has maintained consistent positions.  See Reply at 1.

the state desires to have determined administratively.  See Copar Pumice Co., Inc. v. Morris, No. 07-0079, 2009 WL 5201799, at *14 (D.N.M. Oct. 23, 2009)(Browning, J.).

It asserts that, at the hearing on the Motion to Remand, it argued that there was no viable cause of action against Desert Mountain or Travelers Insurance, and that the claims should be dismissed, but that the Court determined that it should decide the Motion to Remand first.  See Reply at 1. Travelers Insurance contends that the "Plaintiffs have shifted positions dramatically" and that the Plaintiffs have now dismissed their case against Desert Mountain as well as withdrawn their request for injunctive relief.  Reply at 2.  It states that it "expressly recognized th[e] distinction between exclusive jurisdiction in state courts and primary jurisdiction in an administrative agency" in its briefing on the Motion to Remand, and noted that the Plaintiffs were "not arguing that the Insurance Division has exclusive primary jurisdiction."  Reply at 2.  Travelers Insurance next notes that a federal court may deny remand and then dismiss a complaint.  See Reply at 3.  It argues that federal jurisdiction was appropriate under the UIPA and UPA, "without having to consider the declaratory judgment claim."  Reply at 3.  It asserts that federal courts routinely dismiss cases after denying a Motion to Remand and that it is proper to dismiss a claim seeking declaratory relief.  See Reply at 4.  Travelers Insurance contends that, to obtain declaratory relief, a plaintiff must demonstrate a concrete risk of harm and must allege facts that establish a controversy.  See Reply at 5.  It argues that the Plaintiffs have not alleged that Travelers Insurance has failed, or will fail, to provide full coverage limits.  See Reply at 5-6.

With respect to the injunctive relief sought, Travelers Insurance asserts that, under New Mexico law, the Plaintiffs must allege irreparable harm and that, here, they have failed to do so. See Reply at 6.  It contends that, under the UIPA, only the Superintendent of Insurance may seek declaratory or injunctive relief, and that New Mexico law prohibits the Plaintiffs from seeking declaratory or injunctive relief for this claim.  See Reply at 6-7.  It argues that, under the UPA, an individual seeking injunctive relief must prove irreparable harm, but that the class provision limits

relief to damages.  See Reply at 7 (citing N.M.S.A. 1978, § 57-12-10(A), (E)).  Travelers Insurance represents that "[i]t is a well-established maxim of statutory construction that when the legislature specifies one remedy, by implication, it excludes all others."  Reply at 7 (citing <u>Fischer Imaging Corp. v. Gen. Elec.</u>, 187 F.3d 1165, 1173 n.8 (10th Cir. 1999)).  It further asserts that the UPA has a regulatory exception which recognizes that no unfair practice has taken place if the agency charged with regulatory oversight has approved of the practice.  See Reply at 8.  It argues that the Insurance Division would have to approve the selection/rejection form and that, here, the Plaintiffs concede that the Superintendent of Insurance has approved of Travelers Insurance's forms.  See Reply at 8-9.

Travelers Insurance stated that <u>Jordan v. Allstate Ins. Co.</u> does not bind it under the doctrines of collateral estoppel or res judicata, but that the <u>Jordan v. Allstate Ins. Co.</u> decision binds it as the law of the land.  See Reply at 9.  Travelers Insurance represents that, in both <u>Progressive Northwestern Insurance Co. v. Weed Warriors Services</u> and <u>Jordan v. Allstate Ins. Co.</u>, the individual plaintiffs and the defendants were seeking a declaratory judgment regarding uninsured motorist coverage based on a "specific, concrete action."  Reply at 9-10.  It asserts that, here, the Plaintiffs seek a declaration that the insurers will violate <u>Progressive Northwestern Insurance Co. v. Weed Warriors Services</u> and <u>Jordan v. Allstate Ins. Co.</u>, and refuse to honor claims for full policy limits on policies that have been automatically reformed.  See Reply at 10.  It admits that, if any uninsured motorist selection/rejection form fails to comply with these requirements, the policy is automatically reformed through operation of law.  See Reply at 10.  Finally, Travelers Insurance contends that the Supreme Court of New Mexico has never held that insurance companies must inform their policyholders of its decision and, if a class is certified, the Plaintiffs will give prospective class members the very notice they seek.  See Reply at 11.

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Smith v. United States, 561 F.3d 1090, 1097 (10th Cir. 2009); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S.Ct. at 1940 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp v. Twombly, 550 U.S. at 545 (citation omitted). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some

plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).  The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

## SUPREME COURT OF NEW MEXICO CASES ON UNINSURED MOTORIST COVERAGE

N.M.S.A. 1978, § 66-5-301(A) and (C), in relevant part, state:

A.  No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

* * * *

C.  [T]he named insured shall have the right to reject uninsured motorist coverage as described in Subsections A and B of this section; provided that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage

in connection with a policy previously issued to him by the same insurer.

N.M. Stat. § 66-5-301(A) & (C)(emphasis added).  Regulation 13.12.3.9, which elaborates § 66-5-301, provides: "The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped, or otherwise made a part of the policy of bodily injury and property damage insurance."  N.M.A.C. § 13.12.3.9.

The Supreme Court of New Mexico has recognized that § 66-5-301 "embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state, with certain limited exceptions," and that the statute is "intended to expand  insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." Romero v. Dairyland Ins. Co., 111 N.M. 154, 156, 803 P.2d 243, 245 (1990).  Based upon those observations, the Supreme Court of New Mexico considers § 66-5-301 a remedial statute and, thus, maintains that it be liberally interpreted to further its purpose, construing exceptions to uninsured motorist coverage strictly to protect the insured.  See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  The Supreme Court of New Mexico has noted that an insured may reject uninsured motorist coverage, but that such rejection must satisfy the applicable regulations.  See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  To be valid, a rejection of uninsured motorist coverage must be made a part of the policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the insured's attention that uninsured motorist coverage has been waived. See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  With respect to the regulation requiring that the rejection be made a part of the policy delivered to the insured, the Supreme Court

of New Mexico has stated:

> [Regulation 13.12.3.9] ensure[s] that the insured has affirmative evidence of the extent of coverage.  Upon further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home, an individual may well reconsider his or her rejection of uninsured motorist coverage.  Providing affirmative evidence of the rejection of the coverage comports with a policy that any rejection of the coverage be knowingly and intelligently made.  Any individual rejecting such coverage should remain well informed as to that decision.  We find that the regulation of the superintendent of insurance furthers a legislative purpose to provide for the inclusion of uninsured motorist coverage in every automobile liability policy unless the insured has knowingly and intelligently waived such coverage.

Romero v. Dairyland Ins. Co., 111 N.M. at 156-57, 803 P.2d at 245-46.  Based upon that assessment of § 66-5-301 and N.M.A.C. § 13.12.3.9, the Supreme Court of New Mexico has held that, unless the named insured rejects uninsured motorist coverage in a manner consistent with statutory and administrative requirements, uninsured motorist coverage shall be read into an insured's policy regardless of the parties' intent or the fact that the insured has not paid a premium.  See Kaiser v. DeCarrera, 122 N.M. 221, 223, 923 P.2d 588, 590 (1996)(quoting  Romero v. Dairyland Ins. Co., 111 N.M. at 155, 803 P.2d at 244).  In Kaiser v. DeCarrera, the Supreme Court of New Mexico ruled that a valid rejection of uninsured motorist coverage did not take place and, therefore, read uninsured motorist coverage into the policy.  The plaintiff had signed a rejection as part of the application for insurance, and the insurance company sent an amended policy reflecting the rejection to the address on the application that was returned to sender.  See Kaiser v. DeCarrera, 122 N.M. at 223, 923 P.2d at 590.  The Supreme Court of New Mexico found that the plaintiff was never provided a policy with the rejection included and that, as a result, uninsured motorist coverage should be read into the policy.  See Kaiser v. DeCarrera, 122 N.M. at 223, 923 P.2d at 590.

In Montano v. Allstate Indemnity Co., 135 N.M. 681, 92 P.3d 1255 (2004), the Supreme Court of New Mexico addressed the stacking of insurance coverage, noting that its cases had

"expressed a public policy in favor of stacking," and that "it is unfair not to allow stacking <u>when</u> <u>multiple premiums are paid</u> or when the policy is otherwise ambiguous."   135 N.M. at 685, 92 P.3d at 1259 (emphasis original).  The Supreme Court of New Mexico indicated that it would take the opportunity to "chart a new course."  <u>Montano v. Allstate Indem. Co.</u>, 135 N.M. at 686, 92 P.3d at 1260.  Interpreting § 66-5-301(A) and (C), the Supreme Court of New Mexico held that "an insurance company should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision" and that, with "written waivers, insureds will know exactly what coverage they are receiving and for what cost."  <u>Montano v. Allstate Indem. Co.</u>, 135 N.M. at 686-87, 92 P.3d at 1260-61.  The Supreme Court of New Mexico also illustrated its holding:

> [I]n a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three [uninsured or underinsured motorist] coverages and allow the insured to reject, in writing, all or some of the offered coverages. Thus, hypothetically, in the case of a $25,000 policy, if the premium for one [uninsured or underinsured motorist] coverage is $65, two coverages is an additional $60, and three coverages $57, the insured who paid all three (for a total premium of $182) would be covered up to $75,000 in [uninsured or underinsured motorist] bodily injury coverage.  However, the insured may reject, in writing, the third available coverage and pay $125 for $50,000 of uninsured motorist coverage; or the insured may reject, in writing, the third available coverage and pay $65 for $25,000 of [uninsured or underinsured motorist] coverage; or the insured may reject all three [uninsured or underinsured motorist] coverages.  In any event, the coverage would not depend on which vehicle, if any, was occupied at the time of the injury.  Thus, the insured's expectations will be clear, and an insured will only receive what he or she paid for.

<u>Montano v. Allstate Indem. Co.</u>, 135 N.M. at 687, 92 P.3d at 1261.

In <u>Marckstadt v. Lockheed Martin Corp.</u>, 147 N.M. 678, 229 P.3d 462 (2009), the Supreme Court of New Mexico consolidated cases before it, including a case that the Tenth Circuit certified to it, to answer the question of what is required under § 66-5-301 and N.M.A.C. § 13.12.3.9 to

-26-

effectively reject uninsured motorist coverage.  See 147 N.M. at 683, 229 P.3d at 467.[7]  The

Supreme Court of New Mexico held that, "in order for the offer and rejection requirements of

Section 66-5-301 to effectuate the policy of expanding [uninsured or underinsured motorist]

coverage, the insurer is required to meaningfully offer such coverage and the insured must

knowingly and intelligently act to reject it before it can be excluded from a policy."  Marckstadt v.

Lockheed Martin Corp., 147 N.M. at 684, 229 P.3d at 468 (emphasis original).  It found that "the

rejection which the regulation requires to be in writing must be the act of rejection described in the

statute" and held that an insured must reject uninsured motorist coverage in writing.  Marckstadt v.

Lockheed Martin Corp., 147 N.M. at 687, 229 P.3d at 470 (emphasis original).  In Progressive

Northwestern Insurance Co. v. Weed Warrior Services, the Supreme Court of New Mexico

answered

> in the affirmative the question, certified to us by the United States Court of Appeals
> for the Tenth Circuit, of whether election by an insured to purchase [uninsured or
> underinsured motorist] coverage in an amount less than the policy limits constitutes
> a rejection of the maximum amount of [uninsured or underinsured motorist]
> coverage permitted under Section 66-5-301.

149 N.M. at 158, 245 P.3d at 1210.[8]  It found that § 66-5-301 provides that insurers must offer

---

[7]The Tenth Circuit certified Federated Serv. Inc. Co. v. Martinez, 300 F.App'x 618 (10th Cir. 2008)(unpublished), and the question: "For a valid rejection of [uninsured or underinsured motorist] coverage under New Mexico law, must that rejection be written, signed by the insured, and attached to the policy."  300 F.App'x at 619.  In the district court, the Honorable James A. Parker, Senior United States District Judge for the District of New Mexico, granted the plaintiffs' motion for summary judgment and found that the defendant's employer had validly rejected uninsured motorist coverage for its employees.  See Federated Serv. Inc. Co. v. Martinez, No. 06-638, 2006 WL 6571771, at *4 (D.N.M. July 14, 2006)(Parker, J.).  After the Supreme Court of New Mexico decided Marckstadt v. Lockheed Martin Corp., the Tenth Circuit reversed Senior Judge Parker's judgment.  See Federated Serv. Ins. Co. v. Martinez, 385 F.App'x 845, 849-50 (10th Cir. 2010).

[8]Citing the split among the district judges in the United States District Court for the District of New Mexico, the Tenth Circuit certified, in Progressive Northwestern Ins. Co. v. Weed Warrior Services, 368 F.App'x 853 (10th Cir. 2010)(unpublished),  the question: "Does the election to take

uninsured motorist coverage, or underinsured motorist coverage, in an amount greater than the

minimums required.  See Progressive N.W. Ins. Co. v. Weed Warrior Servs., 149 N.M. at 160, 245

P.3d at 1212.  The Supreme Court of New Mexico held that the "Legislature intended for drivers

to have the option of carrying [uninsured or underinsured motorist] coverage equal to their policy

limits," and rejected "any suggestion that Section 66–5-301 places a burden on the insured to request

[uninsured or underinsured motorist] coverage."  Progressive N.W. Ins. Co. v. Weed Warrior Servs.,

149 N.M. at 161, 245 P.3d at 1213.  It noted that the right to reject coverage cannot be meaningfully

exercised without an offer of coverage equal to policy limits, and that it would not "impose on the

consumer an expectation that she or he will be able to make an informed decision as to the amount

of [uninsured or underinsured motorist] coverage desired or required without first receiving

information from the insurance company."  Progressive N.W. Ins. Co. v. Weed Warrior Servs., 149

N.M. at 161, 245 P.3d at 1213.

     In Jordan v. Allstate Ins. Co., the Supreme Court of New Mexico granted certiorari in three

---

[uninsured or uninsured motorist] coverage for less than the general policy liability limits constitute
a rejection under the New Mexico uninsured motorist statute, N.M. Stat. § 66-5-301(A)."  368
F.App'x at 854.  In its certification order, the Tenth Circuit noted that the Court had held, in Farm
Bureau Mutual Insurance Co. v. Jameson, 472 F.Supp.2d 1272 (D.N.M. 2006)(Browning, J.), that
election to take uninsured motorist coverage in an amount less than the general coverage constitutes
a rejection under the New Mexico statute.  See Progressive N.W. Ins. Co. v. Weed Warrior Servs.,
368 F.App'x 857 (citing Farm Bureau Ins. Co. v. Jameson, 472 F.Supp.2d at 1280).  In the district
court, in Progressive N.W. Ins. Co. v. Weed Warrior Servs., the Honorable Judith C. Herrera, United
States District Judge for the District of New Mexico, denied both the defendant's and the plaintiff's
motions for summary judgment.  See 588 F.Supp.2d 1281, 1282 (D.N.M. 2008)(Herrera, J.).  Judge
Herrera found that the policy at issue "should be enforced as written, to provide $100,000 in
[uninsured or underinsured motorist] coverage, which is offset by the $100,000 already received
from the tortfeasor, rather than being reformed to provide $1 million in [uninsured or underinsured
motorist] coverage."  Progressive N.W. Ins. Co. v. Weed Warrior Servs., 588 F.Supp.2d at 1288.
After the Supreme Court of New Mexico reached its decision, the Tenth Circuit reversed Judge
Herrera.  See Progressive N.W. Ins. Co. v. Weed Warrior Servs., 405 F.App'x 284, 288 (10th Cir.
2010)(unpublished).

cases and consolidated them for review.  In all three cases, the insured was injured in an accident involving an uninsured motorist.  See Jordan v. Allstate Ins. Co., 149 N.M. at 166-67, 245 P.3d at 1218-19.  The Supreme Court of New Mexico held that "a rejection of [uninsured or underinsured motorist] coverage equal to the liability limits in an automobile insurance policy must be made in writing and must be made a part of the insurance policy delivered to the insured."  149 N.M. at 165, 245 P.3d at 1217.  It then further found that:

> In order to honor these requirements effectively, insurers must provide the insured with the premium charges corresponding to each available option for [uninsured or underinsured motorist coverage] so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled.  If an insurer fails to obtain a valid rejection, the policy will be reformed to providing [uninsured or underinsured motorist] coverage equal to the limits of liability.

Jordan v. Allstate Ins. Co., 149 N.M. at 165, 245 P.3d at 1217.  It noted that "insurers continue to offer [uninsured or underinsured motorist] coverage in ways that are not conducive to allowing the insured to make a realistically informed choice," and found it "necessary to prescribe workable requirements for a valid and meaningful rejection of [uninsured or underinsured motorist] coverage in amounts authorized by statute."  Jordan v. Allstate Ins. Co., 149 N.M. at 169, 245 P.3d at 1221.  The Supreme Court of New Mexico then provided that:

> When issuing an insurance policy, an insurer must inform the insured that he or she is entitled to purchase [uninsured or underinsured motorist] coverage in an amount equal to the policy's liability limits and must also provide the corresponding premium charge for that maximum amount of [uninsured or underinsured motorist] coverage.  The premium cost for the minimum amount of [uninsured or underinsured motorist] coverage allowed by Section 66-5-301(A) must also be provided, as well as the relative costs for any other levels of [uninsured or underinsured motorist] coverage offered to the insured.  The insured must be informed that he or she has a right to reject [uninsured or underinsured motorist] coverage altogether.  Providing the insured with a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision . . . .

Jordan v. Allstate Ins. Co., 149 N.M. at 169, 245 P.3d at 1221.  It held that, unless these

requirements are met, the "policy will be reformed to provide [uninsured or underinsured motorist] coverage equal to the liability limits."  Jordan v. Allstate Ins. Co., 149 N.M. at 169, 245 P.3d at 1221.  The Supreme Court of New Mexico also found that the rules that it announced should be retroactive, because, on balance, "we deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law" and retroactive application "will ensure that all insureds will be treated equally."  Jordan v. Allstate Ins. Co., 149 N.M. at 171, 245 P.3d at 1223.

## LAW REGARDING RIPENESS

"In order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy."  New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995). Ripeness pertains to timing of a case and is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995)(quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)).  Ripeness is a component of the Article III requirement that limits judicial review to "cases or controversies."  U.S. Const. art. III, § 2.  See U.S. West, Inc. v. Tristani, 182 F.3d 1202, 1208 (10th Cir. 1999).  A controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and "a real and substantial controversy admitting of specific relief through a decree of a conclusive character."  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937).  "[T]he question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)(citation omitted).

In MedImmune, Inc. v. Genentech, Inc. a patent licensee, who had continued to pay royalties

-30-

for use of the patent, brought a declaratory-judgment action against the patent holder to determine whether the patent was invalid or unenforceable.  See 549 U.S. at 121-25.  What appeared to be missing in the case was the requisite immediacy -- there was little likelihood that the patent holder would ever bring suit against the licensee, because the licensee was continuing to pay royalties. Nevertheless, the Supreme Court of the United States held that there was an actual case or controversy, because the looming threat of the licensee having to pay treble damages, if it halted payments and the patent was ultimately upheld, "coerced" the licensee's payment of royalties. MedImmune, Inc. v. Genentech, Inc., 549 U.S. at 129.  Avoidance of such dilemmas "was the very purpose of the Declaratory Judgment Act."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. at 129. Two cases concerning foreign policy illustrate the need for the facts to mature before declaratory-judgment jurisdiction arises. In Rabinowitz v. Kennedy, 376 U.S. 605 (1964), the Court held that the petitioner attorneys were not exempt from registration under the Foreign Agents Registration Act; but it refused to consider whether the questions asked on the registration forms were proper.   See 376 U.S. at 610.  Noting that the forms advised registrants that government regulations allowed them to apply for waivers of inappropriate or unduly burdensome requirements, it said: "Since petitioners have made no attempt to determine which questions must be answered and how much information disclosed, this issue is not ripe for adjudication."  Rabinowitz v. Kennedy, 376 U.S. at 610.  In Zemel v. Rusk, 381 U.S. 1 (1965), the Supreme Court refused to consider Zemel's claim that he was constitutionally entitled to travel to Cuba.  See 381 U.S. at 3.  The Supreme Court explained that it would need to know the specifics of the travel:

> The complaint filed in this case does not specify the sort of travel to Cuba appellant has in mind -- e.g., whether he plans to proceed to Cuba directly or travel there via one or more other countries. Nor can we tell from the papers filed whether the Government will, in the event appellant journeys to Cuba, charge him under § 215(b) with leaving the United States on a carrier bound for Cuba with a passport not

validated for Cuba; leaving the United States with such a passport with the intent of traveling to Cuba before he returns home; leaving the United States with such a passport on a journey which in fact takes him to Cuba; re-entering the United States with such a passport after having visited Cuba; some other act -- or whether it will charge him at all. Whether each or any of these gradations of fact or charge would make a difference as to criminal liability is an issue on which the District Court wisely took no position. Nor do we. For if we are to avoid rendering a series of advisory opinions, adjudication of the reach and constitutionality of § 215(b) must await a concrete fact situation.

Zemel v. Rusk, 381 U.S. at 19-20.

In Eccles v. Peoples Bank, 333 U.S. 426 (1948), the Supreme Court held that a declaratory-judgment action was not ripe.  See 333 U.S. at 427.  The bank sought to challenge a condition imposed on its membership in the Federal Reserve System that restricted Transamerica Corporation's ownership of its stock.  See Eccles v. Peoples Bank, 333 U.S. at 428-29. Transamerica Corp. had acquired a few shares of stock, but only for investment, and not to obtain any control over the bank, which was what the membership condition was meant to prevent. See Eccles v. Peoples Bank, 333 U.S. at 430–31.  The bank filed suit, because it feared that, if it lost its membership, its deposits would not be insured.  See Eccles v. Peoples Bank, 33 U.S. at  at 427. When suit was brought, however, the bank had failed to show "[t]he actuality of [its] need for a declaration of [its] rights." Eccles v. Peoples Bank, 33 U.S. at 432.  The Federal Reserve Board had "disavow[ed] any action to terminate the Bank's membership" under the existing circumstances. Eccles v. Peoples Bank, 33 U.S. at 432. As the Supreme Court described the suit:

> [T]he Bank seeks a declaration of its rights if it should lose its independence [from Transamerica], or if the Board of Governors should reverse its policy and seek to invoke the condition even though the Bank remains independent and if then the Directors of the Federal Deposit Insurance Corporation should not change their policy not to grant deposit insurance to the Bank as a non-member of the Federal Reserve System.

Eccles v. Peoples Bank, 33 U.S. at 432.  In the Supreme Court's view, "[t]he concurrence of these

contingent events, necessary for injury to be realized, is too speculative to warrant anticipatory judicial determinations." Eccles v. Peoples Bank, 33 U.S. at 432. It concluded: "[The] Bank's grievance here is too remote and insubstantial, too speculative in nature, to justify an injunction against the Board of Governors, and therefore equally inappropriate for a declaration of rights." Eccles v. Peoples Bank, 33 U.S. at 434. Addressing these Supreme Court cases, the United States Court of Appeals for the Tenth Circuit has held: "The Court made clear that generally one cannot bring a declaratory judgment action just to resolve one isolated issue in a possible future controversy." Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d 1372, 1380 (10th Cir. 2011).

In Plant Oil Powered Diesel Fuel Systems, Inc. v. ExxonMobil Corp., 801 F.Supp.2d 1163 (D.N.M. 2011)(Browning, J.), the Court held that certain claims that a proposed fit-for-purpose guideline violated antitrust principles was not ripe, because the plaintiff had not shown a hardship, and because the claims were based on "uncertain or contingent future events." 801 F.Supp.2d at 1184. The Court found that, "[b]ecause the Fit-for-Purpose Guidelines are both in their early stages and because their development is on-going, creating uncertainty what form they will ultimately take if and when they are submitted for approval, the Court concludes that POP Diesel's claims based on the Fit-for-Purpose Guidelines are premature." Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp, 801 F.Supp.2d at 1185. In Carroll v. Los Alamos National Security, LLC, 704 F.Supp.2d 1200 (D.N.M. 2010)(Browning, J.), the Court found that negligent misrepresentation claims were ripe for adjudication. See 704 F.Supp.2d at 1219. There, the defendant conceded that an employee gave the plaintiff incorrect information when the plaintiff was deciding on a pension plan. See Carroll v. Los Alamos Nat'l Sec., LLC, 704 F.Supp.2d at 1219. The Court found that the plaintiff had a legally protected interest in being given correct information regarding his pension-plan options and in making a fully informed selection. See Carroll v. Los Alamos Nat'l Sec., LLC,

704 F.Supp.2d at 1220. The Court held that, because the plaintiff had a legally protected interest in receiving accurate information and there was no dispute that he did not, he was injured, and the matter was ripe for adjudication. See Carroll v. Los Alamos Nat'l Sec., LLC, 704 F.Supp.2d at 1220. With respect to the accrual of the cause of action, the Court found that the claim had accrued because the plaintiff had suffered an injury, which gave rise to a claim, even though he had not yet suffered damages. See Carroll v. Los Alamos Nat'l Sec., LLC, 704 F.Supp.2d at 1221. Ultimately, however, the Court granted the defendants' motion for summary judgment on the negligent misrepresentation claims, because the plaintiff had not established that the defendants caused him harm or that the defendants' conduct would harm him in the future. See Carroll v. Los Alamos Nat'l Sec., LLC, 704 F.Supp.2d at 1226.

## LAW REGARDING THE NEW MEXICO UNFAIR PRACTICES ACT

The UPA provides individual and class action remedies for unfair, deceptive, or unconscionable trade practices. See Truong v. Allstate Ins. Co., 147 N.M. at 590, 227 P.3d at 80. "Generally speaking, the UPA is designed to provide a remedy against misleading identification and false or deceptive advertising." Lohman v. Daimler-Chrysler Corp., 142 N.M. 437, 442, 166 P.3d 1091, 1096 (2007). To state a claim under the UPA, a complaint must allege:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

Lohman v. Daimler-Chrysler Corp., 142 N.M. 437, 439, 166 P.3d 1091, 1093 (Ct. App. 2007).

The UPA also establishes a statutory exemption to those consumer protections. It states:

> Nothing in the Unfair Practices Act shall apply to actions or transactions expressly permitted under the laws administered by a regulatory body of New Mexico or the

-34-

United States, but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the Unfair Practices Act.

N.M.S.A. 1978, § 57-12-7.  In interpreting this provision, the Supreme Court of New Mexico has held that "expressly" means "directly and distinctly stated or expressed <u>rather than implied or left to inference</u>."   <u>Truong v. Allstate Ins. Co.</u>, 147 N.M. at 593, 227 P.3d at 83 (emphasis original)(citation omitted).  In <u>Truong v. Allstate Ins. Co.</u>, the Supreme Court of New Mexico held that the Superintendent of Insurance did not "expressly permit" a form of claims handling where the Superintendent of Insurance stated "only that the claims 'appear to' have been handled properly and that no claims handling abuses 'were noted,'" and that these statements were not the same as an affirmative finding of proper handling.  147 N.M. at 593, 227 P.3d at 83.  In <u>Azar v. Prudential Ins. Co. of America</u>, 133 N.M. 669, 68 P.3d 909 (Ct. App. 2003), the Court of Appeals of New Mexico also interpreted this provision.  There, the Court of Appeals of New Mexico held that, where the Insurance Division has never addressed a subject and the Insurance Code and insurance regulations are silent on that subject, that subject is not "expressly permitted" as N.M.S.A. 1978, § 57-12-7 defines that term.  <u>Azar v. Prudential Ins. Co. of Am.</u>, 133 N.M. at 689, 68 P.3d at 929.  It also found that "the approval of a policy by a regulatory body does not conclusively establish the validity of the policy or shield it from review by the courts," and that, although such a determination is entitled to deference, "it is not binding on the courts, particularly where the laws being applied by the regulator are silent on the subject."  <u>Azar v. Prudential Ins. Co. of Am.</u>, 133 N.M. at 689-90, 68 P.3d at 929-30.

## LAW REGARDING THE UIPA

N.M.S.A. 1978, § 59A-16-20 imposes liability for a laundry list of unfair claims practices, including the following:

A.      misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;

B.      failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;

C.      failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;

D.      failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;

E.      not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

F.      failing to settle all catastrophic claims within a ninety-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared;

G.      compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

H.      attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

I.      attempting to settle claims on the basis of an application that was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker;

J.      failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made;

K.      making known to insureds or claimants a practice of insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

L.      delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and

-36-

then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

M.    failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage;

N.    failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

O.    violating a provision of the Domestic Abuse Insurance Protection Act.

N.M.S.A. 1978, § 59A-16-20.  The Honorable Bruce D. Black, United States District Judge for the District of New Mexico, concluded, in 2001, even before the <u>Bell Atlantic Corp. v. Twombly</u> and <u>Ashcroft v. Iqbal</u> decisions, that a plaintiff's pleadings were inadequate in a case that dealt with the UIPA:

> Dr. Yumukoglu alleges generally that Provident's conduct "violates one or more of the provisions of Section 59A-16-20 NMSA 1978 (1984)," the section of the New Mexico Unfair Insurance Practices Act that prohibits unfair claims practices. Dr. Yumukoglu does not specify which of the fifteen provisions of this section he feels Provident has violated, and after a review of the statute, the Court cannot perceive which subsection could have been violated under the fact alleged.  At the very least, Dr. Yumukoglu has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  Rule 8(a)(2) requires that a civil complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Here, it is not clear either what Dr. Yumukoglu is claiming or to what relief he is entitled under § 56A-16-20.  Dr. Yumukoglu's claim appears, like his claim for breach of the duty of good faith and fair dealing, to be based on Provident's alleged bad faith in terminating his disability benefits.  As discussed above, the Court finds that Provident's decision to terminate Dr. Yumukoglu's benefits did not amount to bad faith.  Provident's motion for summary judgment on Plaintiff's claim for statutory violation is granted.

<u>Yumukoglu v. Provident Life & Accident Ins. Co.</u>, 131 F.Supp.2d 1215, 1227 (D.N.M. 2001)(Black, J.)(footnote omitted)(citations omitted).  The Court in a recent opinion, <u>Estate of Gonzales v. AAA Life Ins. Co.</u>, No. 11-486, Memorandum Opinion and Order, filed March 28, 2012 (Doc. 69)("<u>Gonzales</u> MOO"), found that a plaintiff failed to state a claim under rule 12(b)(6) when the

complaint did not contain even "a formulaic recitation of the elements of a cause of action" under the Unfair Insurance Practices Act, N.M.S.A. 1978, §§ 59A-16-1 to 59A-16-30, to guide the Court. See Gonzales MOO at 32 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

## ANALYSIS

The Court will grant the Travelers Insurance Motion. The Court finds that the Plaintiffs have not stated a claim under the UIPA, because they fail to allege irreparable harm. The Court also finds that the Plaintiffs have failed to state a claim under the UPA, because the Plaintiffs have failed to make allegations which satisfy the required elements of such a claim. The Court concludes that the request for a declaratory judgment -- declaring that Travelers Insurance's uninsured motorist selection/rejection forms do not comply with Jordan v. Allstate Ins. Co. and that any policies issued thereunder are retroactively reformed -- is not ripe.

I.     **THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR INJUNCTIVE RELIEF UNDER THE UIPA, BECAUSE THEY FAILED TO ALLEGE IRREPARABLE HARM.**[9]

The Plaintiffs make only a few references in their Complaint to the UIPA. In paragraph 7, the Plaintiffs state that the Complaint is brought pursuant to N.M.S.A. 1978, § 59A-16-20. See Complaint ¶ 7, at 2. The Plaintiffs also allege:

> Upon information and belief, Plaintiffs allege there is a substantial risk these defendants will each continue to engage in these unfair and/or unconscionable insurance practices, all as prohibited by the UTPA and/or the UCPA, unless this Court: a) enters its Declaratory Judgment retroactively reforming all [uninsured motorist] policies issued in New Mexico . . . ; b) issues injunctive relief ordering each Defendant to immediately notify all its affected insureds of the fact and consequences of this retroactive reformation . . . ; and c) issues injunctive relief

---

[9]Although the Plaintiffs assert, in their Response, that they no longer seek injunctive relief, see Response at 1, the Plaintiffs continue to argue the issues surrounding its request for injunctive relief and whether there is irreparable harm, see Response at 16; Tr. at 9:13-24 (Berardinelli). Accordingly, the Court will address the requests for injunctive relief.

> ordering each Defendant to adopt and immediately implement a [uninsured motorist] selection/rejection form for use in New Mexico . . . .

Complaint ¶ 65, at 14-15.  The Plaintiffs also generally allege that:

> Since May 20, 2004, each of the Defendants has acted, or failed to act, in essentially the same fashion with respect to each and every MFRA policy issued to each Plaintiff and each class member by: a) failing to affirmatively offer their insureds equal limits [uninsured motorist] coverage (together with a <u>Jordan</u> menu) at the time of the sale of the policy as retroactively mandated by <u>Jordan</u>; b) failing to obtain written rejections of all [uninsured motorist] coverage . . . ; c) failing to unilaterally and retroactively reform every MFRA/[uninsured motorist] policy issued, or renewed, with less than equal limits [uninsured motorist] coverage; d) failing to unilaterally notify each insured to whom an MFRA/[uninsured motorist] policy was issued providing no [uninsured motorist] coverage or less than equal limits [uninsured motorist] coverage of their entitlement to have all such policies retroactively reformed, all as mandated by NMSA 1978, Section 59A-16-3 and Section 59A-16-4 . . . .

Complaint ¶ 68, at 15-16.[10]

The Complaint fails to state a claim for injunctive relief under the UIPA.  First, the Complaint fails to specify under which subsection of N.M.S.A. 1978, § 59A-16-20, they are bringing suit.  This Court and Judge Black have both held that, where a Complaint fails to reference a specific subsection or state the elements on which it relies to establish a claim, dismissal under rule 12(b)(6) is appropriate.  <u>See</u> <u>Gonzales</u> MOO at 32; <u>Yumukoglu v. Provident Life & Accident Ins.</u> <u>Co.</u>, 131 F.Supp.2d at 1227.  The Court believes, however, that the Plaintiffs are attempting to bring a claim under subsection A: "misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue."  N.M.S.A. 1978, § 59A-16-20(A).  The UIPA requires that "an insurer must <u>knowingly</u> misrepresent to insureds pertinent facts relating to coverages at issue."  <u>Lovato v.</u>

---

[10]N.M.S.A. 1978, § 59A-16-3 provides: "No person shall engage in this state in any practice which in this article is defined or prohibited as, or determined to be, an unfair method of competition, or unfair or deceptive act or practice, or fraudulent."  N.M.S.A. 1978, § 59A-16-4, deals with misrepresentation and false advertising of insurance policies.

Crawford & Co., 134 N.M.108, 115, 73 P.3d 246, 253 (Ct. App. 2003) (emphasis original).  The

IFTPA provides relief where a defendant "fails to disclose material facts reasonably necessary to

prevent other statements made from being misleading."  N.M.S.A. 1978, § 59A-16-4(G).  The

Plaintiffs' Response focuses on N.M.S.A. 1978, § 59A-16-4 and argues that the Complaint

establishes that Travelers Insurance has failed to "disclose material facts reasonably necessary to

prevent other statements from being misleading."  Response at 15 (emphasis original).  The Court,

however, agrees that the Plaintiffs have stated a claim with respect to the UIPA, because they have

alleged that the insurer Defendants knowingly withheld material information, which "obstructed the

ability of Plaintiffs and the class members to make a 'well-informed' decision."  Complaint ¶ 46,

at 10.[11]  The Plaintiffs further assert that the Defendants engaged in practices designed to "take

advantage of the lack of knowledge, ability, experience, and sophistication of Plaintiffs."  Complaint

¶ 46, at 10.  These allegations fairly imply that through its omissions, Travelers Insurance

misrepresented the coverage available when it sold the Plaintiffs their policies.  These allegations

are not conclusory and suggest that Travelers Insurance intentionally withheld information to

mislead the Plaintiffs regarding the scope of available uninsured motorist coverage to purchase.[12]

---

[11]Travelers Insurance did not analyze the merits of the claims in this way in its motion or reply, focusing instead on whether the Plaintiffs had stated a claim for injunctive relief.

[12]Although Travelers Insurance argues that the declaratory judgment claim is not ripe, it does not make the same arguments with respect to the UIPA and UPA claims.  The Court further finds that such claims are ripe, because the Plaintiffs "have a legally protected interest in receiving accurate information" and "suffered a legally cognizable injury when" they were given misleading information.  Carroll v. Los Alamos Nat'l Sec., LLC, 704 F.Supp.2d at 1220 (finding negligent misrepresentation claims ripe for adjudication despite not yet suffering any damages, because the plaintiff had a right to receive correct information).  In Carroll v. Los Alamos Nat'l Security, LLC, the Court found that, where the plaintiff alleged he was given false information, the claim was ripe for adjudication and had accrued, because there is a distinction between the "injury that gives rise to a claim, and the damages that the injured party can recover."  704 F.Supp.2d at 1220-21.  There, like here, the Court proceeded to the merits of the claim and found that case could not go forward,

Travelers Insurance argues, under the expressio unius est exlusio alterius canon, that the express grant of a right to seek declaratory or injunctive relief to the Superintendent of Insurance, and absence of such a grant to individuals, precludes the Plaintiffs' claim for injunctive or declaratory relief under the UIPA.  See Travelers Insurance Memo at 5; Reply at 6.  The Supreme Court of New Mexico has "repeatedly recognized that '[w]here authority is given to do a particular thing and a mode of doing it is prescribed, it is limited to be done in that mode; all other modes are excluded.  This is a part of the so-called doctrine of expressio unius est exclusio alterius.'" State ex. rel. King v. Lyons, 149 N.M. 330, 340, 248 P.3d 878, 888 (2011).  The Court in Salazar v. City of Albuquerque, 776 F.Supp.2d 1217 (D.N.M. 2011)(Browning, J.), held that where the New Mexico Tort Claims Act, N.M.S.A. 1978, §§ 41-4-1 to 41-4-30, expressly included defamation and malicious abuse of process in its waiver of immunity for law enforcement officers, but not for other waiver provisions, the "canon of statutory interpretation expressio unius est exclusio alterius supports the Court's conclusion that the New Mexico Legislature has not waived immunity for the Mayor and the Transit Department Director." 776 F.Supp.2d at 1244-45.  Applying those principles to this case, the UIPA provides: (i) that the Superintendent of Insurance may "cause an action for an injunction to be filed in the district court," N.M.S.A. 1978, § 59A-16-27; (ii) that, in a suit which the Superintendent of Insurance initiates, a court may "issue its order enjoining and restraining the continuance of such method of competition, act or practice," N.M.S.A. 1978, § 59A-16-28; and (iii)

_____

because there was no evidence that the plaintiff had been harmed.  Taking the allegations in the Complaint in the light most favorable to the Plaintiffs, the Plaintiffs were wronged when they purchased their insurance policies without the statutorily required uninsured motorist coverage options, such that they were misled about what coverage they could purchase.  The operation of Jordan v. Allstate Ins. Co. prevents the Plaintiffs from being harmed and suffering any damages at this point, however, because their policies are automatically reformed through operation of law.  Accordingly, the UIPA, as well as the UPA claims, are ripe for adjudication, but fail on the merits, because there is no irreparable harm, if there is any harm or damages at all.

an individual "who has suffered damages as a result of a violation" may bring an action to recover "actual damages," N.M.S.A. 1978, § 59A-16-30.  Accordingly, under the <u>expressio unius est exclusio alterius</u> canon, the specific grant to the Superintendent of Insurance to seek injunctive relief and the failure to include such a grant to private litigants, demonstrates that the New Mexico Legislature did not intend for private litigants to be able to seek injunctive relief.  Furthermore, N.M.S.A. 1978, § 59A-16-30's plain language confines private causes of actions to persons who have "suffered damages" to recover "actual damages."  N.M.S.A. 1978, § 59A-16-30.  This language would not appear to permit the action that the Plaintiffs have instituted -- an action for only equitable relief.  On multiple occasions, the Plaintiffs have stated that they do not seek damages. <u>See</u>, <u>e.g.</u>, Motion to Remand at 1.  It would therefore appear that the New Mexico Legislature did not mean to give a private cause of action to persons like the Plaintiffs, who seek only equitable relief.   Although the Plaintiffs argue that the UIPA provides that the "relief in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state." N.M.S.A. 1978, § 59A-16-30; Response at 16.  The New Mexico courts have interpreted similar provisions as allowing additional remedies, which are provided for other causes of action independently established, and have not, as the Plaintiffs suggest, held that a private litigant may seek different relief under <u>this</u> cause of action.  <u>See Hale v. Basin Motor Co.</u>, 110 N.M. 314, 795 P.2d 1006 (1990)(interpreting N.M.S.A. 1978, § 57-12-10(D)[13] and stating that, when "a party may recover damages under separate theories of liability based upon the same conduct of the defendant, and each theory has its own measure of damages, the court may make an award under

---

[13]N.M.S.A. 1978, § 57-12-10(D) provides that: "The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state."

-42-

each theory"); <u>McLelland v. United Wisc. Life Ins. Co.</u>, 127 N.M. 303, 307, 980 P.2d 86, 90 (Ct. App. 1999)("In addition, the same conduct that violates the UPA may also form the basis of another cause of action that permits an award of punitive damages.  The UPA does not prohibit punitive damages that can be so justified.").  N.M.S.A. 1978, § 59A-16-30 does not permit the Plaintiffs to seek injunctive relief <u>under the UIPA</u>; rather, it permits the Plaintiffs to seek and establish an entitlement to an injunctive relief under a separate cause of action.  Accordingly, the Court will dismiss this claim against Travelers Insurance.

Even if N.M.S.A. 1978, § 59A-16-30 permitted the Plaintiffs to seek injunctive relief, the Plaintiffs have failed to allege irreparable harm.  Because there is no statutory right to injunctive relief, the Plaintiffs must establish irreparable harm.  <u>See State ex rel. State Highway and Transp. Dep't of N.M. v. City of Sunland Park</u>, 129 N.M. 151, 157, 3 P.3d 128, 134 (Ct. App. 2000). "Injunctions are harsh and drastic remedies which should issue only . . . where there is a showing of irreparable injury for which there is no adequate and complete remedy at law."  <u>Padilla v. Lawrence</u>, 101 N.M. 556, 562, 685 P.2d 964, 970 (Ct. App. 1984).  An "irreparable injury" is an injury "which cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard."  <u>State ex rel. State Highway and Transp. Dep't of N.M. v. City of Sunland Park</u>, 129 N.M. at 157, 3 P.3d at 134 (citation omitted).  The "injury must be actual and substantial, or an affirmative prospect thereof, and not a mere possibility of harm."  <u>State ex rel. State Highway and Transp. Dep't of N.M. v. City of Sunland Park</u>, 129 N.M. at 157, 3 P.3d at 134.  The Court does not believe that the Plaintiffs' have adequately pled irreparable harm, because the Complaint acknowledges that any policy which was entered into in violation of the <u>Jordan v. Allstate Ins. Co.</u> mandate will be retroactively reformed without requiring the payment of additional premiums.  <u>See</u> Complaint ¶ 27, at 6-7.  Because any policy which was obtained in violation of the UIPA will be

retroactively reformed, no member of the class will suffer irreparable harm and there is an adequate remedy at law.  Furthermore, the injury that would be suffered is not actual and substantial, because any given class member would both have to be involved in an accident with an uninsured motorist and Travelers Insurance would have to reject a claim for equal limits coverage for the class member to be injured.  Any deficiency in coverage is quantifiable along with any costs associated with obtaining such coverage.  In State ex rel. State Highway and Transp. Dep't of N.M. v. City of Sunland Park, the Court of Appeals of New Mexico held that the alleged harm -- the economic harm that Dona Ana County would suffer if the City of Sunland Park constructed a water system covering the same areas as its intended water supply system -- was too speculative to support an injunction, because its costs were quantifiable, and because the County presented no evidence of past or future losses.  See 129 N.M. at 157, 3 P.3d at 134.  Here, the holding of  Jordan v. Allstate Ins. Co. was specifically intended to insure that all similarly situated insureds will be treated equally.  See 149 N.M. at 171, 245 P.3d at 1223.  Because any class member whose policy was issued in violation of the Jordan v. Allstate Ins. Co. mandate will not be irreparably injured, the Complaint does not state a valid claim for relief.  Accordingly, the Court will dismiss the UIPA claims.

## II.     THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE UPA.

To state a claim under the UPA, a complaint must allege that:

(1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

Lohman v. Daimler-Chrysler Corp., 142 N.M. at 439, 166 P.3d at 1093.  Here, the Plaintiffs allege:

46.     By their refusal since May 20, 2004, to provide Plaintiffs and the class members at the point of sale with full and adequate information about their

legal options when buying [uninsured motorist] coverage, including a <u>Jordan</u> menu, Defendants have each knowingly and foreseeably obstructed the ability of Plaintiffs and the class members to make a "well-informed" decision about how much [uninsured motorist] coverage they needed and could afford.

47.     In so doing, Defendants have thereby continuously engaged in acts or practices which they knew, or should have known, were likely to, and did in fact, take advantage of the lack of knowledge, ability, experience and sophistication of Plaintiffs and the class members to a grossly unfair degree, all to the detriment of the Plaintiffs and the class members in that they were thereby obstructed from being able to make a "well-informed" decision about how much [uninsured motorist] coverage they needed and could afford.

Complaint ¶¶ 46-47, at 10.  The allegations are sufficient to state a claim under the UPA.  The

Plaintiffs have alleged that Travelers Insurance made statements at the time of sale of their insurance

policies which, because they failed to provide the required menu on the uninsured motorist

selection/rejection forms, substantially misled the Plaintiffs regarding how much uninsured motorist

coverage was available to them.

        Travelers Insurance also argues that the UPA provides a regulatory exception where the

administrative agency has approved of the practice alleged to be unfair.  <u>See</u> Reply at 8.  They point

out that the Plaintiffs conceded, at the hearing on the Motion to Remand, that the Superintendent

of Insurance approved the forms used.  <u>See</u> Reply at 9 (citing MOO at 26).  The UPA states:

        Nothing in the Unfair Practices Act shall apply to actions or transactions expressly permitted under the laws administered by a regulatory body of New Mexico or the United States, but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the Unfair Practices Act.

N.M.S.A. 1978, § 57-12-7.  In interpreting this provision, the Supreme Court of New Mexico has

held that "expressly" means "directly and distinctly stated or expressed <u>rather than implied or left</u>

<u>to inference</u>."   <u>Truong v. Allstate Ins. Co.</u>, 147 N.M. at 593, 227 P.3d at 83 (emphasis

original)(citation omitted).  In <u>Truong v. Allstate Ins. Co.</u>, the Supreme Court of New Mexico held

that the Superintendent of Insurance did not "expressly permit" a form of claims handling where the Superintendent stated "only that the claims 'appear to' have been handled properly and that no claims handling abuses 'were noted,'" and that these statements were not the same as an affirmative finding of proper handling.  147 N.M. at 593, 227 P.3d at 83.  In <u>Azar v. Prudential Ins. Co. of America</u>, the Court of Appeals of New Mexico held that, where the Insurance Division has never addressed a subject, and where the Insurance Code and insurance regulations are silent on that subject, that subject is not "expressly permitted" as N.M.S.A. 1978, § 57-12-7 defines that term. <u>Azar v. Prudential Ins. Co. of Am.</u>, 133 N.M. at 689, 68 P.3d at 929.  It also found that "the approval of a policy by a regulatory body does not conclusively establish the validity of the policy or shield it from review by the courts," and that, although such a determination is entitled to deference, "it is not binding on the courts, particularly where the laws being applied by the regulator are silent on the subject." <u>Azar v. Prudential Ins. Co. of Am.</u>, 133 N.M. at 689-90, 68 P.3d at 929-30.  Travelers Insurance did not refer to these cases either at the hearing or in its Reply.  In <u>Truong v. Allstate Ins. Co.</u>, the Supreme Court of New Mexico suggests that it had more information regarding the Superintendent of Insurance's adoption of an independent market conduct examination and alleged approval of Allstate Insurance Company's claims processing computer program.  <u>See</u> 147 N.M. at 596, 227 P.3d at 86.  There, the Supreme Court of New Mexico knew that the examination made no specific conclusions regarding the design and the examination's results did not mention the program. <u>See</u> <u>Truong v. Allstate Ins. Co.</u>, 147 N.M. at 596, 227 P.3d at 86.  Without more information, this case seems indistinguishable from <u>Azar v. Prudential Ins. Co. of America</u>, where the Court of Appeals of New Mexico rejected the application of the UPA exemption, when the Superintendent of Insurance approved of insurance forms and the Supreme Court of New Mexico relied on in <u>Truong v. Allstate Ins. Co.</u>  <u>See</u> <u>Truong v. Allstate Ins. Co.</u>, 147 N.M. at 595, 227 P.3d at 85 (citing

-46-

Azar v. Prudential Ins. Co. of Am., 133 N.M. at 689, 68 P.3d at 929).  Accordingly, the Court finds

that the UPA exemption does not apply.[14]

Travelers Insurance also argues, applying the expressio unius est exclusio alterius canon of

construction, that the Plaintiffs, as a class, may not seek injunctive relief, because N.M.S.A. 1978,

§ 57-12-10, provides:

> In any class action filed under this section, the court may award damages to the
> named plaintiffs as provided in subsection B of this section and may award members
> of the class such actual damages as were suffered by each member of the class as a
> result of the unlawful method, act or practice.

---

[14]Additionally, Travelers Insurance argues that the doctrine of primary jurisdiction bars the relief sought in this suit.  See Travelers Insurance Memo at 11.  It argues that the Court should dismiss the Complaint, because the Insurance Division controls the language permitted in insurance policies.  See Travelers Insurance Memo at 11.  This argument is a stark difference from the argument presented at the hearing on the Motion to Remand, where the insurer Defendants strenuously argued that the Court should not abstain under Burford v. Sun Oil Co.  See MOO at 24. Travelers Insurance now argues that it distinguished between exclusive jurisdiction in the state courts and exclusive jurisdiction in the administrative system, and that the Plaintiffs argued only exclusive jurisdiction in the state courts.  See Reply at 2.  The purpose of Burford v. Sun Oil Co. abstention is, however, to keep federal courts from interfering in complex, administrative systems where states have directed regulatory agencies to act.  After the Court has denied the Motion to Remand, Travelers Insurance asserts that the Plaintiffs' exclusive remedy for an injunction regarding the uninsured motorist selection/rejection forms is the Insurance Division.  See Travelers Insurance Memo at 11.  The Court, however, believes that its MOO decided this question and that, if it were to find that the selection/rejection forms violate Jordan v. Allstate Ins. Co., it could order Travelers Insurance to alter the policies it uses without interfering with the Superintendent of Insurance's functions, because the Court could phrase its order to also require that the insurer Defendants obtain the Superintendent of Insurance's approval before using new forms.  Moreover, the Supreme Court of New Mexico, in Truong v. Allstate Ins. Co., addressed this very issue and held that "the New Mexico statutes recognize shared responsibilities of the agency, of the Attorney General, and of the courts in regulating the conduct of insurance companies and seeking both preventive and remedial relief."  147 N.M. at 597, 227 P.3d at 87.  Additionally, the Court rejects the argument that the Superintendent of Insurance has primary jurisdiction over the content of these forms, when the Supreme Court of New Mexico directed insurers to include certain provisions in their uninsured motorist selection/rejection forms as part of its holding in Jordan v. Allstate Ins. Co., see 149 N.M. at 169, 245 P.3d at 1221, and the Plaintiffs ask the Court to follow the mandates established in that case, applying it to these insurers.  Accordingly, the Court will not dismiss under the doctrine of primary jurisdiction or reconsider its decision regarding abstention under Burford v. Sun Oil Co.

Reply at 7 (citing N.M.S.A. 1978, § 57-12-10(E)). The parties cited no authority deciding whether a class may seek injunctive relief under this provision and the Court could find none deciding that question. Applying the principle of <u>expressio unius est exclusio alterius</u>, the express inclusion of injunctive relief as a remedy for individuals, <u>see</u> N.M.S.A. 1978, § 57-12-10(B), and the omission of such relief as a remedy for class actions, <u>see</u> N.M.S.A. 1978, § 57-12-10(E), would suggest that the New Mexico Legislature did not intend for injunctive relief to be available in class actions. On the other hand, the UPA constitutes remedial legislation, which courts interpret "liberally to facilitate and accomplish its purposes and intent." <u>Truong v. Allstate Ins. Co.</u>, 147 N.M. at 591, 227 P.3d at 81 ("[T]he UPA constitutes remedial legislation . . . ."); <u>Lohman v. Daimler-Chrysler Corp.</u>, 142 N.M. at 443, 177 P.3d at 1097 (noting that "nothing expressly limits its scope," and that "the remedial purpose of the legislation, as a consumer protection measure, is also consistent with the broadest possible application"). These different means of statutory construction point in opposite directions. The Court is not convinced, however, that the Supreme Court of New Mexico would find that injunctions are unavailable in UPA class actions. Given that the Court of Appeals of New Mexico has held that the UPA should be given "the broadest possible application," the Court believes that the better interpretation is to find that the UPA permits a class to seek injunctive relief. The Court further finds that such a construction is sound, because it would make little sense to permit a court to award injunctive relief in a private suit but prohibit a court from enjoining an unfair trade practice that affected a class of consumers, which could be the more problematic behavior. Unlike the UIPA, where the Superintendent of Insurance -- a government official -- is given authority to seek injunctive relief, here individuals are permitted to seek injunctive relief. The Court can think of no sound basis for which the New Mexico Legislature would permit an individual, but not a group of individuals, to seek injunctive relief for an unfair practice. Furthermore, the Court

of Appeals of New Mexico has held that the "opportunity for class relief and its importance to consumer rights is enshrined in the fundamental policy of New Mexico" and was devised for "vindication of the rights of groups of people who individually would be without effective strength to bring their opponent to court at all." Fiser v. Dell Computer Corp., 144 N.M. 464, 468, 188 P.3d 1215, 1219 (2008)(citations omitted). Moreover, there is "nothing" that "expressly limits its scope," and the Court is reluctant to do so without clearer intent from the New Mexico Legislature.  Given these statements regarding the broad purposes behind the UPA and class actions, the Court finds that injunctive relief is available to class actions brought under the UPA.

The Court agrees with Travelers Insurance, however, that the Plaintiffs cannot succeed on their UPA requests for injunctive relief, because they have not alleged irreparable harm.  As the Court discussed in reference to the Plaintiffs' UIPA claims, the Plaintiffs must establish irreparable harm.  See State ex rel. State Highway and Transp. Dep't of N.M. v. City of Sunland Park, 129 N.M. at 157, 3 P.3d at 134.  "Injunctions are harsh and drastic remedies which should issue only . . . where there is a showing of irreparable injury for which there is no adequate and complete remedy at law." Padilla v. Lawrence, 101 N.M. at 562, 685 P.2d at 970).  The Court does not believe that the Plaintiffs' have adequately pled irreparable harm, because the Complaint acknowledges that any policy which was in violation of the Jordan v. Allstate Ins. Co. mandate will be retroactively reformed without requiring the payment of additional premiums.  See Complaint ¶ 27, at 6-7. Because any policy which was obtained in violation of the UPA will be retroactively reformed, no member of the class will suffer irreparable harm, and there is an adequate remedy at law. Furthermore, the injury that would be suffered is not actual and substantial, as State ex rel. State Highway and Transp. Dep't of N.M. v. City of Sunland Park requires, see 29 N.M. at 157, 3 P.3d at 134, because any given class member would both have to be involved in an accident with an

uninsured motorist and Travelers Insurance would have to reject a claim for equal limits coverage for the class member to be injured.  Any deficiency in coverage is quantifiable, along with any costs associated with obtaining such coverage.  In State ex rel. State Highway and Transp. Dep't of N.M. v. City of Sunland Park, the Court of Appeals of New Mexico held that the alleged harm -- the economic harm that Dona Ana County would suffer if the City of Sunland Park constructed a water system covering the same areas as its intended water supply system -- was too speculative to support an injunction, because its costs were quantifiable, and because the County presented no evidence of past or future losses.  See 129 N.M. at 157, 3 P.3d at 134.  Here, the holding of  Jordan v. Allstate Ins. Co. was specifically intended to insure that all similarly situated insureds will be treated equally. See 149 N.M. at 171, 245 P.3d at 1223.  Because any class member whose policy was issued in violation of the Jordan v. Allstate Ins. Co. mandate will not be irreparably injured, the Complaint does not state a valid claim for relief.  Accordingly, the Court will dismiss the UPA claims.

III.    **THE REQUEST FOR A DECLARATORY JUDGMENT REGARDING TRAVELERS INSURANCE'S COMPLIANCE WITH JORDAN V. ALLSTATE INS. CO. IS NOT RIPE.**[15]

Travelers Insurance argues that, under the New Mexico Declaratory Relief Act, N.M.S.A. 1978, § 44-6-2, a party may obtain a declaratory judgment only if there is an actual controversy and that courts will not issue declaratory judgments to "re-announce" the law.  Travelers Insurance Memo at 8-9.  Travelers Insurance asserts that it does not challenge the holding in Jordan v. Allstate Insurance Co. and contends that the Plaintiffs have not demonstrated a concrete risk of future harm.

---

[15]The Court may determine that some claims, but not all of the claims, in a case are not ripe for adjudication.  See United Steelworkers of Am., Local 2116 v. Cyclops Corp., 860 F.2d 189, 191 (6th Cir. 1988)("We agree with the district court that summary judgment was appropriate on the ERISA claims and some of the contractual claims.  However, we believe that plaintiffs prospective contractual claims do not present a present, justiciable controversy and therefore we dismiss them as not ripe for adjudication.").

See Travelers Insurance Memo at 9-10.  It argues that the Complaint speculates that, unless the Court reforms every MFRA policy, none of the Defendants will unilaterally and voluntarily conform with Jordan v. Allstate Insurance Co., and that there is no allegation that it has failed to provide full coverage limits.  See Travelers Insurance Memo at 10.  It argues that, unlike Progressive Northwestern Insurance Co. v. Weed Warriors Services and Jordan v. Allstate Insurance Co., no concrete action has taken place requiring the application of the policies in question and that, instead, the Plaintiffs seek a declaration "that insurers, in the future, will violate Jordan and Weed Warrior by refusing to honor claims for full policy limits on policies that have been automatically reformed." Reply at 10.  Travelers Insurance admits that, "if any [uninsured motorist] rejection form fails to comply with these requirements, it is automatically reformed by operation of law."  Reply at 10.

Travelers Insurance's argument that there is no "actual controversy" raises the question of ripeness with respect to the request for a declaratory judgment.  "In order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy."  New Mexicans for Bill Richardson v. Gonzales, 64 F.3d at 1499.  A controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and "a real and substantial controversy admitting of specific relief through a decree of a conclusive character."  Aetna Life Ins. Co. v. Haworth, 300 U.S. at 240-41.  Additionally, a controversy must be "between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. at 127 (citation omitted).  In its Complaint, the Plaintiffs assert that they seek a declaratory judgment "retroactively reforming all the [uninsured motorist] policies issued in New Mexico to Plaintiffs and the class members to provide equal limits coverage, where the policy did not do so, without the payment of any premiums."  Complaint ¶ 65, at 14.

-51-

The Tenth Circuit has held, however, that "generally one cannot bring a declaratory judgment action just to resolve one isolated issue in a possible future controversy." Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d at 1380.  Here, the Plaintiffs bring a declaratory judgment action seeking to determine the issue: whether Travelers Insurance policies should be reformed, because it failed to comply with Jordan v. Allstate Ins. Co.  They seek to determine the issue of coverage in a vacuum -- where the Plaintiffs have not alleged that any policyholder has been involved in an accident with an uninsured motorist, where Travelers Insurance is not alleged to have denied equal limits coverage to anyone who's policy was not in compliance with Jordan v. Allstate Ins. Co., and where Travelers Insurance admits that any policy it has issued which is out of compliance is retroactively reformed by operation of law.   In Public Service Commission of Utah v. Wycoff, 344 U.S. 237 (1952), the Supreme Court addressed a declaratory judgment action where an individual engaged in transporting film reels alleged that his travel was so integrated with interstate movement that it constituted in interstate commerce, such that a state commission would not be able to regulate his activity.  See 344 U.S. at 239.  The Supreme Court wrote:

> The carrier's idea seems to be that it can now establish the major premise of an exemption, not as an incident of any present declaration of any specific right or immunity, but to hold in readiness for use should the Commission at any future time attempt to apply any part of a complicated regulatory statute to it . . . . If there is any risk of suffering penalty, liability or prosecution, which a declaration would avoid, it is not pointed out to us.  If and when the State Commission takes some action that raises an issue of its power, some further declaration would be necessary to any complete relief. . . .

Pub. Serv. Comm'n of Utah v. Wycoff, 344 U.S. at 245-46.  Similarly, here, the Plaintiffs seek to litigate the scope of coverage to "hold in readiness" for use, to prevent Travelers Insurance from denying equal limits insurance coverage should any class member later be involved in an accident. In Eccles v. Peoples Bank, the Supreme Court held: "The concurrence of these contingent events,

necessary for injury to be realized, is too speculative to warrant anticipatory judicial determinations." Eccles v. Peoples Bank, 33 U.S. at 432. It concluded: "[The] Bank's grievance here is too remote and insubstantial, too speculative in nature, to justify an injunction against the Board of Governors, and therefore equally inappropriate for a declaration of rights." Eccles v. Peoples Bank, 33 U.S. at 434. The Court finds that the Plaintiffs' request for declaratory relief is similarly not ripe. The Plaintiffs ask the Court to decide now whether their policies will be retroactively reformed so that, in later litigation over coverage, if such litigation should ever arise, Travelers Insurance will not be able to argue that they have rejected equal limits uninsured motorist coverage. The Supreme Court has rejected such a tactic as not ripe for decision. In Calderon v. Ashmus, 523 U.S. 740 (1998), it concluded that the prisoner "here seeks a declaratory judgment as to the validity of a defense the State may, or may not, raise in a habeas proceeding," and held that such a suit "does not merely allow the resolution of a 'case or controversy' in an alternative format . . . , but rather attempts to gain a litigation advantage by obtaining an advance ruling on an affirmative defense." 523 U.S. at 747.

The Supreme Court has cautioned against cases wherein litigants seek "to litigate a single issue in a dispute that must await another lawsuit for complete resolution." Calderon v. Ashmus, 523 U.S. at 748. In a suit over a commercial liability policy, the Tenth Circuit found that there was no actual controversy when, although a claim had been filed against the insured, the insurer agreed that the policy covered that claim. See Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d at 1382. The parties asked the Tenth Circuit to determine when an insured must give notice of claim for BancInsure to have an obligation to indemnify it against loss, but the parties failed to identify any claim on which the parties disagreed regarding the right to indemnification. See Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d at 1382. The Tenth Circuit held: "A declaration of rights in this

-53-

case would not provide complete relief to either party in the event of a future claim against Columbian for which it sought indemnification from BancInsure." Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d at 1382. The Court is faced with the same scenario, because a declaration of rights in the case would not provide complete relief to either party in the event of a future coverage claim against Travelers Insurance. The Tenth Circuit, in Columbian Fin. Corp. v. BancInsure, Inc., also relied on Atlanta Gas Light Co. v. Aetna Casualty & Surety Co., 68 F.3d 409 (11th Cir. 1995), wherein the United States Court of Appeals for the Eleventh Circuit held that, where no claim had been filed against the insureds and the insurer had taken no position on their duties under the policies, there was no case or controversy. See 68 F.3d at 411. The Eleventh Circuit held that the insured "filed its complaint as an anticipatory maneuver designed to preempt whatever actions the insurers may have taken after they received AGL's notice." Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d at 415. See Solo Cup Co. v. Fed. Ins. Co., 619 F.2d 1178, 1189 (7th Cir. 1980)("The mere possibility that proceedings might be commenced against an insured regarding an act of the insured's as to which the insurer might contest coverage, is not sufficient to create a controversy within the meaning of the Declaratory Judgment Act or Article II of the Constitution."). The declaratory judgment that the Plaintiffs seek is of no practical consequence until a policyholder is in an accident with an uninsured motorist and then it would act to prevent Travelers Insurance from denying coverage. But Eccles v. Peoples Bank, Columbian Fin. Corp. v. BancInsure, Inc., and Atlanta Gas Light Co. v. Aetna Casualty & Surety Co. demonstrate that there is no controversy, and that the case is not ripe, where the declaratory judgment action is premised on a future hypothetical situation in which an insurer might deny coverage. Regardless how well-founded the Plaintiffs concerns about Travelers Insurance may be, speculation about how it might deal with policyholders in the future does not present a concrete case or controversy. Accordingly,

the Court will dismiss the request for declaratory relief.

**IT IS ORDERED** that the Motion of Defendant Travelers Home and Marine Insurance

Company to Dismiss Plaintiffs' Complaint, filed June 17, 2011 (Doc. 40), is granted and the claims

against Travelers Insurance are hereby dismissed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

David J. Berardinelli
Santa Fe, New Mexico

 *Attorney for the Plaintiffs*

Ann Maloney Conway
Keleher & McLeod, P.A.
Albuquerque, New Mexico

-- *and* --

Floyd P. Bienstock
Jon T. Neumann
Timothy M. Strong
Steptoe & Johnson, LLP
Phoenix, Arizona

 *Attorneys for Defendant Metropolitan Property & Casualty Insurance Co.*

Gary W. Larson
Hinkle, Hensley, Shanor & Martin, LLP
Santa Fe, New Mexico

-- *and* --

Gail L. Gottehrer
Thomas G. Rohback
Axinn, Veltrop & Harkrider LLP
Hartford, Connecticut

 *Attorneys for Defendant Travelers Insurance Company d/b/a The Travelers Home and*
  *Marine Insurance Company*

-55-